UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff*,

*v.*

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY,

*Defendants*.

**COMPLAINT AND JURY TRIAL
DEMANDED**

**Civil Action No.**

**_____**

Mary Van Brunt-Piehler, ("Plaintiff"), complaining by her attorneys, Thomas &
Solomon LLP, alleges the following as her complaint against Absolute Software, Inc. and
Absolute Software Corporation (collectively "Absolute") and individually against Geoff
Haydon, Thomas Kenny, and Todd Awtry:

## NATURE OF THE ACTION

1.    This action is brought under Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); under the Age Discrimination in
Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et. seq.*; the Equal Pay Act
("EPA"), 29 U.S.C. § 206, *et seq.*; the New York State Human Rights Law ("NYSHRL"); New
York Executive Law § 290, *et seq.*; and under the common law theories of tortious interference
with prospective business relations, and defamation.

2.    This action seeks restitution to plaintiff of all rights, privileges, benefits, and
income that she would have had but for Defendants' unlawful practices.

## JURISDICTION AND VENUE

3.    This jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28

U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.  This Court also has jurisdiction over Plaintiff's state law claims pursuant to the doctrine of pendant jurisdiction.

4.     This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

## THE PARTIES

6.     Plaintiff is a resident of Monroe County, New York and at all relevant times was an employee of Absolute.

7.     At all times relevant, Plaintiff was an employee within the meaning of Title VII, the ADEA, the EPA, and the NYSHRL.

8.     At all relevant times, Defendants Absolute Software, Inc. and Absolute Software Corporation have been employers within the meaning of Title VII, the ADEA, the EPA, and the NYSHRL and have operated as joint employers of the plaintiff.

9.     Upon information and belief, Defendant Absolute Software, Inc. is a Washington corporation with a principal place of business of 11401 Century Oaks Terrace, Suite 430, Austin, Texas 78758.

10.    Upon information and belief, Absolute Software, Inc. is a wholly-owned

subsidiary of Absolute Software Corporation.

11.    Absolute Software Corporation is a Canadian corporation with its principal place of business in Vancouver, Canada.

12.    Absolute Software Corporation's corporate headquarters is located at Suite 1600, Four Bentall Centre, 1055 Dunsmuir Street, Vancouver, BC, Canada V7X 1K8.

13.    Upon information and belief, Daniel Berardo was the Director of Human Resources for Absolute Software Corporation until approximately December 2015.

14.    Upon information and belief, Daniel Berardo had the power to make human resources decisions on behalf of Absolute Software, Inc. and Absolute Software Corporation, including implementing human resources policies, determining the rate of pay for employees, and investigating and resolving employment issues for Absolute.

15.    Absolute held out Mr. Berardo to all its employees as the primary individual who was responsible for making human resource decisions about employees on behalf of Absolute.

16.    It was Mr. Berardo who, after Thomas Kenny, Absolute's former Vice President publically stated at a conference in April 2015 that Geoff Haydon, Absolute's Chief Executive Officer, that Absolute wanted to get rid of older, female employees, was tasked with performing an investigation into Defendants Kenny's and Haydon's remarks, including interviewing female managers to see if they had been offended by these remarks.

17.    Additionally, Plaintiff's paycheck came from Absolute Software Inc. while some of her employee benefits, such as stock options, came from Absolute Software Corporation.

18.     Together, Absolute Software, Inc. and Absolute Software Corporation provide endpoint security and data risk management software for devices such as laptops, tablets, and smart phones.

19.     Upon information and belief, Defendant Geoff Haydon has been the Chief Executive Officer of Absolute since approximately July 2014.

20.     Defendant Haydon is an employer under the NYSHRL because he had the power to hire and fire employees, establish compensation policies, and made decisions related to human resources and benefits.

21.     Defendant Haydon controlled Absolute's overall human resources and hiring policies.  For example, this included stating in early 2015 that Absolute wanted to get rid it of its older, female workforce and replace those employees with young males.

22.     Additionally, Defendant Haydon controlled the work assignments of Absolute's employees, including which events employees attended, and his signature was required on all offer approval forms for job openings at Absolute.

23.     Upon information and belief, Defendant Thomas Kenny is Absolute's former Executive Vice President and General Manager.

24.     Defendant Kenny is an employer under the NYSHRL because had the power to hire and fire employees, determine their rate of pay, and to control the terms and conditions of their employment.

25.     Defendant Kenny also was involved in establishing Absolute's overall human resources policies and direction.  This included comments made at an April 2015 conference with employees that Absolute wanted to get rid of employees "that are at the end of the

rainbow" and that he wanted to "just hire guys who are athletes, who talk sports and trash and get in each other's faces."

26.    Additionally, Defendant Kenny was involved interviewing candidates to replace Plaintiff.  Upon information and belief, Defendant Kenny was also involved in the decision to pay Plaintiff's replacement a higher salary than Plaintiff earned for the same job.

27.    Upon information and belief, Defendant Todd Awtry is Absolute's Vice President of North American sales.  Defendant Awtry was Ms. Van Brunt-Piehler's former manager.

28.    Defendant Awtry is an employer under the NYSHRL because had the power to hire and fire employees and to control the terms and conditions of their employment.

29.    For example, Defendant Awtry was involved in the decision to fire Plaintiff and was in charge of performing Plaintiff's job performance reviews.

30.    Additionally, Defendant Awtry also set Plaintiff's geographical work assignments and was in charge of managing Plaintiff's work assignments.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31.    Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety days of the receipt of the Notice of Right to Sue, which was issued by the EEOC on February 25, 2016.

32.    Plaintiff has not commenced any other proceeding in any other forum involving the alleged unlawful employment practices that were the subject of her EEOC charge.

## FACTUAL BACKGROUND

33.     Plaintiff is a 58-year old female born in 1957.  Plaintiff is a member of protected classes in that she is a female and over the age of forty years old.

34.     On or about July 1, 2015, Defendant engaged in unlawful employment practices by terminating Plaintiff because of her sex and age.

35.     Plaintiff worked for Defendant as the Northeast Regional Director.  During this time, Plaintiff's manager was Defendant Awtry.

36.     At the time of her termination, Plaintiff was Absolute's oldest Regional Director.

37.     While employed by Absolute, Defendant Awtry treated Plaintiff differently due to her gender and age by discriminating and retaliating against her.

38.     For example, Defendant Awtry interfered in Plaintiff's job performance by refusing to provide feedback during Plaintiff's job performance reviews.  Defendant Awtry also yelled at and verbally threatened Plaintiff.  Defendant Awtry also tried to undermine Plaintiff's job by telling Plaintiff's subordinates not to tell Plaintiff about certain things that would prevent her from performing her job duties.

39.     Due to this harassment and discrimination, Plaintiff complained to Absolute's human resources department, including Daniel Berardo, in approximately July 2014. Defendant Awtry was subsequently reprimanded by Absolute for his behavior.

40.     After Plaintiff made this complaint, Defendant Awtry retaliated against Plaintiff by stating that he was very angry that Plaintiff had complained to human resources. Defendant Awtry subsequently wrote a job performance review that was factually incorrect as

a way of retaliating against Plaintiff, requiring Plaintiff to seek a corrected version of her performance review from human resources.

41.     Despite Defendant Awtry's retaliatory and discriminatory animus, Plaintiff received exceptional performance reviews and always met or exceeded her sales goals throughout her tenure with Absolute.   In the months leading up to her termination, Plaintiff's performance was exemplary.   For example, in January 2015, Plaintiff had a nine quarter average performance rating of 93%, which was the second highest performance for Absolute in North America.   Additionally, during the first half of fiscal year 2015, four of Plaintiff's six territories for Absolute were rated among its top ten producing territories in North America.

42.     Absolute's management, including Defendant Haydon and Defendant Thomas Kenny made discriminatory comments that Absolute only wants to employ young males as its workforce.

43.     Specifically, during a managers meeting at the Westin Hotel in New York City on approximately April 30, 2015, Defendant Kenny stated that Defendant Haydon wanted to get rid of employees "that are at the end of the rainbow" and that he wanted to "just hire guys who are athletes, who talk sports and trash and get in each other's faces."

44.     It was therefore clear from these comments, and Mr. Awtry's previous discrimination, harassment, and retaliation that Defendants did not want to employ older, female employees.

45.     Just two months later, Plaintiff was terminated by Defendants and replaced with a younger white male who was paid more than her even though he was no more

qualified than her for the job and was performing the same job.

46.     Defendant Kenny's and Defendant Haydon's comments embodied Absolute's pattern and practice of discriminating against older and female workers.   In July 2015, Absolute also terminated Sara Monaco, who was the only other female in sales in the Northeast region at the time.   During Plaintiff's tenure, Absolute also terminated two other female Regional Directors, Jodi Carrol and Phyllis Johnson. Absolute also terminated Margaret Onulak in 2013, who had served as a Channel Partner Manager.

47.     At approximately the same time that Defendant Kenny and Defendant Haydon stated that Absolute wanted to get rid of older, female employees, Defendant Awtry interviewed candidates to replace Plaintiff and offered significantly higher compensation than what Plaintiff earned.

48.     Absolute ultimately hired a younger, male who was an external hire as Plaintiff's replacement and at higher pay. However, Plaintiff's replacement performed the same job as Plaintiff and the job was no different than the one from which Plaintiff was terminated.

49.     During her employment with Defendants, male employees received more favorable treatment than Plaintiff, including, but not limited to, pay and benefits (such as stock options).

50.     Plaintiff was compensated less than similarly situated younger males who were also Regional Directors, such as Art Robinson (Southeast Regional Director), Kurt Luporini (Central Regional Director), and Randy Dye (West Regional Manager).   Plaintiff was also paid less than her eventual replacement, Joe Morini.

51.     The job of Regional Directors was a uniform job position that required each Regional Director to perform work requiring equal skill, effort, and responsibility.

52.     Joe Morini was Plaintiff's replacement, and upon information and belief, performs the exact same job duties that Plaintiff performed while employed by Absolute.

53.     Art Robinson, Kurt Luporini, and Randy Dye also each performed the exact same job duties as Regional Directors that Plaintiff performed as the Northeast Regional Director.

54.     Regional Directors, including Plaintiff, Art Robinson, and Joe Morini all worked under similar working conditions.

55.     On July 1, 2015, Plaintiff was discharged from her employment.  Defendants never provided Plaintiff with a reason for her termination.

56.     Defendants took adverse employment actions against Plaintiff because she was female and over the age of forty years old.

57.     Defendants' termination of Plaintiff was predicated on Defendant's public acknowledgement that it wanted to get a younger, male workforce and to remove older, female workers such as Plaintiff.

58.     Defendants' retaliation against Plaintiff has continued even after Plaintiff's termination and is part of a continuing violation against Plaintiff.

59.     Plaintiff filed a charge of discrimination with the EEOC on approximately September 4, 2015.

60.      Upon information and belief, Absolute received notice of the EEOC charge on approximately September 16, 2015.  Absolute was also mailed a copy of the charge on

approximately October 26, 2015.

61.     After Plaintiff filed her EEOC charge, Defendants made false and malicious comments to its employees that Plaintiff had "defrauded" the company and engaged in "criminal" activity.

62.     For example, Plaintiff was told by Michael Opel, an account manager for Absolute, on approximately October 4, 2015 that Absolute was stating that Plaintiff was terminated because she defrauded the company.

63.     Plaintiff was also told by Ted DiSalvo in February 2016 that he had been told by Jeffrey Gottlieb, an inside sales representative for Absolute, that Defendants had described Plaintiff's actions as "criminal."

64.     Plaintiff never engaged in any unlawful, illegal, or otherwise unethical conduct while employed by Defendants and Defendants knew she had not.

65.     These comments were made by the Defendants directly and through their agents despite the Defendants knowing the allegations to be false.

66.     These comments also constitute defamation and slander per se as they involve false allegations of fraud and criminal activity.

67.     As a result of these false allegations, Plaintiff has been unable to obtain employment in a comparable position due to these comments likely affecting other potential employers.

68.     Defendants' conduct is part of a continuing violation of harassment, discrimination, and retaliation against Plaintiff on the basis of her age and gender, and because of the protected activity that Plaintiff engaged in by making internal complaints to

human resources and to Errol Olsen, Absolute's interim CEO in 2014, and filing a charge of discrimination with the EEOC.

**FIRST CAUSE OF ACTION**
*Sex Discrimination—Title VII*
*(Defendants Absolute Software, Inc. and Absolute Software Corporation only)*

69.     Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

70.     Under Title VII, it is unlawful for an employer to discriminate against any individual because of such individual's sex.

71.     Absolute discriminated against Plaintiff because of her sex by terminating her in clear violation of Title VII.

72.     As a result of the unlawful conduct in violation of Title VII, Plaintiff has suffered losses, including, but not limited to, the loss of employment, the substantial loss of past and future earnings, bonuses, and other employment benefits.  Plaintiff has also suffered the loss of reputation and emotional distress.

73.     Plaintiff is entitled to a declaratory judgment that the actions of Absolute violated Title VII.

74.     As a direct and proximate result of Absolute's conduct, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

75.     Additionally, the conduct of Absolute and its employees was malicious and

designed to vex, annoy, or harass Plaintiff and thus Plaintiff is entitled to punitive damages under Title VII in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Age Discrimination in Employment Act—Age Discrimination*
### *(Defendants Absolute Software, Inc. and Absolute Software Corporation only)*

76.     Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

77.     The ADEA prohibits an employer from subjecting an employee to disparate treatment because of their age if they are 40 years of age or older.

78.     Plaintiff was at all times while employed by Absolute at least 40 years old and thus a member of a class of people protected by the ADEA.

79.     Plaintiff suffered discrimination by Absolute when it terminated Plaintiff due to her age in clear violation of the ADEA.

80.     As a proximate cause of Absolute's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, and other employment benefits.

81.     Plaintiff is entitled to a declaratory judgment that the actions of Absolute violated the ADEA.

82.     The conduct of Absolute was outrageous and done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to relief as provided under the ADEA, including but not limited to, equitable and injunctive relief, an award of compensatory damages, back pay, front pay, punitive damages, expenses, and attorney's fees in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### *Unequal Pay in Violation of the Equal Pay Act*
### *(Defendants Absolute Software, Inc. and Absolute Software Corporation only)*

83.     Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

84.     Defendants Absolute Software, Inc. and Absolute Software Corporation discriminated against Plaintiff within the meaning of the Equal Pay Act by providing her with lower pay and other forms of compensation than similarly situated male colleagues on the basis of her gender even though Plaintiff performed equal work requiring equal skill, effort, and responsibility as her similarly situated male colleagues.

85.     Plaintiff and similarly situated male employees all performed equal job duties and functions as Regional Directors.

86.     Plaintiff and similarly situated male colleagues all performed equal work requiring equal skill, effort, and responsibility, and that was performed under similar working conditions.

87.     Defendants Absolute Software, Inc. and Absolute Software Corporation discriminated against Plaintiff by paying her lower pay and other forms of compensation that similarly situated males received.

88.     Defendants' Absolute Software, Inc. and Absolute Software Corporation conduct in this regard was willful and/or in reckless disregard to Plaintiff's right to equal pay.

89.     As a result of Defendants' Absolute Software, Inc. and Absolute Software Corporation conduct, Plaintiff has suffered both economic and emotional harm.

90.     Plaintiff is therefore entitled to relief including but not limited to, equitable

and injunctive relief, an award of compensatory damages, back pay, front pay, expenses, and attorney's fees in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### *Retaliation in Violation of the Equal Pay Act*
### *(Defendants Absolute Software, Inc. and Absolute Software Corporation only)*

91.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

92.    Plaintiff engaged in protected conduct under 29 U.S.C. § 215(a)(3).

93.    Defendants Absolute Software, Inc. and Absolute Software Corporation discharged Plaintiff in retaliation for having engaged in such protected conduct.

94.    As a result of Defendants' Absolute Software, Inc. and Absolute Software Corporation conduct, Plaintiff has suffered both economic and emotional harm.

95.    Plaintiff is therefore entitled to relief including but not limited to, equitable and injunctive relief, an award of compensatory damages, back pay, front pay, expenses, and attorney's fees in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### *New York State Equal Pay Act, New York Labor Law § 194*
### *(Defendants Absolute Software, Inc. and Absolute Software Corporation only)*

96.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

97.    Defendants Absolute Software, Inc. and Absolute Software Corporation subjected Plaintiff to a discriminatory lower rate of pay and other forms of compensation than similarly situated male colleagues on the basis of her gender even though Plaintiff performed equal work requiring equal skill, effort, and responsibility as her similarly situated

male colleagues.

98.     Plaintiff and similarly situated male colleagues all performed equal work that required equal skill, effort, and responsibility, and that was performed under similar working conditions.

99.     Defendant' Absolute Software, Inc. and Absolute Software Corporation actions were willful and not done in good faith.

100.    As a result of Defendants' Absolute Software, Inc. and Absolute Software Corporation conduct, Plaintiff has suffered both economic and emotional harm.

101.    Plaintiff is therefore entitled to relief including but not limited to liquidated damages on lost wages, equitable and injunctive relief, an award of compensatory damages, front pay, expenses, and attorney's fees in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
*NYSHRL—Age and Sex Discrimination*
*(All Defendants)*

102.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

103.    Under the NYSHRL, it is unlawful for an employer to discriminate against any individual because of such individual's sex or age.

104.    As a result of Plaintiff's termination, Defendants discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment because of Plaintiff's age and sex in violation of Article 15 of the New York State Human Rights Law, § 296, *et seq.*, as described above.

105.    As a proximate cause of Defendants' discrimination, Plaintiff has suffered and

continues to suffer substantial loss of past and future earnings, bonuses, and other employment benefits.

106. The conduct of Defendants was outrageous and done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to relief as provided under the NYSHRL, including but not limited to, equitable and injunctive relief, an award of compensatory damages, back pay, front pay, expenses, and attorney's fees in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### *NYSHRL—Retaliation*
### *(All Defendants)*

107. Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

108. Section 296.1 of the NYSHRL protects employees, if they are being discriminated against on the basis of age or sex, from retaliation if the employee engages in protected activity protected by the NYSHRL, such as making internal or external complaint about discriminatory activity prohibited by the NYSHRL.

109. Plaintiff engaged in protected activity when she complained not only to Absolute's human resources department about Defendant Awtry's conduct, but also when she filed a charge of discrimination with the EEOC on September 4, 2015.

110. Defendants were aware that Plaintiff engaged in these protected activities.

111. Plaintiff suffered adverse employment actions by Defendants as described herein because she engaged in these protected activities.

112. As a result of Defendants' illegal actions, Plaintiff has suffered lost wages and

endured emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

113.    The conduct of Defendants was outrageous and done in conscious disregard of Plaintiff's rights.   Therefore, Plaintiff is entitled to relief as provided under the NYSHRL, including but not limited to, equitable and injunctive relief, an award of compensatory damages, back pay, front pay, expenses, and attorney's fees in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### *NYSHRL—Aiding and Abetting Discrimination and Retaliation*
### *(All Defendants)*

114.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

115.    By the aforementioned actions, each of the Defendants, separately and together, have aided and abetted discrimination and retaliation against Plaintiff in the terms, conditions, and privileges of her employment in violation of the NYSHRL.

116.    As a result of the aiding and abetting engaged in by Defendants, Plaintiff is entitled to relief as provided under the NYSHRL, including but not limited to, equitable and injunctive relief, an award of compensatory damages, back pay, front pay, expenses, and attorney's fees in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### *Tortious Interference with Prospective Business Relations*
### *(All Defendants)*

117.    Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

118.   Following the termination of Plaintiff's employment in violation of Title VII, the ADEA, and NYSHRL, Defendants had knowledge of Plaintiff's need to obtain alternative employment.

119.   Upon information and belief, Defendants intentionally interfered with Plaintiff's relationships and opportunities for employment by dishonest, unfair, and/or improper means, including but not limited to, tortiously making false and defamatory statements while Plaintiff attempted in good faith to obtain alternative employment.

120.   Defendants' actions have permanently injured Plaintiff's business relationships in the industry, and caused Plaintiff to suffer damages, including but not limited to: (1) harm to her career development in the software sales industry; (2) economic harm in the form of lost income, benefits, job security and opportunities for career advancement; (3) harm to her professional and personal reputation; and (4) mental anguish and emotional distress, including but not limited to, loss of self-esteem and self-confidence, loss of career fulfillment, stress, and anxiety.

121.   As a direct and proximate result of Defendants' tortious conduct, Plaintiff has suffered and continues to suffer, harm for which she is entitled an award of monetary damages and other relief.

122.   Defendants' conduct was intentional, willful, wanton and malicious, and was motivated by a desire to harm Plaintiff and an ill-will toward Plaintiff and/or a deliberate or reckless disregard for her well-being, for which Plaintiff is entitled to an award of punitive damages.

## TENTH CAUSE OF ACTION
### *Defamation and/or Slander Per Se*
### *(Defendants Absolute Software, Inc., Absolute Software Corporation, and Todd Awtry only)*

123.  Plaintiff repeats and realleges the allegations expressed above as if more fully set forth herein.

124.  Upon information and belief, Defendants Absolute Software, Inc., Absolute Software Corporation and Todd Awtry either published, or caused to be published, defamatory statements about Plaintiff.

125.  Specifically, these defamatory statements included the false assertions that Plaintiff was terminated by Absolute because she had "defrauded" the company and/or engaged in "criminal" activity.

126.  These statements were untrue and defamatory in that they falsely reported Plaintiff's professional character, actions and statements, and were made with an intent to harm Plaintiff professionally.

127.  Defendants Absolute Software, Inc., Absolute Software Corporation and Todd Awtry knew or should have known that such defamatory statements were false.

128.  Defendants Absolute Software, Inc., Absolute Software Corporation and Todd Awtry published such defamatory statements with malice.

129.  Defendants Absolute Software, Inc., Absolute Software Corporation and Todd Awtry published such defamatory statements with knowledge of their falsity and/or with a reckless disregard of their truth or falsity.

130.  Defendants' Absolute Software, Inc., Absolute Software Corporation and Todd Awtry statements constitute defamation and/or slander per se because they impugn Plaintiff's

honesty, trustworthiness, and professional fitness and abilities by falsely charging her with conduct that would tend to injure her in her trade or business.

131.   Defendants' Absolute Software, Inc., Absolute Software Corporation and Todd Awtry defamatory statements have harmed Plaintiff's professional reputation and standing in her industry, have caused her economic harm in the form of lost income, benefits, job security, and opportunities for job advancement, and have caused her embarrassment, humiliation, and emotional injury.

132.   As a direct and proximate result of Defendants' Absolute Software, Inc., Absolute Software Corporation and Todd Awtry conduct, Plaintiff has suffered and continues to suffer from humiliation, loss of standing in the community, loss of self-esteem, public disgrace, and emotional distress.

133.   As a direct and proximate result of Defendants' Absolute Software, Inc., Absolute Software Corporation and Todd Awtry conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

134.   Defendants' Absolute Software, Inc., Absolute Software Corporation and Todd Awtry conduct was intentional, willful, wanton and malicious, and was motivated by a desire to harm Plaintiff and an ill-will toward Plaintiff and/or a deliberate or reckless disregard for her well-being, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants in her favor and that she be given the following relief:

a.   an injunction preliminarily and permanently restraining defendant from engaging in the aforementioned discrimination; and

b.     and award to Plaintiff of the value of her lost wages, back pay, including lost fringe benefits, which resulted from the discriminatory acts and practices of Defendants; and

c.     liquidated damages in an amount equal to the sum of the amount of her lost wages, back pay, including lost fringe benefits, which resulted from the discriminatory acts and practices of the Defendants; and

d.     an award to Plaintiff of the value of her future lost wages and lost future fringe benefits which resulted from the discriminatory acts and practices of Defendants, or other appropriate equitable relief; and

e.     an award to Plaintiff of civil penalties provided by the relevant statutes; and

f.     an award of consequential damages sustained by Plaintiff as a result of the discriminatory acts and practices of the Defendants; and

g.     an award of punitive damages;

h.     an award of compensatory damages in an amount determined by the jury to be able to reasonably compensate Plaintiff for the humiliation, indignity, embarrassment, damage to her reputation, emotional distress, emotional pain and suffering and the loss of enjoyment of life she has endured as a result of Defendants' conduct; and

i.     and award of reasonable attorneys' fees, expenses, expert fees and costs incurred by Plaintiff in vindicating her rights; and

j.     an award of pre and post judgment interest; and

k.     such other and further legal or equitable relief as this Court deems to be just and appropriate.

**JURY DEMAND**

Plaintiff demands a jury to hear and decide all issues of fact.

Dated:    May 18, 2016

THOMAS & SOLOMON LLP

By:    s/ J. Nelson Thomas
J. Nelson Thomas, Esq.
Jonathan W. Ferris, Esq.
*Attorneys for Plaintiff*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com