UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY VAN BRUNT-PIEHLER,<br><br>          *Plaintiff,*<br><br>v.<br><br>ABSOLUTE SOFTWARE, INC., ABSOLUTE SOFTWARE CORPORATION, GEOFF HAYDON, THOMAS KENNY, and TODD AWTRY,<br><br>          *Defendants.* | Civil Action No.<br>16-CV-6313-EAW-MWP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL ENTIRE PERSONNEL FILES**

                 **THOMAS & SOLOMON LLP**
                 *Attorneys for Plaintiffs*
                 693 East Avenue
                 Rochester, NY 14607
                 Telephone: (585) 272-0540

Of Counsel: J. Nelson Thomas, Esq.
        Jonathan W. Ferris, Esq.

## PRELIMINARY STATEMENT

Defendants must produce the *entire* personnel files for the comparators and decisionmakers in this action, regardless of whether certain documents in the personnel files were created during the relevant time period.

First, truncated and incomplete personnel files do not give a complete picture of how other individuals were treated. The subsequent treatment of other employees, and especially comparators, at later dates is extremely relevant in comparing plaintiff's employment to those employees.

Second, plaintiff is aware that many of the main actors in this case, such as Mssrs. Haydon, Kenny, and Awtry, are no longer employed by defendants. If those individuals (or others) were reprimanded or terminated because of their conduct related to this case, that information would be highly relevant to this action.

Therefore, defendants must produce the entire personnel files for the decisionmakers and comparators in this action, regardless of the date that specific documents in the personnel file were created.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mary Van Brunt-Piehler ("Ms. Piehler") was employed by Absolute Software as the Northeast Regional Director from approximately November 1, 2010 to July 1, 2015. *See* Dkt. No. 34 at ¶ 37.

Despite receiving exceptional performance reviews and always meeting or exceeding her sales goals, Ms. Piehler was fired just weeks after her boss and Absolute's now former Vice President of Sales, Thomas Kenny (a named defendant in this action), stated that Absolute's now former Chief Executive Officer, Geoff Haydon (also a named defendant in this action)

wanted to get rid of employees "that are at the end of the rainbow," and "just hire guys who are athletes, who talk sports and trash and get in each other's faces." *Id*. at ¶¶ 44-46. These comments were made at a manager's meeting, in front of dozens of employees, including plaintiff. *Id*. at ¶ 46. The other attendees have verified these comments were made.

Even after her termination, plaintiff continued to be subjected to discrimination and defamatory remarks by Absolute. *Id*. at ¶ 61. Ms. Piehler learned from former co-workers in October 2015 and February 2016 that Absolute had told employees that plaintiff was fired by Absolute because she had defrauded the company and engaged in criminal activity. *Id*. at ¶ 64. These comments were absolutely untrue and simply a smear campaign in an attempt to discredit Ms. Piehler. *Id*. at ¶¶ 67-68.

Subsequently, Ms. Piehler filed this action against Absolute Software, Inc. Absolute Software Corporation, Geoff Haydon, Thomas Kenny, and Todd Awtry (collectively "defendants") on May 18, 2016 asserting ten causes of action: Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Equal Pay Act ("EPA"), 29 U.S.C. § 206, *et seq.*; the New York State Equal Pay Act, New York Labor Law § 194; the New York State Human Rights Law ("NYSHRL"); New York Executive Law § 290, *et seq.*; and under the common law theories of tortious interference with prospective business relations, and defamation. *See* Dkts. 1, 34.

During discovery, plaintiff sought the entire personnel files of various comparators and decisionmakers. *See* Affirmation of Jonathan W. Ferris ("Ferris Aff.") at ¶ 5. For the agreed upon individuals, defendants initially produced personnel files for only the relevant time period. *Id*. at ¶ 6. After conferral with the defendants that confirmed that defendants would not produce the entire personnel files, plaintiff informally raised this issue with the Court and

the issue was discussed with the Court during the May 8, 2018 status conference. *Id*. at ¶ 7. During the status conference, the Court noted that it was "inclined to agree with plaintiffs on this. I mean, I tend to think when I order personnel files to be turned over, I am looking for the entirety of the file to be turned over …" *See* Oral Argument Transcript at 30: 24-25; 31:1-2.

Following the status conference, defendants have indicated that they will produce documents from the personnel files from the inception of an individual's employment, regardless of whether such documents were created prior to the beginning of the relevant time period. *Id*. at ¶ 8. However, defendants are still only producing documents in the personnel files through the end date of the relevant time period, July 1, 2016. *Id*. at ¶ 9.

Therefore, plaintiff files the instant motion to compel the production of the entirety of personnel files, including documents in the files after July 1, 2016.

## ARGUMENT

I. **The entire personnel files are relevant and necessary in evaluating comparator evidence.**

There is no dispute that personnel files are relevant in a discrimination case. The Supreme Court has directed that discovery in discrimination cases is broad and that a plaintiff is to be given "broad access to employers' records." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989). Given this directive, courts allow for the discovery of complete personnel files. *See Lauer v. Longevity Med. Clinic PLLC,* No. C13-0860-JCC, 2014 WL 5471983, at *4 (W.D. Wash. Oct. 29, 2014) (entire personnel files are discoverable); *E.E.O.C. v. Beauty Enterprises, Inc.*, No. CIV. 3:01CV378 (AHN), 2008 WL 3359252, at *6 (D. Conn. Aug. 8, 2008). In other words, an employer is not allowed to simply select the documents within the

personnel file it deems relevant because it is the entirety of the personnel file that must be produced. *See Ladson v. Ulltra E. Parking Corp.,* 164 F.R.D. 376, 377 (S.D.N.Y. 1996).

As the Court suggested during the status conference, this relevancy should not be limited in temporal scope. *See* Oral Argument Transcript at 30: 24-25; 31:1-2. By definition, comparator evidence requires comparing how similarly situated employees are treated. This is a continuing evaluation—even after the end date of a defined relevant time period, the treatment of other employees remains highly relevant. *See Ladson,* 164 F.R.D. at 378 ("The Court is at a loss to see why current employees' files might not provide information about hiring and promotion that could be relevant or could lead to the discovery of relevant evidence.").

For example, suppose that there are two cashier working for a company. One is fired immediately for having two dollars missing from their cash drawer. A second cashier has four dollars missing from their cash drawer, but is not terminated, and in fact is promoted two years later. The cashiers are obviously comparators and there may be numerous explanations that justify (or not) the employer's differing treatment of the two cashiers. However, the comparison can only be made by looking at the full personnel file of the second cashier to understand how that employee was treated differently. In other words, an incomplete personnel file does not provide the complete picture in understanding how the employer has treated comparators.

If an employee's personnel file is relevant, the entire personnel file is relevant. If only part of the file is produced, it leaves only a distorted view of the employee's work history as well as the employer's treatment of that employee based on that work history. For example. if Absolute did not fire an employee who engaged in more serious misconduct than Ms. Piehler three years later, that would be probative of defendant's discriminatory animus. The time gap does not bleach out Absolute's improper treatment of Ms. Piehler and in fact helps prove her

case. Similarly, if the files showed there was an ongoing pattern of discrimination against the comparators stretching to the close of discovery, that, too, would be highly relevant. The defendant does not get a free pass to hide discrimination against comparators because it happened more recently. Nor can one assess an employee's overall job performance with selectively produced parts of a personnel file. Therefore, there is no basis to arbitrarily limit the documents produced in a personnel file.

Defendants are certainly free at trial to suggest to a jury that the passage of time accounts for how otherwise comparator employees were treated differently, whether it be changes in management, promotion opportunities, economic conditions, company priorities, etc. However, in order for those comparisons to be properly made by the jury, the entire personnel files must be produced so that a jury may fully understand the full factual circumstances of each employee's situation.

As defendants now apparently concede in producing documents from the personnel files from the inception of an individual's employment, documents in the personnel files beyond just those in the relevant time period definition must be produced. However, they must do the same for the all documents in the personnel files. Limiting the personnel files to an otherwise arbitrary end date does not allow the proper comparator comparisons to be made.

II.     **The entire personnel files contain relevant information regarding discipline involving the individual defendants and decisionmakers**

Additionally, the production of the entire personnel files, and especially for the individual defendants and decisionmakers, is necessary to understand both if they were ever disciplined for any conduct related to this case and the circumstances of their departure from the company.

The Court identified the clear relevancy of the entire personnel files in this regard during the status conference:

> I do think, for example, if we, for example, I mean, let's take the example of the plaintiff's direct supervisor, you know, who may or may not be properly construed as a comparator but typically we would see the personnel file of the plaintiff's supervisor being turned over. If that supervisor hypothetically had been disciplined a year before the relevant time period for having engaged in discrimination against somebody who is a member of the protected class that the plaintiff is a member of, I would say, yes, I think that's relevant. . .
>
> I mean, if it turns out that somebody whose personnel file is being turned over, there's a document in there that they were investigated for something or they were interviewed about some conduct that -- about their treatment of the plaintiff and that happened a year after the cutoff, that's certainly relevant and that should be turned over.

Transcript of Oral Argument at 32: 5-25; 33:1-2.

As discussed above, if only part of an employee's personnel file is produced, it leaves only a distorted view of the employee's work history. This rule applies with even more force to the individual defendants and decisionmakers. As to them, not only do the same considerations above apply, but all have been terminated by Absolute. Understanding the basis of their termination and performance is highly relevant. As just one example, if Mr. Kenny was fired in whole or in part for saying the company needed to fire women and hire younger males instead, that would be highly relevant to this lawsuit. And in converse, if he was fired for some other reason, and not for his overtly sexist and ageist comments, that, too, would be highly relevant. The same is true for Mr. Haydon who made the comments originally and Mr. Awtry who carried them out.

Therefore, as it is the entire personnel files that are relevant, any subsequent documents in the personnel files after July 1, 2016 must also be produced.

## CONCLUSION

For the foregoing reasons, defendants must produce the entire personnel files for the decisionmakers and comparators in this action, regardless of the date that specific documents in the personnel file were created.

Dated: May 31, 2018

                              **THOMAS & SOLOMON LLP**

                        By:   /s/ Jonathan W. Ferris
                              J. Nelson Thomas, Esq.
                              Jonathan W. Ferris, Esq.
                              *Attorneys for Plaintiffs*
                              693 East Avenue
                              Rochester, New York 14607
                              Telephone:  (585) 272-0540
                              nthomas@theemploymentattorneys.com
                              jferris@theemploymentattorneys.com