# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff,*

*versus*

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY

*Defendants.*

**PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS**

Civil Action No.
16-CV-6313-EAW-MWP

Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 34, Plaintiff requests that Defendants respond in writing, under oath, and produce the requested Documents set forth in the following Request for Production of Documents within 30 calendar days of service of this request at Thomas & Solomon LLP, 693 East Avenue, Rochester, New York 14607.

**PLEASE NOTE**:   This Request for Production of Documents shall be deemed continuing and shall be supplemented when necessary to reflect Documents found, events occurring and/or information becoming available subsequent to the service of Defendants' response to this discovery demand.

## DEFINITIONS AND INSTRUCTIONS

1.    When used in this document, the following terms are defined as follows. Defendants are to use these definitions in responding to the requests:

    1)    **Conduct Was Similar:** means other employees who have engaged in the Relevant Conduct or investigated for, accused of, disciplined for engaging in the Relevant Conduct at any time during the Relevant Time Period.

    2)    **Complaint:** means an oral or written expression of dissatisfaction, resentment, concern, discontent or grievance.  This includes Complaints

made formally or informally, and includes Complaints made internally or externally of Defendant. The term necessarily includes lawsuits, administrative complaints, charges or claims.

3)   **Communication**: means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4)   **Comparable Job Functions**: means job duties in which the Person performed sales management work for Defendants during the Relevant Time Period, including but not limited to Art Robinson, Kurt Luporini, Randy Dye, and Joe Morini.

5)   **Comparators**: means those Persons whose performance was reviewed in regards to any reduction-in-force in the Relevant Time Period; were paid on a salary and or commissions basis and were terminated by Defendants in the years 2014 to 2016; employed and/or terminated in Plaintiff's Employing Unit at any time during the Relevant Time Period; Sara Monaco, Jodi Carrol, Phyllis Johnson, Margot Onulak, and any those with Comparable Job Functions; and those "dozens of others of differing age and gender" that Defendants terminated within the last five years as referenced in Defendants' response to Plaintiff's Equal Employment Opportunity Commission charge that Defendant provided on or about December 10, 2015.

6)   **Compensation**: includes all pay and benefits of any kind provided by the Defendants to the Plaintiff, including any Salary/Benefit Data.

7)   **Concerning**: means relating to, referring to, describing, evidencing or constituting.

8)   **Defendants, Plaintiff or Parties (as well as a Party's full or abbreviated name or a pronoun referring to a Party)**: means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

9)   **Document**: is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this term.

10)   **Decisionmakers**: means each and every Person who provided input, counseling, suggestion or review of the decision to terminate the Plaintiff including, but not limited to: Todd Awtry, Thomas Kenny,

Geoff Haydon, and Daniel Berardo.  This term also means each and every Person who provided input, counseling, suggestion, or review Concerning the amount of Compensation to provide to Plaintiff including, but not limited to: Todd Awtry, Thomas Kenny, Geoff Haydon, Daniel Berardo, and Errol Olson.

11)   **Employing Unit:** means all Defendants' employees working in sales management work for Defendants.

12)   **Employment Decisions:** means determining the Plaintiff's Compensation and the Compensators of the Comparators; deciding to interview Plaintiff's replacement; the hiring of Plaintiff's replacement; and the termination of Plaintiff.

13)   **Employment Manuals:** means any and all Documents available to employees regarding company Policies and Practices.

14)   **Person**: means any natural person or any business, legal or governmental entity or association.

15)   **Personnel File**: means any and all records maintained either in the normal course of business or for any special purpose with respect to the application, course of employment, and termination of any employee of Defendants, and specifically includes applications, disciplinary notices, performance evaluations, employment histories or summaries, records of residential addresses and telephone numbers, termination notices, job assignment or classification records, Salary/Benefit Data, compensation, benefits and other similar records.  This definition is not limited to the Defendants' description of a "personnel file," but includes all the Documents listed above no matter how maintained.

16)   **Policies and Practices:** means any rule, instruction, guideline, guidance, policy, procedure, practice, statement, memorandum Concerning Defendants' approach to handling issue(s).

17)   **Related Entity:**  Any corporation, partnership, venture or business entity in which the Defendants own shares of stock or has other ownership interest or control, or any corporation, partnership, venture or business entity that owns shares of stock or has other ownership interest in Defendants.

18)   **Relevant Conduct:** means conduct Concerning any employee who management found difficult to work with, or were unsupportive of management decisions, or did not meet Defendants' performance

expectation in all areas during the Relevant Time Period.

19)   **Relevant Protected Category**: means those individuals over the age of 40 and/or women.

20)   **Relevant Statutes**: means Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et. seq.*; the Equal Pay Act ("EPA"), 29 U.S.C. § 206, *et seq.*; the New York State Human Rights Law ("NYSHRL"); and New York Executive Law § 290, *et seq.*

21)   **Relevant Time Period**: means July 2010 to the present.

22)   **Salary/Benefit Data**:  means all information on the person's salary or benefits, including, but not limited to, compensation plans, bonuses, commissions, targets, W-2s, 1099s, FICA, FUTA, tax forms benefit statements, memos, explanations, statements, paychecks, paystubs, summary plan descriptions in which the employee could or did participate, and plan Documents in which the employee could or did participate.

2.   Should Defendants object to any request, Defendants shall respond to any portion of the request that is not objectionable.

3.   If any Document is produced in redacted form, that portion of the Document that is redacted should be identified and the response should, with respect to each such redaction, identify the basis for producing the Document in redacted form.

4.   If any Document is withheld under a claim of privilege or other protection, please provide all of the following information with respect to any such Document, so as to aid the Court and the Parties hereto in determining the validity of the claim of privilege or other protection:

1)   The identity of the Person(s) who prepared the Document and who signed the Document, and over whose name it was sent or issued;

2)   The identity of the Person(s) to whom the Document was directed;

3)      The nature and substance of the Document, with sufficient particularity to enable the Court and the Parties thereto to identify the Document;

4)      The date of the Document;

5)      The identity of the person(s) who has (have) custody of, or control over, the Document and each copy thereof;

6)      The identity of each person to whom a copy of the Document was furnished;

7)      The number of pages of the Document;

8)      The basis on which any privilege or other protection is claimed; and

9)      Whether any non-privileged or non-protected matter is included in the Document.

5.      If counsel for Defendants should need any clarification of any requests, said counsel should contact Thomas & Solomon LLP, counsel for Plaintiff.

## DOCUMENTS TO BE PRODUCED

### REQUEST FOR DOCUMENTS NO. 1:

Any and all Documents identified in Defendants' Initial Disclosures.

### REQUEST FOR DOCUMENTS NO. 2:

Any and all Documents Concerning, or referred to in responding to, Plaintiff's First Set of Interrogatories or First Request for Production of Documents.

### REQUEST FOR DOCUMENTS NO. 3:

Any and all Documents which Concern Defendants' Policies and Practices for retention and destruction of Documents and all Communications Concerning litigation holds Concerning this case.

### REQUEST FOR DOCUMENTS NO. 4:

Any and all Documents Concerning Defendants' Policies and Practices (whether involving legal input or otherwise) Concerning how Employment Decisions are to be considered and/or made, but not limited to, including, the one in this case, and all Documents Concerning whether such Policies and Practices were followed in this case.

## REQUEST FOR DOCUMENTS NO. 5:

Any and all Documents reviewed in making the Employment Decisions regarding the Plaintiff and the Employment Decisions Concerning the Comparators, those performing Comparable Job Functions, and those employees whose Relevant Conduct was similar to Plaintiff's, including any review of the Employment Decisions to determine if the Employment Decisions complied with the law.

## REQUEST FOR DOCUMENTS NO. 6:

Any and all Documents Concerning any Communication between the Parties or their agents.

## REQUEST FOR DOCUMENTS NO. 7:

For the Relevant Time Period, any and all Documents Concerning Defendants' Policies and Practices Concerning Relevant Conduct, including, but not limited to, the application or non-application of Defendants' Policies and Practices to other employees whose Relevant Conduct was similar.

## REQUEST FOR DOCUMENTS NO. 8:

For the Relevant Time Period, any and all Documentation Concerning Salary/Benefit Data for Plaintiff and those performing Comparable Job Functions.

## REQUEST FOR DOCUMENTS NO. 9:

Any and all Documents Concerning the Personnel File of the Plaintiff, the individual Defendants, the Comparators, the Decisionmakers, and the male and female individuals referenced in Paragraph 46 of Defendants' Answer.

**REQUEST FOR DOCUMENTS NO. 10:**

For the Relevant Time Period, any and all Documents Concerning Employment Manuals, and any human resource Policies or Practices, including any Policies or Practices Relating to exit interviews.

**REQUEST FOR DOCUMENTS NO. 11:**

Any and all Documents reflecting any consideration, investigation, review (legal or otherwise), input or guidance Concerning the Employment Decisions regardless of whether such review occurred before or after the Employment Decision was made.

**REQUEST FOR DOCUMENTS NO. 12:**

During the Relevant Time Period, any and all Documents Concerning any contract, agreement release, settlement agreement, waiver, or severance agreement, or other similar document, executed between Defendants and either any Comparator or any employee or former employee who has been identified by any Party as a Person with potential knowledge about the facts of the case.

**REQUEST FOR DOCUMENTS NO. 13:**

Any and all Documents including, but not limited to, organizational charts, that reflect the parent corporation, affiliates, units and subsidiaries of Defendants; the ownership of the parent corporation and any Related Entity; the employees in such units or subsidiaries; the

corporate status of the units and subsidiaries; and the reporting relationship between the Defendants and the parent corporation, affiliates, units and subsidiaries.

**REQUEST FOR DOCUMENTS NO. 15:**

Any and all Documents that Defendants intend to use at trial.

**REQUEST FOR DOCUMENTS NO. 16:**

Any and all Documents which support Defendants' affirmative defenses.

Dated: August 1, 2016

**THOMAS & SOLOMON LLP**

By: _____

J. Nelson Thomas, Esq.
Jonathan W. Ferris
*Attorneys for Plaintiff*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff,*

v.

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF
HAYDON, THOMAS KENNY, and TODD
AWTRY,

*Defendants.*

Civil Action No.: 16-cv-6313
(EAW) (MWP)

## DEFENDANTS' OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants submit the following objections and responses to Plaintiff's First Request for Production of Documents. Defendants' objections and responses are based on information presently known to them and Defendants reserve the right to assert additional objections and to supplement these objections and responses based on information that arises subsequently.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The following General Objections are applicable to all of Plaintiff's Requests and are incorporated into each of Defendants' Responses. By responding to any of Plaintiff's Requests, Defendants do not waive these General Objections or any specific objections to specific Requests.

Defendants have searched, and continue to search, for documents responsive to Plaintiff's document requests. Discovery is ongoing, and Defendants reserve the right to revise, correct, add to, supplement, or clarify any of their responses to Plaintiff's Requests. To the extent that Defendants agree to produce certain documents in response to a Request, Defendants' response

shall be construed as an agreement to provide such non-privileged, responsive documents as they may locate during the course of discovery, within the parameters set forth below.

1.      Defendants object to Plaintiff's Requests to the extent they request information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or exemptions.  No such documents or information will be produced.

2.      Responses to Plaintiff's Requests are made without in any way intending to waive or waiving, but, to the contrary, intending to preserve and preserving (i) all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose, of any Responses to Plaintiff's Requests or the subject matter thereof, in any subsequent proceeding or this action; (ii) the right to object to the use of any Responses to Plaintiff's Requests or the subject matter thereof, in any subsequent proceeding in this or any other action; and (iii) the right to object on any ground at any time to a demand for  further responses to Plaintiff's Requests or to any other Requests or discovery requests involving or relating to the subject matter of Plaintiff's Requests.

3.      Defendants object to Plaintiff's Requests, including Plaintiff's "Definitions," to the extent they purport to impose burdens upon Defendant not permitted or contemplated by the applicable rules or other law.

4.      Defendants object to the definition of "Comparators" as overly broad to the extent it includes any employees who are not similarly situated to the Plaintiff.  This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

5.      Defendants object to the definition of "Decisionmakers" as overly broad to the extent it includes individuals who were not involved in the compensation or termination

- 2 -

decisions regarding Plaintiff.   This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

6.      Defendants object to the definition of "Employment Decisions" because it is overly broad to the extent it includes compensation of the "Comparators".   As set forth in General Objection 4 above, the definition of "Comparators" is overly broad.   This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

7.      Defendants object to the definition of "Related Entity" because it is overly broad to the extent it includes other business entities that are not named Defendants in this Action. This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

8.      Defendants object to the definition of "Relevant Conduct" because it is overly broad to the extent it includes conduct that is not relevant to this Action and to the extent it includes conduct concerning "any employee" regardless of whether such employees are relevant to this Action.   This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

9.      Defendants object to the definition of "Relevant Time Period" because it is overly broad.   The relevant time period for this Action is January 2014 through November 2015, and, unless otherwise noted in response to a specific request, Defendants shall limit their responses to this relevant time period. This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

- 3 -

10.     Defendants object to the definition of "Salary/Benefit Data" because it is overly broad to the extent it includes categories of documents other than those sufficient to show compensation and benefits.  This general objection is incorporated by reference into the response to each individual Request that uses this defined term, even if not specifically set forth therein.

11.     Defendants encourage further discussion between counsel regarding the Requests, if necessary, with the expectation and hope that such discussions can lead to further agreement regarding any disputes related to discovery.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR DOCUMENTS NO. 1:

Any and all Documents identified in Defendants' Initial Disclosures.

### RESPONSE NO. 1:

Defendants object that this Request is overly broad and premature.  Defendants' Initial Disclosures identified categories of documents that "may" be used to support their defenses. Defendants have not yet determined which documents support their defenses.  Defendants reserve the right to supplement their response to this Request as they make such determinations. Subject to the foregoing objections, Defendants will produce documents responsive to this Request.

### REQUEST FOR DOCUMENTS NO. 2:

Any and all Documents Concerning, or referred to in responding to, Plaintiff's First Set of Interrogatories or First Request for Production of Documents.

### RESPONSE NO. 2:

Defendants object to this Request on the ground that it is overly broad, that it seeks information that is not relevant to any issue in this Action, and that it is not proportional to the

- 4 -

needs of this Action.  Subject to the foregoing objections, Defendants will produce documents responsive to this request.  Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 1, 2016.  Defendants expect to complete their production by November 15, 2016.

## REQUEST FOR DOCUMENTS NO. 3:

Any and all Documents which Concern Defendants' Policies and Practices for retention and destruction of Documents and all Communications Concerning litigation holds Concerning this case.

### RESPONSE NO. 3:

Defendants object to this Request to the extent that it calls for the production of Defendants' ligation hold notice(s) and documents and communications concerning Defendants' litigation hold notice(s) concerning this Action because such documents are privileged and/or work-product protected.  *See Tracy v. NVR, Inc.*, 2012 WL 1067889, at *6 (W.D.N.Y. Mar. 26, 2012); *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009). Defendants object to this Request to the extent it is overly broad, as it seeks information that is not relevant to any issue in this Action and not proportional to the needs of this Action.  Subject to the foregoing objections, Defendants will produce documents concerning Defendants' policies for the retention of documents.  Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016.  Defendants expect to complete their production by November 15, 2016.

## REQUEST FOR DOCUMENTS NO. 4:

Any and all Documents Concerning Defendants' Policies and Practices (whether involving legal input or otherwise) Concerning how Employment Decisions are to be considered

- 5 -

and/or made, but not limited to, including, the one in this case, and all Documents Concerning whether such Policies and Practices were followed in this case.

**RESPONSE NO. 4:**

Defendants object to this Request on the ground that it is overly broad, is vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Defendants also object to the extent that this Request is duplicative of Request No. 10.  Subject to the foregoing objections, Defendants will produce policies that were in effect during the time of Plaintiff's employment and that relate to employees in Plaintiff's geographic region.  Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016.  Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 5:**

Any and all Documents reviewed in making the Employment Decisions regarding the Plaintiff and the Employment Decisions Concerning the Comparators, those performing Comparable Job Functions, and those employees whose Relevant Conduct was similar to Plaintiff's, including any review of the Employment Decisions to determine if the Employment Decisions complied with the law.

**RESPONSE NO. 5:**

Defendants object to this Request on the ground that it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Defendants also object to the extent that this Request is duplicative of Request No. 8 and Request No. 9.  Subject to the foregoing objections, Defendants will produce documents concerning Plaintiff's compensation and that of other Regional

- 6 -

Directors or Area Vice Presidents who reported to Todd Awtry from January 2010 through July 2015; interviewing and hiring Plaintiff's replacement; and terminating Plaintiff. Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016. Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 6:**

Any and all Documents Concerning any Communication between the Parties or their agents.

**RESPONSE NO. 6:**

Defendants object to this Request on the ground that it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Subject to the foregoing objections, Defendants will produce communications between Defendants and Plaintiff that are relevant to this Action. Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016. Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 7:**

For the Relevant Time Period, any and all Documents Concerning Defendants' Policies and Practices Concerning Relevant Conduct, including, but not limited to, the application or non-application of Defendants' Policies and Practices to other employees whose Relevant Conduct was similar.

**RESPONSE NO. 7:**

Defendants object to this Request on the ground that it is vague and ambiguous, overly broad, seeks information that is not relevant to any issue in this Action, and that it is not proportional to the needs of this Action. Defendants further object to the extent that this Request

is duplicative of Request No. 10.  Defendants refer Plaintiff to documents produced in response to Request No. 10.

**REQUEST FOR DOCUMENTS NO. 8:**

For the Relevant Time Period, any and all Documentation Concerning Salary/Benefit Data for Plaintiff and those performing Comparable Job Functions.

**RESPONSE NO. 8:**

Defendants object to this Request on the ground that it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Defendants also object to the extent that this Request is duplicative of Request No. 5 and Request No. 9.   Subject to the foregoing objections, Defendants will produce documents sufficient to demonstrate the salary and benefits for Plaintiff and other Regional Directors and Area Vice Presidents who reported to Todd Awtry (including: Amy Rathbun, Art Robinson, Kurt Luporini, Randy Dye, and Joe Morini) for the time period 2010 through July 2015.   Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016.  Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 9:**

Any and all Documents Concerning the Personnel File of the Plaintiff, the individual Defendants, the Comparators, the Decisionmakers, and the male and female individuals referenced in Paragraph 46 of Defendants' Answer.

**RESPONSE NO. 9:**

Defendants object to this Request on the ground that it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.

Subject to the foregoing objections, Defendants will produce Plaintiff's complete personnel file on October 3, 2016.

**REQUEST FOR DOCUMENTS NO. 10:**

For the Relevant Time Period, any and all Documents Concerning Employment Manuals, and any human resource Policies or Practices, including any Policies or Practices Relating to exit interviews.

**RESPONSE NO. 10:**

Defendants object to this Request on the ground that it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Defendants also object to the extent that this Request is duplicative of Request No. 4.  Subject to the foregoing objections, Defendants will produce policies that were in effect during the time of Plaintiff's employment and that relate to employees in Plaintiff's geographic region.  Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016.  Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 11:**

Any and all Documents reflecting any consideration, investigation, review (legal or otherwise), input or guidance Concerning the Employment Decisions regardless of whether such review occurred before or after the Employment Decision was made.

**RESPONSE NO. 11:**

Defendants object to this Request on the ground that it is vague and ambiguous, overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Defendants further object to this Request on the ground that it is duplicative of Request No. 5 and refer Plaintiff to documents produced in response to Request

- 9 -

No. 5.  Subject to the foregoing objections, Defendants will produce documents responsive to this Request.  Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016.  Defendants expect to complete their production by November 15, 2016.

**REQUEST FOR DOCUMENTS NO. 12:**

During the Relevant Time Period, any and all Documents Concerning any contract, agreement release, settlement agreement, waiver, or severance agreement, or other similar document, executed between Defendants and either any Comparator or any employee or former employee who has been identified by any Party as a Person with potential knowledge about the facts of the case.

**RESPONSE NO. 12:**

Defendants object to this Request on the ground that it is vague and ambiguous, overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.

**REQUEST FOR DOCUMENTS NO. 13:**

Any and all Documents including, but not limited to, organizational charts, that reflect the parent corporation, affiliates, units and subsidiaries of Defendants; the ownership of the parent corporation and any Related Entity; the employees in such units or subsidiaries; the corporate status of the units and subsidiaries; and the reporting relationship between the Defendants and the parent corporation, affiliates, units and subsidiaries.

**RESPONSE NO. 13:**

Defendants object to this Request on the ground that it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.

4852-0059-5001\1

Subject to the foregoing objections, Defendants will produce organizational charts for Absolute Software, Inc. and Absolute Software Corporation on a rolling basis beginning on October 3, 2016. Defendants expect to complete their production by November 15, 2016.

**[Note: Plaintiff's First Request for Production of Documents skipped number 14 in its numbering of Requests]**

<u>**REQUEST FOR DOCUMENTS NO. 15:**</u>

Any and all Documents that Defendants intend to use at trial.

<u>**RESPONSE NO. 15:**</u>

Defendants object that this Request is premature. Defendants have not yet determined which documents they intend to use at trial. Defendants reserve the right to supplement their response to this Request as they make such determinations for the use of documents at trial.

<u>**REQUEST FOR DOCUMENTS NO. 16:**</u>

Any and all Documents which support Defendants' affirmative defenses.

<u>**RESPONSE NO. 16:**</u>

Defendants object to this Request on the ground that it is overly broad, and is not proportional to the needs of this Action. Subject to the foregoing objections, Defendants will produce documents sufficient to support Defendants' affirmative defenses. Defendants will begin producing documents responsive to this Request on a rolling basis beginning on October 3, 2016. Defendants expect to complete their production by November 15, 2016.

4852-0059-5001\1

Dated:  October 3, 2016            **DORSEY & WHITNEY LLP**

By:    _/s/ David C. Singer_
        David C. Singer
        Laura M. Lestrade
        Daniel W. Beebe
        _Attorneys for Defendants_
        51 West 52nd Street
        New York, New York 10019
        Telephone:  (212) 415-9200

- 12 -

# Exhibit C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff,*

*versus*

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY,

*Defendants.*

PLAINTIFF'S FIRST SET OF
INTERROGATORIES

Civil Action No.
16-CV-6313-EAW-MWP

Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 34, Plaintiff requests that

Defendants respond in writing, under oath, to the following interrogatories within 30 calendar

days of service of this request.

**PLEASE NOTE**:  This Set of Interrogatories shall be deemed continuing and shall be

supplemented when necessary to reflect events occurring and/or information becoming available

subsequent to the service of Defendants' response to this discovery demand.

## DEFINITIONS AND INSTRUCTIONS

1.      When used in this document, the following terms are defined as follows.

Defendants are to use these definitions in responding to the requests:

1)      **Conduct Was Similar:** means other employees who have engaged in the
Relevant Conduct or investigated for, accused of, disciplined for engaging
in the Relevant Conduct at any time during the Relevant Time Period.

2)      **Complaint:** means an oral or written expression of dissatisfaction,
resentment, concern, discontent or grievance.  This includes complaints
made formally or informally, and includes Complaints made internally or
externally of Defendants.   The term necessarily includes lawsuits,
administrative complaints, charges or claims.

3)      **Communication:** means the transmittal of information (in the form of
facts, ideas, inquiries or otherwise).

4)      **Comparable Job Functions**: means job duties in which the Person performed sales management work for Defendants during the Relevant Time Period, including but not limited to Art Robinson, Kurt Luporini, Randy Dye, and Joe Morini.

5)      **Comparators**: means those Persons whose performance was reviewed in regards to any reduction-in-force in the Relevant Time Period; were paid on a salary and or commissions basis and were terminated by Defendants in the years 2014 to 2016; employed and/or terminated in Plaintiff's Employing Unit at any time during the Relevant Time Period; Sara Monaco, Jodi Carrol, Phyllis Johnson, Margot Onulak, and any those with Comparable Job Functions; and those "dozens of others of differing age and gender" that Defendants terminated within the last five years as referenced in Defendants' response to Plaintiff's Equal Employment Opportunity Commission charge that Defendant provided on or about December 10, 2015.

6)      **Compensation**: includes all pay and benefits of any kind provided by the Defendants to the Plaintiff, including any Salary/Benefit Data.

7)      **Concerning**: means relating to, referring to, describing, evidencing or constituting.

8)      **Corporate or Business Relationship**: means i) any employee(s) who held and/or holds positions in both the Defendants and any Related Entity, as well as the job duties of such individuals; ii) any and all involvement between the Defendants and the Entities as it involves the decision-making process, management, operation or human resource function of Defendants and the Related Entities; iii) and the sharing of financial relationships, such as bank accounts, accounting services and preparation of tax returns between the Defendants and any Related Entity.

9)      **Defendants, Plaintiff or Parties (as well as a Party's full or abbreviated name or a pronoun referring to a Party)**: means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

10)     **Describe in Detail or Set Forth the Factual Basis**: means to: (i) describe fully by reference to underlying facts rather than by ultimate facts or conclusion of facts or law; and (ii) particularize as to (a) times, (b) place, and (c) manner.

11)     **Document**: is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this

term.

12)   **Decisionmakers:** means each and every Person who provided input, counseling, suggestion or review of the decision to terminate the Plaintiff including, but not limited to: Todd Awtry, Thomas Kenny, Geoff Haydon, and Daniel Berardo. This term also means each and every Person who provided input, counseling, suggestion, or review Concerning the amount of Compensation to provide to Plaintiff including, but not limited to: Todd Awtry, Thomas Kenny, Geoff Haydon, Daniel Berardo, and Errol Olson.

13)   **Employing Unit:** means all Defendants' employees working in sales management work for Defendants.

14)   **Employment Decisions:** means determining the Plaintiff's Compensation and the Compensators of the Comparators; deciding to interview Plaintiff's replacement; the hiring of Plaintiff's replacement; and the termination of Plaintiff.

15)   **Employment Manuals:** means any and all Documents available to employees regarding company Policies and Practices.

16)   **Identify (when referring to a Person):** means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment. Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

17)   **Identify (when referring to a Document):** means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s) and recipients(s). Alternatively, if a Document is being produced and Bates numbered, the Bates number alone can be identified.

18)   **Identify (when referring to an oral statement, interview conversation or conference):** means to (i) identify the Person making each statement, the Person to whom each statement was made, and all other Persons present at the time of each statement; (ii) state the date of such statement, conversation, or conference; (iii) state the place where such statement or conversation was held; or (iv) if by telephone, the Persons making the call and state the places where the Persons participating in the call were located; and (v) describe in detail the substance of each statement, conversation, or conference.

19) **Identify (when referring to an act):** means to (i) state the date and place of the act; (ii) identify the Person acting; (iii) identify the Person for whom the act was performed; (iv) identify the Person against whom the act was performed; (v) identify all witnesses to the act; and (vi) describe the act in detail.

20) **Identify (when referring to a Complaint):** means (i) the name, title, age, and sex of each employee who was the basis of the complaint; (ii) the name, title , age, and sex of the employees making the complaint; (iii) the acts or circumstances of each complaint; (iv) the date(s) of these acts or circumstances; (v) the action taken by the employer in response to each complaint; (vi) the name, title, age, and sex of the Person responsible for investigating each Complaint; and (vii) Defendant's response to each complaint.  If the Complaint resulted in a administrative charge or court action, "Identify" means additionally identifying: (i) the parties to the Complaint; (ii) any number assigned to such Complaint; (iii) the court or agency with which the Complaint was filed; (iv) the date the Complaint was filed; (v) the date the matter was terminated (if ever); and (vi) all Documents Concerning the matter.

21) **Identify (when referring to a Policy or Practice):** means full Identification of all such Policies and Practices and Documents concerning such practices, and additionally includes, but is not limited to: i) the dates during which the Policy or Practice was in effect; ii) a description of the Policy or Practice; iii) whether the Policy or Practice was formal or informal; iv) whether the Policy or Practice was written or oral; v) who was responsible for formulating the Policy or Practice; vi) how the policy was distributed; and vii) who was responsible for enforcing the Policy or Practice.

22) **Person:** means any natural person or any business, legal or governmental entity or association.

23) **Personnel File:** means any and all records maintained either in the normal course of business or for any special purpose with respect to the application, course of employment, and termination of any employee of Defendants, and specifically includes applications, disciplinary notices, performance evaluations, employment histories or summaries, records of residential addresses and telephone numbers, termination notices, job assignment or classification records, Salary/Benefit Data, compensation, benefits and other similar records.  This definition is not limited to the Defendants' description of a "personnel file," but includes all the Documents listed above no matter how maintained.

24) **Policies and Practices:** means any rule, instruction, guideline, guidance, policy, procedure, practice, statement, or memorandum Concerning Defendants' approach to handling issue(s).

25) **Related Entity:** Any corporation, partnership, venture or business entity in which the Defendants owns shares of stock or has other ownership interest or control, or any corporation, partnership, venture or business entity that owns shares of stock or has other ownership interest in Defendants.

26) **Relevant Conduct:** means conduct Concerning any employee who management found difficult to work with, or were unsupportive of management decisions, or did not meet Defendants' performance expectation in all areas during the Relevant Time Period.

27) **Relevant Protected Category:** means those individuals over the age of 40 and/or women.

28) **Relevant Statutes:** means Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et. seq.*; the Equal Pay Act ("EPA"), 29 U.S.C. § 206, *et seq.*; the New York State Human Rights Law ("NYSHRL"); and New York Executive Law § 290, *et seq.*

29) **Relevant Time Period:** means July 2010 to the present.

30) **Salary/Benefit Data:** means all information on the Person's salary or benefits, including, but not limited to, compensation plans, bonuses, commissions, targets, W-2s, 1099s, FICA, FUTA, tax forms benefit statements, memos, explanations, statements, paychecks, paystubs, summary plan descriptions in which the employee could or did participate, and plan Documents in which the employee could or did participate.

2. Should Defendants object to any request, Defendants shall respond to any portion of the request that is not objectionable.

3. If any information is withheld under a claim of privilege or other protection, please provide all of the following information with respect to any such

- 5 -

information, so as to aid the Court and the parties hereto in determining the validity of

the claim of privilege or other protection:

(a)     The nature and substance of the information, with sufficient particularity
to enable the Court and the parties thereto to identify the information;

(b)     The basis on which any privilege or other protection is claimed; and

(c)     Whether any non-privileged or non-protected matter is included in the
information.

4.      If counsel for Defendants should need any clarification of any requests, said

counsel should contact Thomas & Solomon LLP, counsel for Plaintiff.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in Detail all efforts Defendants made to comply with the Relevant Statutes and

identify all Documents Concerning such efforts.  (The scope of this interrogatory includes, but is

not limited to, any legal review, continuing legal education, training, classes, input, counseling,

suggestions or advice the Defendants have received and/or provided to its employees Concerning

compliance with the Relevant Statutes, as well as any information on which Defendants will rely

to claim that its alleged violations were not willful, or are not subject to punitive or liquidated

damages.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this*
*response need to be produced.)*

**INTERROGATORY NO. 2:**

Identify any Policies and Practices Concerning Defendants' treatment of Persons within the Relevant Protected Categories, including but not limited to, any and all Policies and Practices Concerning Defendants' suggested response to alleged violations of such Policies and Practices.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 3:**

During the Relevant Time Period, Identify any Communications, or any Documents Concerning Communications, made by employees, customers or clients that Defendants' may have treated any Person (including Plaintiff) differently because that Person may or may not have been within a Relevant Protected Category.  (The scope of this interrogatory includes, but is not limited to both Identifying Defendants' Policies and Practices for handling such Complaints, as well as the Defendants' investigation, actual response, report or discipline taken in response to any such Complaints.   Specific examples of such Complaints includes, but is not limited to, Thomas Kenny's comments regarding hiring and termination decisions by Defendants; Errol Olson's nude swim at the Global Sales Conference in January 2011; Plaintiff's Complaints of discrimination and retaliation as set forth in Paragraphs 38-41 and 108-113 of Plaintiff's Complaint; comments made by Defendants' agents and/or employees as described in Paragraphs 61-67 of Plaintiff's Complaint; and any similar Complaints of discrimination.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 4:**

During the Relevant Time Period, Identify any occasion, and any Documents Concerning such occasion(s), in which Defendant provided any discipline, counseling, admonishment, suggestion or input Concerning how an employee treated another employee within the Relevant Protected Category.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 5:**

Identify all Decisionmakers and Describe in Detail the role each played in the Employment Decisions, as well as Identifying any Documents Concerning this request.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 6:**

Identify any and all interviews Defendants or its agents, including attorneys, have had with Persons Concerning this matter, Identify who conducted the discussions/interview; and Identify all Documents Concerning such Communications, including whether any notes were made and the information supplied.  (If Defendants claim those Communications are privileged, provide a privilege log regarding those Communications.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 7:**

Identify each Person who has been asked to locate Documents or provide information to respond to any discovery requests in this matter, and Identify which requests the Person was

asked to provide information or Documents for and whether the individual provided information or Documents for that response.

**INTERROGATORY NO. 8:**

For every document Defendants produce in this matter, Identify the discovery request, paragraph(s) of the complaint and/or answer to which the Document is relevant.

**INTERROGATORY NO. 9:**

For each document request or interrogatory, identify what classes of Documents or information is being produced in response to that inquiry; what classes and on what basis Documents or information are being withheld; and what efforts were made to locate responsive information and Documents.

**INTERROGATORY NO. 10:**

Separately identify and Describe in Detail the factual basis for each affirmative defense Defendants' assert in this action and Identify any and all documents Concerning each affirmative defense.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 11:**

Describe in detail and Identify any and all Documents Concerning any Corporate or Business Relationship between Defendants and any Related Entity.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 12:**

During the Relevant Time Period, for each calendar year, Identify all employees Defendants employed, their ages and sex, and provide such information for any Related Entities. (For the purposes of this Interrogatory, "employ" and "employee" has the definition as set forth in the Relevant Statutes.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 13:**

Identify and Describe in Detail any Documents Concerning, any jobs that Defendants claim Plaintiff did not reasonably attempt to secure after the Employment Decision in this matter.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 14:**

Describe in Detail and Identify all Documents Concerning all efforts defense counsel has made to eliminate any potential conflict of interest among the named Defendants.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 15:**

Identify all employees present at the company meeting in New York City on approximately April 30, 2015.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 16:**

Identify any Persons who Defendants interviewed or considered for employment from January 1, 2015 to the present, including any Persons who were contacted via recruiters on behalf of Defendants.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**INTERROGATORY NO. 17:**

If Defendants believe that Plaintiff engaged in any criminal, fraudulent, illegal, or unethical conduct, Describe in Detail such conduct.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

Dated: August 1, 2016

THOMAS & SOLOMON LLP

By: _____

J. Nelson Thomas, Esq.
Jonathan W. Ferris
*Attorneys for Plaintiff*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540

- 11 -

# Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY VAN BRUNT-PIEHLER,<br><br>                              *Plaintiff,*<br><br>              v.<br><br>ABSOLUTE SOFTWARE, INC., ABSOLUTE SOFTWARE CORPORATION, GEOFF HAYDON, THOMAS KENNY, and TODD AWTRY,<br><br>                              *Defendants.* | Civil Action No.: 16-cv-6313 (EAW) (MWP) |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Rule 26, Defendants hereby submit the following objections and responses to Plaintiff's First Set of Interrogatories.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

Defendants' objections and responses are based on information presently known to them. Defendants have searched, and continue to search, for information responsive to Plaintiff's Interrogatories.  Discovery is ongoing, and Defendants reserve the right to revise, correct, add to, supplement, or clarify any of their answers to Plaintiff's Interrogatories.

The following General Objections are applicable to all of Plaintiff's Interrogatories and are incorporated into each of Defendants' Answers.  By responding to any of Plaintiff's Interrogatories, Defendants do not waive these General Objections or any specific objection to specific Interrogatories.

1.      Defendants object to Plaintiff's Interrogatories as vague to the extent they do not specify to which of the Defendants they are directed.  It appears from the nature of the information sought that the Interrogatories that they are directed to Absolute Software, Inc. and Absolute

- 1 -

4825-4440-9147\1

Software Corporation.  Subject to the foregoing objection, the following responses are made on behalf of Absolute Software, Inc. and Absolute Software Corporation.

2.     Defendants object to Plaintiff's Interrogatories to the extent they purport to impose obligations inconsistent with the requirements of the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Western District of New York.

3.     Defendants object to Plaintiff's Interrogatories to the extent that any response would be duplicative of information Plaintiff has already received from other sources, including documents produced in this Action in response to Plaintiff's First Request for Production of Documents (the "Document Requests").

4.     Defendants object to Plaintiff's Interrogatories to the extent they exceed the number of Interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure, which are limited to "no more than 25 written interrogatories, including all discrete subparts." *See Madison v. Nesmith*, 2008 WL 619171, at *3 (N.D.N.Y. Mar. 3, 2008) (if part of an interrogatory can be answered "fully and completely" without answering another part, then the parts are "totally independent" and are counted as "discrete subparts").

5.     Defendants object to Plaintiff's Interrogatories to the extent they request information protected by the attorney-client privilege, work-product doctrine, or any other applicable privileges or exemptions.  No such documents or information will be produced.

6.     Answers to Plaintiff's Interrogatories are made without in any way intending to waive or waiving, but, to the contrary, intending to preserve and preserving (i) all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose, of any Responses to Plaintiff's Interrogatories or the subject matter thereof, in any subsequent proceeding or this action; (ii) the right to object to the use of any Responses to Plaintiff's Interrogatories or the

- 2 -

subject matter thereof, in any subsequent proceeding in this or any other action; and (iii) the right to object on any ground at any time to a demand for further responses to Plaintiff's Interrogatories or to any other interrogatories or discovery requests involving or relating to the subject matter of Plaintiff's Interrogatories.

7.      Defendants object to Plaintiff's Interrogatories, including Plaintiff's "Definitions," to the extent they purport to impose burdens upon Defendants not permitted or contemplated by applicable rules or other law.

8.      Defendants object to the definition of "Comparators" as overly broad to the extent it includes any employees who are not similarly situated to the Plaintiff.  This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

9.      Defendants object to the definition of "Decisionmakers" as overly broad to the extent it includes individuals who were not involved in the compensation or termination decisions regarding Plaintiff.  This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

10.      Defendants object to the definition of "Employment Decisions" because it is overly broad to the extent it includes compensation of the "Comparators".  As set forth in General Objection 8 above, the definition of "Comparators" is overly broad.  This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

11.      Defendants object to the definition of "Related Entity" because it is overly broad to the extent it includes business entities that are not named Defendants in this Action.  This general

- 3 -

objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

12.      Defendants object to the definition of "Relevant Conduct" because it is overly broad to the extent it includes conduct that is not relevant to this Action and to the extent it includes conduct concerning "any employee" regardless of whether such employee is relevant to this Action. This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

13.      Defendants object to the definition of "Relevant Time Period" because it is overly broad.  The relevant time period for this Action is January 2014 through November 2015, and, unless otherwise noted in response to a specific Interrogatory, Defendants shall limit their responses to this relevant time period. This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

14.      Defendants object to the definition of "Salary/Benefit Data" because it is overly broad to the extent it includes categories of documents other than those sufficient to show compensation and benefits.  This general objection is incorporated by reference into the answer to each individual Interrogatory that uses this defined term, even if not specifically set forth therein.

15.      Defendants encourage further discussion between counsel regarding the Interrogatories, if necessary, with the expectation and hope that such discussions can lead to further agreement regarding any disputes related to discovery.

## SPECIFIC OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 1:

Describe in Detail all efforts Defendants made to comply with the Relevant Statutes and identify all Documents Concerning such efforts.  (The scope of this interrogatory includes, but is not

limited to, any legal review, continuing legal education, training, classes, input, counseling, suggestions or advice the Defendants have received and/or provided to its employees Concerning compliance with the Relevant Statutes, as well as any information on which Defendants will rely to claim that its alleged violations were not willful, or are not subject to punitive or liquidated damages.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

## RESPONSE TO INTERROGATORY NO. 1:

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Subject to the foregoing objections, Defendants state that, during Plaintiff's employment, discrimination and harassment training was provided to managers, including to Plaintiff and the individual defendants. A copy of the written materials that were part of the training was produced on October 3, 2016 in response to Document Request No. 10. Defendants also had policies in place during Plaintiff's employment that prohibit discrimination and harassment on the basis of age and sex (as well as other protected categories). Copies of such policies were produced in response to Document Request No. 10.

## INTERROGATORY NO. 2:

Identify any Policies and Practices Concerning Defendants' treatment of Persons within the Relevant Protected Categories, including but not limited to, any and all Policies and Practices Concerning Defendants' suggested response to alleged violations of such Policies and Practices.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 2:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.    Subject to the foregoing objections, see Response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

During the Relevant Time Period, Identify any Communications, or any Documents Concerning Communications, made by employees, customers or clients that Defendants' may have treated any Person (including Plaintiff) differently because that Person may or may not have been within a Relevant Protected Category.  (The scope of this interrogatory includes, but is not limited to both Identifying Defendants' Policies and Practices for handling such Complaints, as well as the Defendants' investigation, actual response, report or discipline taken in response to any such Complaints.  Specific examples of such Complaints includes, but is not limited to, Thomas Kenny's comments regarding hiring and termination decisions by Defendants; Errol Olson's nude swim at the Global Sales Conference in January 2011; Plaintiff's Complaints of discrimination and retaliation as set forth in Paragraphs 38-41 and 108-113 of Plaintiff's Complaint; comments made by Defendants' agents and/or employees as described in Paragraphs 61-67 of Plaintiff's Complaint; and any similar Complaints of discrimination.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Defendants also object to this Interrogatory to the extent that it is duplicative of

Interrogatory Nos. 1 and 2.  Subject to such objections, Defendants state that, with the exception of Plaintiff's EEOC Charge, dated September 1, 2015, Defendants did not receive any complaints of age or sex discrimination during the relevant time period, i.e., between January 2014 and November 2015.

## INTERROGATORY NO. 4:

During the Relevant Time Period, Identify any occasion, and any Documents Concerning such occasion(s), in which Defendant provided any discipline, counseling, admonishment, suggestion or input Concerning how an employee treated another employee within the Relevant Protected Category.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

### RESPONSE TO INTERROGATORY NO. 4:

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.

## INTERROGATORY NO. 5:

Identify all Decisionmakers and Describe in Detail the role each played in the Employment Decisions, as well as Identifying any Documents Concerning this request.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

### RESPONSE TO INTERROGATORY NO. 5:

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs

of this Action.  Subject to the foregoing objections, Defendants state:  Defendant Todd Awtry was the sole decision-maker for the Plaintiff's termination; Plaintiff's compensation, and the compensation of similarly situated employees, was determined in accordance with Absolute's compensation policies, copies of which were produced in response to Document Request No. 10 (see DEFS000339-343); the decision to hire Joseph Morini, who was hired after Plaintiff's employment was terminated and  whose job was substantially different from Plaintiff's, was made by Todd Awtry, with input from Thomas Kenny and Daniel Berardo and the approval of Geoff Haydon and Leigh Ramsden.   Defendants refer Plaintiff to documents produced in response to Document Request Nos. 5, 8, 9 and 10.

**INTERROGATORY NO. 6:**

Identify any and all interviews Defendants or its agents, including attorneys, have had with Persons Concerning this matter, Identify who conducted the discussions/interview; and Identify all Documents Concerning such Communications, including whether any notes were made and the information supplied.  (If Defendants claim those Communications are privileged, provide a privilege log regarding those Communications.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, and is not proportional to the needs of this Action.  Defendants also object to this Interrogatory because it calls for the production of attorney-client privileged and/or work-product protected information. Subject to the foregoing objections, Defendants state that when Plaintiff raised concerns about comments allegedly made in April 2015 by Thomas Kenny, Daniel Berardo conducted interviews of

individuals who may have witnessed such comments including, among others, Thomas Kenny, Myra Moy-Gregory and Amy Rathbun.   To date, Defendants have not located any non-privileged documents concerning such interviews.

**INTERROGATORY NO. 7:**

Identify each Person who has been asked to locate Documents or provide information to respond to any discovery requests in this matter, and Identify which requests the Person was asked to provide information or Documents for and whether the individual provided information or Documents for that response.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object to this Interrogatory because it is overly broad, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Defendants also object to this Interrogatory because it calls for the production of attorney-client privileged and/or work-product protected information.   Subject to the foregoing objections, Defendants state:  The following persons were asked to locate documents or provide information to respond to Plaintiff's discovery requests: Oliver de Geest, Errol Olsen, Todd Awtry, Geoff Haydon, Thomas Kenny, Theodore DiSalvo, Jeffrey Gottlieb, Amanda Mallow, Jennifer McCabe, Chris Covell, Min Shan Xu, Leigh Ramsden.

**INTERROGATORY NO. 8:**

For every document Defendants produce in this matter, Identify the discovery request, paragraph(s) of the complaint and/or answer to which the Document is relevant.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendants object to this Interrogatory because it is overly broad and unduly burdensome and to the extent it seeks to impose obligations inconsistent with the requirements of the Federal

Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Western District of New York, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Defendants further object that, to the extent this Interrogatory calls for a response regarding "every document" produced by Defendants, this Interrogatory exceeds the limit on the number of Interrogatories that Plaintiff may serve without first seeking leave of the Court, pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 9:**

For each document request or interrogatory, identify what classes of Documents or information is being produced in response to that inquiry; what classes and on what basis Documents or information are being withheld; and what efforts were made to locate responsive information and Documents.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendants object to this Interrogatory because it is overly broad and unduly burdensome and to the extent it seeks to impose obligations inconsistent with the requirements of the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Western District of New York, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Defendants further object that, to the extent this Interrogatory calls for a response regarding "each document request or interrogatory," this Interrogatory exceeds the limit on the number of Interrogatories that Plaintiff may serve without first seeking leave of the Court, pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 10:**

Separately identify and Describe in Detail the factual basis for each affirmative defense Defendants' assert in this action and Identify any and all documents Concerning each affirmative defense.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff was an at-will employee of Absolute Software, Inc. Plaintiff was not employed by Absolute Software Corporation. Plaintiff's compensation was paid by Absolute Software, Inc., not by Absolute Software Corporation.

The decision to terminate Plaintiff's employment on July 1, 2015 was made by her supervisor, defendant Todd Awtry, primarily because he found her difficult to work with and felt that she was unsupportive of his management, and not for discriminatory or retaliatory reasons.

Plaintiff never complained of discrimination during her employment.

There is no evidence to support Plaintiff's allegations of post-termination retaliation. There is no evidence to support Plaintiff's allegations of post-termination retaliation. There is no evidence of any false statements of fact about Plaintiff. There is no evidence that any such statements were published to parties outside of Absolute or that any such statements were not made in good faith between persons who had a reciprocal duty or interest in communicating the statements.

Upon information and belief, given her work experience and the strong high tech market in Rochester, it took Plaintiff an unreasonably long time to secure new employment.

Plaintiff is not significantly older than similarly situated employees whose employment was not terminated.

4825-4440-9147\1

Plaintiff was paid a salary comparable to similarly situated employees, both male and female. The compensation of Plaintiff and similarly situated employees were determined pursuant to a merit system that took into consideration the employee's job performance.  Merit increases for plaintiff and similarly situated employees were awarded based on a review of the employee's job performance for the previous year. Compensation decisions were not made on the basis of sex or age.

Employees to whom Plaintiff compares herself, including Art Robinson, Joseph Morini, Kurt Luporini and Randall Dye, did/do not perform substantially equal work on jobs requiring equal skill, effort and responsibility.  Nor did they work under the same working conditions.

Defendants have policies in place that prohibit discrimination on the basis of age and sex (and other protected classifications).  Defendants have provided non-discrimination and harassment training to managers including plaintiff and the individual defendants.   Defendants' policies prohibiting discrimination and harassment include procedures for making complaints of discrimination or harassment. Plaintiff has failed to follow those procedures.

Plaintiff failed to exhaust her administrative remedies concerning retaliation that she alleges took place in July 2014 and the statute of limitations for making such claim expired prior to the second EEOC Charge filed by Plaintiff on or about April 25, 2016.

**<u>INTERROGATORY NO. 11:</u>**

Describe in detail and Identify any and all Documents Concerning any Corporate or Business Relationship between Defendants and any Related Entity.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

- 12 -

**RESPONSE TO INTERROGATORY NO. 11:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.

**INTERROGATORY NO. 12:**

During the Relevant Time Period, for each calendar year, Identify all employees Defendants employed, their ages and sex, and provide such information for any Related Entities.  (For the purposes of this Interrogatory, "employ" and "employee" has the definition as set forth in the Relevant Statutes.)

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 12:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Subject to the foregoing objections, Defendants will produce the name, age and sex of all employees on the US sales team in 2014 and 2015.

**INTERROGATORY NO. 13:**

Identify and Describe in Detail any Documents Concerning any jobs that Defendants claim Plaintiff did not reasonably attempt to secure after the Employment Decision in this matter.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, and is not proportional to the needs of this Action.  Defendants also object that this Interrogatory requests information not in Defendants' possession, custody or control.  Subject to the foregoing objections, Defendants state that they have not yet completed their investigation of Plaintiff's alleged damages and reserve the right to supplement their response to this Interrogatory after such investigation has been completed.

**INTERROGATORY NO. 14:**

Describe in Detail and Identify all Documents Concerning all efforts defense counsel has made to eliminate any potential conflict of interest among the named Defendants.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 14:**

Defendants also object to the extent this Interrogatory seeks information that is attorney-client privileged and/or work-product protected.  Subject to the foregoing objections, Defendants respond that they have no non-privileged information responsive to this Interrogatory.

**INTERROGATORY NO. 15:**

Identify all employees present at the company meeting in New York City on approximately April 30, 2015.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 15:**

Defendants object to this Interrogatory because it is vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action. Subject to the foregoing objections, Defendants provide the following information:  a two-day sales leadership meeting took place in New York City on April 29 and 30, 2015.   The following employees were present for various segments of the meeting:  Todd Awtry, Mary Piehler, Amy Rathbun, Art Robinson, Warren Young, Troy Stultz, Michael Kenny, Thomas Kenny, Geoff Haydon, Myra Moy-Gregory, Bill de Dufour, Jonathan Barker, Daniel Miller, Matt Meanchoff, Jonathan Fisher, Stephen Midgley, Christopher Bolin.  Upon information and belief, the following employees were present for the segment of the meeting at which Thomas Kenny allegedly made the comments referenced in Plaintiff's Complaint: Todd Awtry, Mary Piehler, Amy Rathbun, Art Robinson, Warren Young, Troy Stultz, Michael Kenny, Thomas Kenny, Myra Moy-Gregory, Bill de Dufour, Daniel Miller, Matt Meanchoff, Stephen Midgley.

**INTERROGATORY NO. 16:**

Identify any Persons who Defendants interviewed or considered for employment from January 1, 2015 to the present, including any Persons who were contacted via recruiters on behalf of Defendants.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 16:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs

4825-4440-9147\1

of this Action.  Subject to the foregoing objections, Defendants will provide a list of individuals interviewed or considered for positions on the US sales team for the period January 2014 to the present.

**INTERROGATORY NO. 17:**

If Defendants believe that Plaintiff engaged in any criminal, fraudulent, illegal, or unethical conduct, Describe in Detail such conduct.

*(Please Note: Pursuant to the Request for Production of Documents, all Documents identified in this response need to be produced.)*

**RESPONSE TO INTERROGATORY NO. 17:**

Defendants object to this Interrogatory because it is overly broad, vague and ambiguous, seeks information that is not relevant to any issue in this Action, and is not proportional to the needs of this Action.  Defendants further object to this Interrogatory on the ground that it calls for a legal conclusion.  Subject to the foregoing objections, Defendants state that Plaintiff's conduct in connection with her intentional and improper characterization of certain sales contracts for the New York City Board of Education account was investigated by Absolute.  The investigation did not result in any disciplinary action against Plaintiff.  However, Plaintiff, among other individuals, was instructed to correct the manner in which future sales contracts were recorded.

Dated: October 19, 2016                  **DORSEY & WHITNEY LLP**

By:   */s/ David C. Singer*
      David C. Singer
      Laura M. Lestrade
      Daniel W. Beebe
      *Attorneys for Defendants*
      51 West 52nd Street
      New York, New York 10019
      Telephone:  (212) 415-9200

- 16 -

## **VERIFICATION**

I, Errol Olsen, declare under penalty of perjury that I am the CFO of Absolute Software Corporation and that I am authorized to make this verification on behalf of Absolute Software, Inc. and Absolute Software Corporation.   I have read the foregoing Objections and Responses to Plaintiff's First Set of Interrogatories ("Interrogatories"), and I believe the factual matters set forth in the responses to the Interrogatories to be true.   Some of the responses made in the Interrogatories are based upon my own knowledge and information, while other responses and information are based on information from other employees of Absolute Software Corporation and Absolute Software, Inc. with firsthand knowledge, upon which I am relying, but about which I may not have firsthand knowledge.

Errol Olsen

Dated: 19 Oct, 2016

- 17 -

# Exhibit E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————— X

MARY VAN BRUNT-PIEHLER,

                                    *Plaintiff,*

                *v.*

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY,

                                    *Defendants.*

———————————————————————— X

Civil Action No.: 16-cv-6313
(EAW)

**<u>AMENDED ANSWER TO
COMPLAINT</u>**

      Defendants Absolute Software, Inc., Absolute Software Corporation, Geoff

Haydon, Thomas Kenny and Todd Awtry, through their attorneys Dorsey & Whitney LLP, as

and for their Answer to the Complaint, state as follows:

      1.     Deny the allegations set forth in Paragraph 1 of the Complaint, except to

the extent that Paragraph 1 purports to state conclusions of law to which no response is required.

      2.     Deny the allegations set forth in Paragraph 2 of the Complaint, except to

the extent that Paragraph 2 purports to state conclusions of law to which no response is required.

      3.     Deny the allegations set forth in Paragraph 3 of the Complaint, except to

the extent that Paragraph 3 purports to state conclusions of law to which no response is required.

      4.     Deny the allegations set forth in Paragraph 4 of the Complaint, except to

the extent that Paragraph 4 purports to state conclusions of law to which no response is required.

      5.     Deny the allegations set forth in Paragraph 5 of the Complaint, except to

the extent that Paragraph 5 purports to state conclusions of law to which no response is required.

      6.     Deny having knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 6 of the Complaint, except admit that Plaintiff was

an employee of Absolute Software, Inc.

7.    Deny the allegations set forth in Paragraph 7 of the Complaint, except to the extent that Paragraph 7 purports to state conclusions of law to which no response is required.

8.    Deny the allegations set forth in Paragraph 8 of the Complaint, except to the extent that Paragraph 8 purports to state conclusions of law to which no response is required.

9.    Admit the allegations contained in Paragraph 9 of the Complaint.

10.    Admit the allegations contained in Paragraph 10 of the Complaint.

11.    Admit the allegations contained in Paragraph 11 of the Complaint.

12.    Deny the allegations contained in Paragraph 12 of the Complaint and state that Absolute Software Corporation's corporate headquarters are located at Suite 1400, Four Bentall Centre, 1055 Dunsmuir Street, Vancouver, BC, Canada V7X 1K8.

13.    Admit the allegations contained in Paragraph 13 of the Complaint.

14.    Deny the allegations contained in Paragraph 14 of the Complaint, and state that Daniel Berardo was generally involved in implementing human resource policies and in investigating and resolving employment issues, among other employees and executives who also assisted with such processes.

15.    Deny the allegations contained in Paragraph 15 of the Complaint.

16.    Deny the allegations contained in Paragraph 16 of the Complaint, except admit that Mr. Berardo was involved in investigating allegations made by plaintiff after her employment was terminated concerning statements allegedly made by Thomas Kenny in April 2015.

17.    Deny the allegations contained in Paragraph 17 of the Complaint, except admit that Plaintiff received her salary and, if she met certain performance criteria, quarterly commission from Absolute Software, Inc., and, on a discretionary basis subject to company performance, options to purchase common shares of Absolute Software Corporation.

18. Deny the allegations contained in Paragraph 18 of the Complaint and state that Absolute Software Inc. and Absolute Software Corporation each provide endpoint security and data risk management software for devices such as laptops, tablets and smart phones in the United States and Canada, respectively..

19. Admit the allegations contained in Paragraph 19 of the Complaint.

20. Deny the allegations contained in Paragraph 20 of the Complaint, except to the extent that Paragraph 20 purports to state conclusions of law to which no response is required.

21. Deny the allegations contained in Paragraph 21 of the Complaint.

22. Deny the allegations contained in Paragraph 22 of the Complaint.

23. Deny the allegations contained in Paragraph 23 of the Complaint, except admit that Thomas Kenny is Absolute Software, Inc.'s former Executive Vice President and General Manager.

24. Deny the allegations set forth in Paragraph 24 of the Complaint, except to the extent that Paragraph 24 purports to state conclusions of law to which no response is required.

25. Deny the allegations contained in Paragraph 25 of the Complaint.

26. Deny the allegations contained in Paragraph 26 of the Complaint, except admit that Kenny was involved in interviewing candidates to replace Plaintiff.

27. Deny the allegations contained in Paragraph 27 of the Complaint, except admit that Awtry was Absolute Software, Inc.'s Vice President of North American Sales and was plaintiff's former manager.

28.     Deny the allegations set forth in Paragraph 28 of the Complaint, except to the extent that Paragraph 28 purports to state conclusions of law to which no response is required.

29.     Deny the allegations set forth in Paragraph 29 of the Complaint, except admit that Awtry made the decision to terminate Plaintiff's employment with Absolute Software, Inc. and was in charge of preparing plaintiff's job performance reviews during her employment with Absolute Software, Inc.

30.     Deny the allegations set forth in Paragraph 30 of the Complaint, except admit that Awtry was Plaintiff's work supervisor and was involved, along with others, in setting Plaintiff's geographical work assignment.

31.     Deny the allegations set forth in Paragraph 31 of the Complaint, except to the extent that Paragraph 31 purports to state conclusions of law to which no response is required.

32.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

33.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint concerning Plaintiff's age and year of birth and deny the remaining allegations set forth in Paragraph 33 of the Complaint, except to the extent that Paragraph 33 purports to state conclusions of law to which no response is required.

34.     Deny the allegations set forth in Paragraph 34 of the Complaint.

35.     Deny the allegations set forth in Paragraph 35 of the Complaint, except admit that plaintiff worked for Absolute Software, Inc. as the Northeast Regional Director and that Awtry was her manager.

36.     Deny the allegations set forth in Paragraph 36 of the Complaint, except admit that Plaintiff was the oldest of Absolute Software, Inc.'s four regional sales directors at the time of Plaintiff's employment was terminated by Absolute Software, Inc.

37.     Deny the allegations set forth in Paragraph 37 of the Complaint.

38.     Deny the allegations set forth in Paragraph 38 of the Complaint.

39.     Deny the allegations set forth in Paragraph 39 of the Complaint.

40.     Deny the allegations set forth in Paragraph 40 of the Complaint.

41.     Deny the allegations set forth in Paragraph 41 of the Complaint.

42.     Deny the allegations set forth in Paragraph 42 of the Complaint.

43.     Deny the allegations set forth in Paragraph 43 of the Complaint.

44.     Deny the allegations set forth in Paragraph 44 of the Complaint.

45.     Deny the allegations set forth in Paragraph 45 of the Complaint, except admit that Plaintiff's employment with Absolute Software, Inc. was terminated on or about July 1, 2015.

46.     Deny the allegations set forth in Paragraph 46 of the Complaint, except admit that the employment of Sara Monaco, Jodi Carrol, Phyllis Johnson and Maragaret Onulak was also terminated, for various non-discriminatory reasons, as was the employment of numerous male employees.

47.     Deny the allegations set forth in Paragraph 47 of the Complaint.

48.     Deny the allegations set forth in Paragraph 48 of the Complaint.

49.     Deny the allegations set forth in Paragraph 49 of the Complaint.

50.     Deny the allegations set forth in Paragraph 50 of the Complaint, except admit that Joe Morini's compensation at the time he was hired was greater than Plaintiff's compensation was when she was terminated in July 2015 and state that Joe Morini's

responsibilities at the time he was hired were significantly different from Plaintiff's responsibilities while she was employed by Absolute Software, Inc.

51.     Deny the allegations set forth in Paragraph 51 of the Complaint.

52.     Deny the allegations set forth in Paragraph 52 of the Complaint, except admit that Joe Morini was hired as a replacement for Plaintiff and state that Joe Morini's responsibilities at the time he was hired were significantly different form Plaintiff's responsibilities while she was employed by Absolute Software, Inc.

53.     Deny the allegations set forth in Paragraph 53 of the Complaint.

54.     Deny the allegations set forth in Paragraph 54 of the Complaint.

55.     Deny the allegations set forth in Paragraph 55 of the Complaint, except admit that Plaintiff's employment with Absolute Software, Inc. was terminated by Absolute Software, Inc. on or about July 1, 2015.

56.     Deny the allegations set forth in Paragraph 56 of the Complaint.

57.     Deny the allegations set forth in Paragraph 57 of the Complaint.

58.     Deny the allegations set forth in Paragraph 58 of the Complaint.

59.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the Complaint.

60.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the Complaint.

61.     Deny the allegations set forth in Paragraph 61 of the Complaint.

62.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

63.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint.

64.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of the Complaint.

65.     Deny the allegations set forth in Paragraph 65 of the Complaint.

66.     Deny the allegations set forth in Paragraph 66 of the Complaint, except to the extent that Paragraph 31 purports to state conclusions of law to which no response is required.

67.     Deny the allegations set forth in Paragraph 67 of the Complaint.

68.     Deny the allegations set forth in Paragraph 68 of the Complaint.

ANSWERING THE FIRST CAUSE OF ACTION

69.     Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

70.     Paragraph 70 of the Complaint purports to state conclusions of law to which no response is required.

71.     Deny the allegations set forth in Paragraph 71 of the Complaint.

72.     Deny the allegations set forth in Paragraph 72 of the Complaint.

73.     Deny the allegations set forth in Paragraph 73 of the Complaint.

74.     Deny the allegations set forth in Paragraph 74 of the Complaint.

75.     Deny the allegations set forth in Paragraph 75 of the Complaint.

ANSWERING THE SECOND CAUSE OF ACTION

76.     Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

77.     Paragraph 77 of the Complaint purports to state conclusions of law to which no response is required.

78.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 78 of the Complaint, except to the extent that Paragraph 78 purports to state conclusions of law to which no response is required.

79.   Deny the allegations set forth in Paragraph 79 of the Complaint.

80.   Deny the allegations set forth in Paragraph 80 of the Complaint.

81.   Deny the allegations set forth in Paragraph 81 of the Complaint.

82.   Deny the allegations set forth in Paragraph 82 of the Complaint.

ANSWERING THE THIRD CAUSE OF ACTION

83.   Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

84.   Deny the allegations set forth in Paragraph 84 of the Complaint.

85.   Deny the allegations set forth in Paragraph 85 of the Complaint.

86.   Deny the allegations set forth in Paragraph 86 of the Complaint.

87.   Deny the allegations set forth in Paragraph 87 of the Complaint.

88.   Deny the allegations set forth in Paragraph 88 of the Complaint.

89.   Deny the allegations set forth in Paragraph 89 of the Complaint.

90.   Deny the allegations set forth in Paragraph 90 of the Complaint.

ANSWERING THE FOURTH CAUSE OF ACTION

91.   Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

92.   Deny the allegations set forth in Paragraph 92 of the Complaint, except to the extent that Paragraph 92 purports to state conclusions of law to which no response is required.

93.   Deny the allegations set forth in Paragraph 93 of the Complaint.

94.     Deny the allegations set forth in Paragraph 94 of the Complaint.

95.     Deny the allegations set forth in Paragraph 95 of the Complaint.

ANSWERING THE FIFTH CAUSE OF ACTION

96.     Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

97.     Deny the allegations set forth in Paragraph 97 of the Complaint.

98.     Deny the allegations set forth in Paragraph 98 of the Complaint.

99.     Deny the allegations set forth in Paragraph 99 of the Complaint.

100.    Deny the allegations set forth in Paragraph 100 of the Complaint.

101.    Deny the allegations set forth in Paragraph 101 of the Complaint.

ANSWERING THE SIXTH CAUSE OF ACTION

102.    Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

103.    Paragraph 103 of the Complaint purports to state conclusions of law to which no response is required.

104.    Deny the allegations set forth in Paragraph 104 of the Complaint.

105.    Deny the allegations set forth in Paragraph 105 of the Complaint.

106.    Deny the allegations set forth in Paragraph 106 of the Complaint.

ANSWERING THE SEVENTH CAUSE OF ACTION

107.    Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

108.    Paragraph 108 of the Complaint purports to state conclusions of law to which no response is required.

109.    Deny the allegations set forth in Paragraph 109 of the Complaint.

9

110.    Deny the allegations set forth in Paragraph 110 of the Complaint.

111.    Deny the allegations set forth in Paragraph 111 of the Complaint.

112.    Deny the allegations set forth in Paragraph 112 of the Complaint.

113.    Deny the allegations set forth in Paragraph 113 of the Complaint.

ANSWERING THE EIGHTH CAUSE OF ACTION

114.    Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

115.    Deny the allegations set forth in Paragraph 115 of the Complaint.

116.    Deny the allegations set forth in Paragraph 116 of the Complaint.

ANSWERING THE NINTH CAUSE OF ACTION

117.    Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

118.    Deny the allegations set forth in Paragraph 118 of the Complaint.

119.    Deny the allegations set forth in Paragraph 119 of the Complaint.

120.    Deny the allegations set forth in Paragraph 120 of the Complaint.

121.    Deny the allegations set forth in Paragraph 121 of the Complaint.

122.    Deny the allegations set forth in Paragraph 122 of the Complaint.

ANSWERING THE TENTH CAUSE OF ACTION

123.    Repeat, reiterate and reallege the responses set forth above as though fully set forth herein at length.

124.    Deny the allegations set forth in Paragraph 124 of the Complaint.

125.    Deny the allegations set forth in Paragraph 125 of the Complaint.

126.    Deny the allegations set forth in Paragraph 126 of the Complaint.

127.    Deny the allegations set forth in Paragraph 127 of the Complaint.

128.    Deny the allegations set forth in Paragraph 128 of the Complaint.

129.    Deny the allegations set forth in Paragraph 129 of the Complaint.

130.    Deny the allegations set forth in Paragraph 130 of the Complaint.

131.    Deny the allegations set forth in Paragraph 131 of the Complaint.

132.    Deny the allegations set forth in Paragraph 132 of the Complaint.

133.    Deny the allegations set forth in Paragraph 133 of the Complaint.

134.    Deny the allegations set forth in Paragraph 134 of the Complaint.

FIRST AFFIRMATIVE DEFENSE

135.    Plaintiff fails to state a claim for sex and age discrimination because Plaintiff was not treated differently from other employees on the basis of her age or sex.

SECOND AFFIRMATIVE DEFESE

136.    Plaintiff fails to state a claim for retaliation because she did not engage in protected activities under the applicable statutes because she did not complain of age or sex discrimination, including discrimination in terms of her compensation, during her employment.

THIRD AFFIRMATIVE DEFENSE

137.    Plaintiff fails to state a claim for unequal pay because Plaintiff was paid a salary and other compensation comparable to similarly situated employees, both male and female.

138.    The compensation of Plaintiff and similarly situated employees was determined pursuant to a merit system that took into consideration the employee's job performance.  Merit increases for plaintiff and similarly situated employees were awarded based on a review of the employee's job performance for the previous year. Compensation decisions were not made on the basis of sex or age.

11

## FOURTH AFFIRMATIVE DEFENSE

139.    Plaintiff fails to state a claim for defamation because she does not allege a false statement of fact by the Defendants that was published to a third party without privilege or authorization and that Plaintiff was harmed by any statements she alleges were made.

140.    All of the alleged defamatory statements by Defendants about Plaintiff were statements of opinion which cannot be the basis for a defamation action.

141.    The Complaint fails to allege the "particular words complained of" for Plaintiff's defamation claim as required by New York CPLR § 3016(a).

142.    The alleged defamatory statements about Plaintiff were not made on behalf of Absolute Software, Inc. or Absolute Software Corporation.

143.    The Defendants are shielded from liability for the alleged defamation under the common interest privilege.

## FIFTH AFFIRMATIVE DEFENSE

144.    Plaintiff was an at-will employee who was terminated for non-discriminatory and non-retaliatory reasons.

145.    The decision to terminate Plaintiff's employment on July 1, 2015 was made by her supervisor, defendant Todd Awtry, primarily because he found her difficult to work with and felt that she was unsupportive of his management, and not for discriminatory or retaliatory reasons.

## SIXTH AFFIRMATIVE DEFENSE

146.    Defendants have not discriminated or retaliated against Plaintiff on any unlawful basis, and any treatment of Plaintiff or difference in the treatment of Plaintiff as opposed to other employees of Absolute Software, Inc. was based upon reasonable factors and

legitimate business reasons other than an unlawful basis. Any employment actions or decisions undertaken with regard to Plaintiff were undertaken in good faith.

147.    Plaintiff was paid a salary and other compensation comparable to similarly situated employees, both male and female. The compensation of Plaintiff and similarly situated employees was determined pursuant to a merit system that took into consideration the employee's job performance.  Merit increases for plaintiff and similarly situated employees were awarded based on a review of the employee's job performance for the previous year. Compensation decisions were not made on the basis of sex or age.

148.    Employees to whom Plaintiff compares herself, including Art Robinson, Joseph Morini, Kurt Luporini and Randall Dye, did/do not perform substantially equal work on jobs requiring equal skill, effort and responsibility.  Nor did they work under similar working conditions.

SEVENTH AFFIRMATIVE DEFENSE

149.    Defendants have exercised reasonable care to prevent and/or identify any form of unlawful discrimination and/or retaliation; and to promptly correct any form of unlawful discrimination and/or retaliation.

150.    Defendants have policies in place that prohibit discrimination on the basis of age and sex (and other protected classifications). Defendants have provided non-discrimination and harassment training to managers including plaintiff and the individual defendants. Defendants' policies prohibiting discrimination and harassment include procedures for making complaints of discrimination or harassment. Plaintiff has failed to follow those procedures.

## EIGHTH AFFIRMATIVE DEFENSE

151.     Plaintiff's claims are barred to the extent that Plaintiff failed to timely and properly exhaust all necessary administrative, statutory and/or jurisdictional prerequisites to the commencement of this action.

152.     Plaintiff's employment was terminated on July 1, 2015.  On September 4, 2015, Plaintiff filed a Charge of Discrimination with the EEOC (the "September 4, 2015 Charge") in which she alleged that she was discriminated against on the basis of her age and sex. The September 4, 2015 Charge did not include any claim of retaliation for having engaged in protected activity under the applicable statutes.  Nor did it include any factual allegation that Plaintiff engaged in protected activity under the statutes.

153.     On February 25, 2016, the EEOC dismissed the September 4, 2016 Charge and issued Plaintiff a Notice of Sue Rights for the claims asserted in the September 4, 2015 Charge.

154.     On April 25, 2016, Plaintiff filed a second Charge of Discrimination with the EEOC (the "April 25, 2016 Charge") alleging discrimination on the basis of her age and sex, plus retaliation for having made an internal complaint against her supervisor in July 2014.

155.     Plaintiff did not receive a Notice of Sue Rights from the EEOC in connection with the April 25, 2016 Charge.  Thus, Plaintiff failed to exhaust her administrative remedies with respect to her claims for retaliation.

156.     On May 18, 2016, more than 300 days after her employment was terminated and almost 2 years after Plaintiff allegedly made an internal complaint concerning her supervisor, Plaintiff filed the Complaint in this action. Thus, Plaintiff failed to exhaust her administrative remedies concerning her retaliation claim and such claim is time-barred.

NINTH AFFIRMATIVE DEFENSE

157.    Plaintiff's claims are barred to the extent that they were not filed within the applicable statutes of limitations periods.

158.    The Complaint in this Action was filed more than 300 days after Plaintiff's employment was terminated and almost 2 years after Plaintiff allegedly made an internal complaint against her supervisor.  Therefore, Plaintiff's retaliation claims are time-barred.

TENTH AFFIRMATIVE DEFENSE

159.    The Court lacks jurisdiction over defendants Absolute Software Corporation, Geoff Haydon, Thomas Kenny and Todd Awtry because they were not Plaintiff's employer.

ELEVENTH AFFIRMATIVE DEFENSE

160.    Plaintiff unreasonably failed to comply with Absolute Software, Inc.'s policies and procedures for reporting any alleged incidents of discrimination, and consequently, has failed to take advantage of preventative or corrective opportunities provided by Absolute Software, Inc. that would have potentially avoided her alleged harm.

161.    Defendants have policies in place that prohibit discrimination on the basis of age and sex (and other protected classifications). Defendants' policies prohibiting discrimination and harassment include procedures for making complaints of discrimination or harassment. Plaintiff has failed to follow those procedures.

TWELFTH AFFIRMATIVE DEFENSE

162.    On information and belief, Plaintiff has failed to mitigate her alleged damages and failed to exercise due diligence in an effort to mitigate her damages.  Upon information and belief, given her work experience and the strong high tech market in

Rochester, it took Plaintiff an unreasonably long time to secure new employment.

THIRTEENTH AFFIRMATIVE DEFENSE

163.     Plaintiff's request for punitive damages is improper because Defendants did not intentionally or willfully discriminate against Plaintiff. Any treatment of Plaintiff or difference in the treatment of Plaintiff as opposed to other employees of Absolute Software, Inc. was based upon reasonable factors and legitimate business reasons other than an unlawful basis. Any employment actions or decisions undertaken with regard to Plaintiff were undertaken in good faith.

Dated: November 21, 2016

DORSEY & WHITNEY LLP

By: */s/ David C. Singer*_____
    David C. Singer
    Laura M. Lestrade
    51 West 52nd Street
    New York, New York 10019
    (212) 415-9200

    *Attorneys for Defendants*

TO:     THOMAS & SOLOMON LLP
        693 East Avenue
        Rochester, New York 14607
        (585) 272-0540

        *Attorneys for Plaintiff*

# Exhibit F

Page 1

1

2                    UNITED STATES DISTRICT COURT

3                    WESTERN DISTRICT OF NEW YORK

4

5       MARY VAN BRUNT-PIEHLER,        )

6                        Plaintiff,    )

7                        v.            )  No. 16-cv-6313

8       ABSOLUTE SOFTWARE, INC.,       )   (EAW) (MWP)

9       ABSOLUTE SOFTWARE              )

10      CORPORATION, GEOFF HAYDON,     )

11      THOMAS KENNY, and TODD AWTRY)

12                        Defendants.   )

13      _____   )

14

15

16

17               DEPOSITION OF DANIEL BERARDO

18                    Vancouver, BC

19                 Wednesday, May 8, 2019

20

21

22

23

24      Reported by:
        JESSICA D. ARCHIBALD
25      JOB NO. 160294

1                          D. Berardo

2   are any numerical values?

3       A. Well, it wouldn't -- there would be

4   numerical values based on each question,

5   asking people to rate --

6       MR. THOMAS:  Okay.  Well, first of

7    all, let me request a production of those

8    numerical values.

9   BY MR. THOMAS:

10      Q. But I'm asking you, sitting here

11  today with that survey in front of you, how

12  does that make you feel about how Thomas and

13  Todd were conducting themselves in terms of

14  their employees in the sales organization?

15      MR. SULLIVAN:  Objection to form.

16      THE WITNESS:  Well, I -- I would -- I

17   would -- the feedback that I would give,

18   sitting here today, is that it seemed like

19   communication wasn't as good as it could

20   have been with the strategy.  And so I

21   would -- I would likely give the feedback

22   to improve communication.

23  BY MR. THOMAS:

24      Q. Let me ask you -- so from an HR

25  perspective, sitting here today, when you look

1                           D. Berardo

2        know, I would say that my recollection

3        overall is probably more accurate than

4        the -- than the employee survey.

5   BY MR. THOMAS:

6        Q. Do you have any reason to believe

7   employees felt any better about Thomas and

8   Todd in the weeks and years after the survey

9   while you were still employed there than they

10  did at the time the survey was taken?

11           MR. SULLIVAN:  Objection to form.

12           THE WITNESS:  Yes.  I mean, I think,

13        from what I recall, the communication did

14        get better.  And, you know, we didn't do

15        any formal -- unfortunately, we didn't do

16        any -- we didn't do a follow-up survey

17        after this before I had left Absolute,

18        but -- but my observations were that things

19        were better.

20  BY MR. THOMAS:

21        Q. Didn't you -- well, first of all,

22  didn't you do a survey -- a culture survey

23  June 1st, 2015?

24        A. I -- it's -- I don't recall, but

25  it's -- it's -- it's possible.  Do we -- I

1                      D. Berardo

2    don't know if we have a copy of it or...

3         Q. Well, that -- by the guiding

4    coalitions, was it -- it was performed -- it

5    was done by the guiding coalition?

6         A. Oh, there was -- we -- we did do a --

7    we -- we -- we did it -- it's possible we did

8    a -- I -- the guiding coalition was to

9    discover what our values were at Absolute.  So

10   I -- I don't recall if that was a full survey.

11        Q. Okay.  Do you -- do you remember

12   referring to it as a "corporate cultural

13   assessment survey"?

14        A. I -- I don't recall what it was

15   called.

16        MR. THOMAS:  Okay.  We would request

17     the production of that survey and the

18     results of it.

19   BY MR. THOMAS:

20        Q. Did you have any other -- were you

21   aware that Todd Awtry performed a survey,

22   monthly survey of his sales employees

23   regarding their views of his performance?

24        A. I don't -- I don't recall.  Not --

25   I'm not answering that it -- it didn't happen;

Page 235

                              D. Berardo

1

2        Q. Why don't you read it over, and when

3   you've had a chance, I will have some

4   questions for you on it.

5        A. Oh, this was in order, actually, from

6   front to back.  I read the last -- I will

7   start at the beginning.  Okay.

8        Q. All right.  Did you take any steps to

9   probe the complaints made by Mary Piehler in

10  this exhibit?

11           MR. SULLIVAN:  Objection to form.

12           THE WITNESS:  I can't recall

13      specifically, but -- but reading through

14      it, it's -- the numbers -- I mean, the

15      numbers seemed like they were system

16      issues, so I likely wouldn't have

17      investigated that.

18           MR. THOMAS:  I will request any

19      documentation -- any HR review that was

20      performed of this --

21           THE WITNESS:  Not --

22           MR. THOMAS:  -- exhibit.

23  BY MR. THOMAS:

24      Q. I will just give one example.

25      A. Not to my recollection.

1                    D. Berardo

2          MR. SULLIVAN:  Objection to form.

3          THE WITNESS:  I -- I don't think

4     that -- again, from -- from anyone that --

5     anyone, it would be valid to say they want

6     to be paid fairly.

7  BY MR. THOMAS:

8      Q. And if they take that to HR, that's

9  something that HR should look at; right?

10         MR. SULLIVAN:  Objection to form.

11         THE WITNESS:  If they say that they

12    were paid unfairly because they were

13    female?  Or because of gender?  Is that

14    what you're asking me?

15  BY MR. THOMAS:

16     Q. Well, I'm asking -- let's just start

17  with someone who says "I'm not being paid

18  fairly" and goes to HR.  Should HR look at

19  that?

20     A. We -- it happens all the time, and

21  people's perception of being paid fairly, it's

22  just --

23     Q. I'm asking whether HR should look at

24  that issue.

25     A. We should talk to the employee and

1                        D. Berardo

2    ask what the employee may be speaking of.

3            MR. THOMAS:  Going to page -- we --

4        and we will request documentation of that

5        ever occurring.

6    BY MR. THOMAS:

7        Q. Going to page P817, do you remember

8    that Todd Awtry shared the performance reviews

9    of his subordinates with all of his

10   subordinates --

11       A. Yes.

12       Q. -- by email?

13       A. I do remember that.

14           MR. SULLIVAN:  Objection to form.

15   BY MR. THOMAS:

16       Q. Is that an example of him in his

17   professional, buttoned-up attitude that he was

18   bringing to Absolute?

19       A. I would say that's not an -- not an

20   example of that.

21       Q. Did you see that Mary Piehler

22   complained about him doing that?

23       A. Did she -- sorry, in this thread,

24   she -- did she complain to me about it, sorry?

25       Q. P817.

1                        D. Berardo

2   competency."  That's what Todd Awtry said.

3   Did you look into that, as to why a male could

4   -- could -- with less than six months'

5   experience get a higher score on a

6   performance --

7            MR. SULLIVAN:  Objection to form.

8   BY MR. THOMAS:

9       Q. -- review than Mary Piehler when Todd

10  Awtry said he didn't have any basis to do the

11  review?

12           MR. SULLIVAN:  Objection to form.

13           THE WITNESS:  I don't -- I don't

14      recall -- I don't recall looking into

15      specific performance reviews.

16           MR. THOMAS:  We would request the

17      production of any documents reflecting any

18      HR review of those issues.

19  BY MR. THOMAS:

20      Q. Now, Mr. Berardo, what -- what --

21  well, let's do this:  Let's just go off the

22  record for five minutes here.  Thanks.

23           VIDEOGRAPHER:  Going off record.  The

24      time is 5:04.  This is the end of media 1.

25           (PROCEEDINGS RECESSED AT 5:04?P.M.)

Page 351

1

2                    REPORTER CERTIFICATION

3          I, Jessica D. Archibald, Official

4    Reporter in the Province of British Columbia,

5    Canada, BCSRA No. 607, do hereby certify:

6

7          That the proceedings were taken down

8    by me in shorthand at the time and place

9    herein set forth and thereafter transcribed,

10   and the same is a true and correct and

11   complete transcript of said proceedings to the

12   best of my skill and ability.

13

14         IN WITNESS WHEREOF, I have hereunto

15   subscribed my name this 22nd day of May 2019.

16

17

18

19    _____

20     Jessica D Archibald

21      Official Reporter, CSR(A)

22

23

24

25

# Exhibit G

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


-----------------------------------------x

MARY VAN BRUNT-PIEHLER,

                          Plaintiff,    Civil Action No.:

               vs.                       16-cv-6313

ABSOLUTE SOFTWARE, INC.,

ABSOLUTE SOFTWARE CORPORATION,

GEOFF HAYDON, THOMAS KENNY, and TODD AWTRY,

                          Defendants.

-----------------------------------------x




          DEPOSITION OF ART ROBINSON

             New York, New York

            Friday, May 31, 2019




Reported by:   David Henry

JOB NO. 161011

1                    Robinson

2       Q.   Or post for those jobs, sorry?

3       A.   We worked with a recruiter.

4       Q.   And he never sent you any female

5  applicants?

6       A.   No, not that I remember.

7       Q.   Were you concerned that you

8  weren't receiving any female applicants?

9            MS. LESTRADE:    Objection to

10       form.

11      A.   I was.

12      Q.   What did you say or what did you

13  do?

14      A.   Send me some female applicants.

15      Q.   And was this to the Lafayette

16  Group?

17      A.   I don't remember.  We've used

18  lots of recruiters.

19      Q.   And they didn't send you any

20  back?

21      A.   No.

22           MR. THOMAS:   We'd request

23       production of that email.

24           MS. LESTRADE:    Objection to

25       form.

1                    Robinson

2       form.

3           Q.   Do you remember any issue about

4   the DOE, the Department of Education?

5           A.   Yes.

6           Q.   What were you aware of about the

7   accusations Todd made?

8                MS. LESTRADE:    Objection to

9       form.

10          A.   I didn't know anything about

11  those accusations.

12          Q.   And what had you heard about the

13  DOE and Mary Piehler?

14          A.   What I heard about the DOE and

15  the accusations came from Mary, not from

16  Todd.

17          Q.   And what were the accusations you

18  heard from Mary?

19          A.   That they were -- she told me

20  that she used a comp plan incentive with

21  the DOE to claim new business for

22  individual schools as opposed to retention,

23  because we got compensated more for new

24  business.

25          Q.   And so what were the accusations

1

2                  C E R T I F I C A T E

3

4    STATE OF NEW YORK        )

5                             ) ss.:

6    COUNTY OF NEW YORK       )

7

8         I, DAVID HENRY, a Notary Public within

9    and for the State of New York, do hereby

10   certify:

11        That ART ROBINSON, the witness whose

12   deposition is hereinbefore set forth, was

13   duly sworn by me and that such deposition

14   is a true record of the testimony given by

15   such witness.

16        I further certify that I am not

17   related to any of the parties to this

18   action by blood or marriage; and that I am

19   in no way interested in the outcome of this

20   matter.

21        IN WITNESS WHEREOF, I have hereunto

22   set my hand this 3rd day of June, 2019.

23

24        -------------------------

25        DAVID HENRY