UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY VAN BRUNT-PIEHLER,<br><br>                              Plaintiff,<br><br>v.<br><br>ABSOLUTE SOFTWARE, INC., ABSOLUTE SOFTWARE CORPORATION, GEOFF HAYDON, THOMAS KENNY and TODD AWTRY,<br><br>                              Defendants. | Index No. 16-cv-6313(EAW) (MWP) |

## EXPERT TESTIMONY SUMMARY

Pursuant to Section II (C) of the Pretrial Order (Dkt. 184), Defendants Absolute Software, Inc., Absolute Software Corporation, Geoff Haydon, Thomas Kenny and Todd Awtry submit the following brief summary of the qualifications of Defendants' expert witness Dr. Paul White and a concise statement of his expected expert testimony and the materials upon which that testimony is expected to be based.

**Qualifications of Dr. Paul F. White**

Paul F. White, Ph.D. is a Labor Economist and Managing Partner of the Washington, D.C. office of Resolution Economics, LLC.  For over 25 years, Dr. White has calculated potential economic damages and has testified in cases involving allegations of employment discrimination. Further details of Dr. White's experience are found in his curriculum vitae and testimony list contained in Appendix A of his May 14, 2021 report.

**Statement of Expected Expert Testimony**

Based upon the sources listed in <u>Section II</u> of his report, Dr. White will offer expert opinions in response to the analysis offer by plaintiff's economic expert Dr. Steven J. Shapiro.  Dr. White will provide alternative calculations of Plaintiff Mary Piehler's potential economic losses in the event that the Finder of Fact questions the reasonableness of the plaintiff's expert's primary assumptions.

<u>Sources Reviewed:</u>  The primary sources reviewed by Dr. White include Dr. Shapiro's economic expert's report dated March 1, 2021; the plaintiff's employability expert's report submitted by Rona Wexler dated March 1, 2021; labor market data from the Bureau of Labor Statistics and other articles related to the tech sector; earnings and personnel documents for the plaintiff, Joseph Morini, Kurt Luporini, and Randy Dye; documents related to Ms. Piehler's employment at Lenovo; published worklife expectancy tables; and the Amended Complaint and Demand for Jury Trial dated July 24, 2017.

<u>Projected Pre-Termination Absolute Software Earnings:</u>  Plaintiff's damages expert calculated pre-termination damages for Plaintiff based on Mr. Luporini's actual earnings, including both base salary and guaranteed commissions, versus Ms. Piehler's actual base salary and commissions, during the period when his employment at Absolute overlapped with Plaintiff's from April 6, 2015 until July 1, 2015.  It is Dr. White's understanding that Mr. Luporini, along with Mr. Morini and Mr. Dye, were hired to fill the new Acquisition roles which were fundamentally different because they had no existing business to rely upon and had to earn commissions entirely from new customers.

As such, Mr. Luporini is not an appropriate comparison for purposes of calculating pre-termination back pay losses for Ms. Piehler.

Projected Post-Termination Absolute Software Earnings:  Dr. White agrees with plaintiff's expert that Mr. Morini is the appropriate comparator for Ms. Piehler. However, Dr. Shapiro conflates the projected earnings calculations by including both Ms. Piehler's pre-termination bonuses and Mr. Morinin's actual bonuses.  To include Mr. Morini's projected bonuses is double counting and overstates potential economic losses. Furthermore, it is Dr. White's understanding that many of the bonuses received by Mr. Morini were one-time bonuses and thus Dr. Shapiro's assumption that they recur annually further serves to overstate Ms. Piehler's projected earnings.  Dr. White will testify that it is most appropriate that Mr. Morini's actual experience, tenure and total compensation in this new position at Absolute would be the basis for projecting Plaintiff's potential post-termination losses.

Rate of Wage Growth:  Dr. White agrees with Dr. Shapiro's assumptions about projected wage growth rates.

Restricted Stock Grant:  It is Dr. White's understanding that the stock grants provided to Mr. Morini were one-time grants, and Dr. Shapiro's assumption that they would have recurred for Ms. Piehler serves to overstate the plaintiff's projected earnings.

Damages Continuing Until the Year 2025:  Dr. Shapiro calculates economic losses from termination in 2015 for approximately 10.5 years, until age 68, in the year 2025. Dr. White will testify that at no point in his calculations does Dr. Shapiro account for the possibility that Plaintiff's employment at Absolute would have ended for any reason

3

during the approximately 10.5-year time period before 2025, or the approximately 2¼-year tenure of Mr. Morini, who filled the newly created position of Acquisition Regional Director for the East region at Absolute, the role that Plaintiff would have filled had her employment not been terminated.  Dr. White will provide testimony that gives the Finder of Fact alternative damages estimates under the assumption that Ms. Piehler would have stayed at Absolute (a) as long as Mr. Morini was employed, and (b) to the end of her statistical worklife expectancy.

Plaintiff's Damages Expert's Assumption of Mitigating Earnings:  Plaintiff's damages expert accounts for Plaintiff's actual earnings with Lenovo in 2016-2017, as well as modest consulting earnings (less than $2,000 per year) from 2019 onward. Plaintiff's expert does not consider the possibility of Plaintiff obtaining further mitigating employment of any kind, at any point from 2018-2025.  Dr. White will provide testimony that gives the Finder of Fact alternative damages estimates under the assumption that Ms. Piehler would have obtained comparable alternative employment after she left Lenovo.

Tax Gross-up:  Dr. White will testify that Ms. Piehler's damages expert incorrectly calculates a tax gross-up that nearly doubles the potential award amount. In order to properly calculate a tax gross-up for a potential award, it is necessary to compare Plaintiff's tax bracket had she continued her earnings but for her termination from Absolute to the tax bracket Plaintiff faces in the case of a lump-sum award. However, even if it is determined that a gross-up is appropriate in this matter, Plaintiff has not provided sufficient tax information (e.g., spousal income) to make a determination for this calculation.

4

<div style="display:flex;justify-content:space-between;">

Dated:  July 12, 2021

DORSEY & WHITNEY LLP

</div>

By  s/Laura M. Lestrade
    Laura M. Lestrade
    lestrade.laura@dorsey.com
    Mark S. Sullivan
    sullivan.mark@dorsey.com
    51 West 52nd Street
New York, NY 10019
Telephone:  (212) 415-9200

*Counsel for Defendants*