UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff,*

*v.*

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY,

*Defendants.*

Civil Action No.
16-CV-6313-EAW-MWP


MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO PERMIT MR. SINGULAR TO TESTIFY AS A LIVE
WITNESS


THOMAS & SOLOMON LLP

*Attorneys for Plaintiff*
693 East Avenue
Rochester, NY 14607
(585) 272-0540


Of Counsel:   J. Nelson Thomas
              Jonathan W. Ferris

## TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTUAL BACKGROUND ......................................................................... 2

ARGUMENT .................................................................................................................... 7

I.      **The Court should permit Mr. Singular to testify as a live witness because it has already permitted his testimony and there is no prejudice to Defendants** ......... 7

II.     **At the very least, Mr. Singular should be permitted to testify as a live witness regarding the topics discussed in his deposition transcript**.................................................................................................................10

III.   **Mr. Singular should be allowed to testify live as an impeachment or rebuttal witness**...................................................................................................................12

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Patterson v. Balsamico*
  440 F.3d 104 (2d. Cir. 2006) ............................................................................. 7
*Downing v. Lee,*
  2021 WL 5965206 (S.D.N.Y. Dec. 16, 2021)................................................. 10, 11
*Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.,*
  2002 WL 31108380 (S.D.N.Y. Sept. 23, 2002)................................................ 7
*Jockey International Inc. v. M/V "Leverkusen Express,*
  217 F.Supp.2d 447 (S.D.N.Y. 2002) ................................................................ 6
*Kunstler v. City of New York,*
  242 F.R.D. 261 (S.D.N.Y. 2007) ...................................................................... 6
*Lesser v. Wildwood,*
  2003 WL 22228757(S.D.N.Y. 2003) ............................................................... 6
*Lubahn v. Absolute Software, Inc.,*
  2018 WL 5634353 (E.D. Mich. Oct. 31, 2018) ............................................... 7
*Nguyen v. IBP, Inc.,*
  162 F.R.D. 675 (D.Kan.1995) .......................................................................... 6
*Rhone v. U.S.,*
  2007 WL 3340836 (S.D.N.Y. Nov. 9, 2007) ................................................... 6
*Sanders v. Sullivan,*
  900 F.2d 601 (2d Cir. 1990)............................................................................. 8
*United States v. Int'l Bus. Machs. Corp.,*
  90 F.R.D. 377 (S.D.N.Y. 1981) ....................................................................... 10
*Widman v. Stegman,*
  2015 WL 13832105 (N.D.N.Y. Apr. 28, 2015) ............................................... 6

Rules

Fed. R. Civ. P. 43 ................................................................................................ 13
Federal Rule of Civil Procedure 26(a)(1)(A).......................................................... 14

## PRELIMINARY STATEMENT

This Court should permit Lyle Singular to testify as a live witness at trial. This Court has already ruled that Mr. Singular has relevant testimony regarding this case and previously overruled Defendants' objection that he was not previously disclosed. Defendants have opened the door to his live testimony by factually disputing whether Mr. Olsen's discriminatory comments were made before or after 2011. Because there is absolutely no prejudice to Defendants and because Mr. Singular's live testimony would answer that question, this Court should allow his live testimony at trial.

## RELEVANT FACTUAL BACKGROUND

Lyle Singular is Absolute's former Directory of Recovery Services. *See* Affirmation of Jonathan W. Ferris, sworn to January 27, 2023 ("Ferris Aff.") ¶ 3, Exhibit A (Singular Dep. Transcript) at 5:22-25. Mr. Singular was deposed in the *Lubahn v. Absolute Software, Inc.*, No. 16-14425 (E.D. Mich.) action on March 19, 2018. *See id.* Absolute's counsel in the *Lubahn* action, Ogletree, Deakins, Nash, Smoak and Steward, PLLC, attended the deposition of Mr. Singular. *See* Ferris Aff., **Exhibit A**. Absolute's then-General Counsel, Oliver deGeest, was also present for Mr. Singular's deposition. *Id*. Both Plaintiff and Defendants cited pleadings in the *Lubahn* action in their summary judgment brief. *See* Dkt. 149 at 22; Dkt. 159 at 7. In their pretrial submission before the original August 2021 trial date, Plaintiff designated certain lines of Mr. Singular's deposition testimony as required by the Court. Dkt. 206. Defendants likewise provided their objections to plaintiff's designations as to Mr. Singular. Dkt. 221.

At his deposition, Mr. Singular testified that he personally heard Mr. Olsen make discriminatory comments about the age of Absolute's workforce. Singular Tr. 15:14-16; 15:21-23; 27:6-19; 27:9-19; 28:9-24; 30:7-13; 14:18-19; 39:1-4; 18:14-17 ("The observations were,

of course, that these individuals were older;" "I felt there was always a challenge of having to justify or explain why we were hiring these [older] individuals in the first place and inevitably a discussion of age crept into it;" "it was pretty clear implication that these individuals that were viewed as obviously age challenged, needed to go;" "about the advanced age of the individuals we had on the team."). In addition, while Mr. Singular testified that he transitioned to a contract position in 2011, he continued to work for Absolute through 2016. *See* Singular Tr. 5:17-21; 11:23-12:6.

Mr. Singular went on to testify that after he began working remotely in 2011, while he did not hear age-related comments directly from Mr. Olsen, he was still aware that Mr. Olsen's discriminatory remarks continued after 2011. Singular Tr. 27:23-28:2. Specifically, Mr. Singular testified that while working remotely, employees kept him apprised of Mr. Olsen's continued and frequent discriminatory remarks. Singular Tr. 28:1-2.  Furthermore, when asked how often these comments were made, Mr. Singular stated that it was "part of the daily routine that I had to deal with when I was working at Absolute." Singular Tr. 41:4-6.

In light of that testimony, Defendants have repeatedly sought to preclude the testimony of Mr. Singular because he was not identified in Plaintiff's initial disclosures. *See* Dkt. 221 at * 5; Dkt. 262 at * 3; Dkt. 296 at *1-2. The Court, also numerous times, rejected these attempts to preclude Mr. Singular, finding that there was no prejudice to Absolute because:

> obviously, the Defense was aware of Mr. Singular, the Defendants were aware
> of Mr. Singular in the other litigation, it's not – he was deposed in this other
> litigation. I don't find that the failure to include him on the initial disclosures
> in and of itself should preclude his testimony as long as it is sufficiently relevant
> and important.

*See* August 6, 2021 Transcript at 55:3-9; *see also* January 13, 2023 Transcript at 8:17-20 ("My prior ruling that the Plaintiff was not precluded from calling Mr. Singular as a witness because

of the failure to identify him as part of the initial disclosures").

As part of these rulings, the Court has also noted the importance relevance of Mr. Singular's testimony regarding Mr. Olsen's ageist comments. *See* August 6, 2021 Oral Argument Transcript at 54: 2-14 (Court finding that "[Olsen] is a relevant player in that regard. So if he had age bias, if he was trying to get rid of employees who were older or who were women and he was expressing that to other individuals in the company, I think that is certainly relevant. It's relevant. I mean, he is going to be a witness here and it's relevant even from an impeachment standpoint because he testified even with the pool incident he didn't think there was anything inappropriate about that."); May 11, 2022 Transcript at 26:23-27:23 ("I think that if Olsen engaged in conduct, like this pool incident, even if it's from 2011, and it's related to the issues in this case, I do believe it's relevant . . ."); January 13, 2023 Transcript at 9:15-19 ("As I've stated previously, I do believe that evidence that Mr. Olsen was bias against older employees is relevant given his role in the company and his role in the case, allegedly biased, alleged evidence that he was biased."); *id.* at 10:15-18 ("But I do believe, even based on the information that is in his deposition transcript, there is some relevant information that Mr. Singular has . . . ").

At the August 6, 2021 hearing, the Court largely sided with the plaintiff and allowed in much of the plaintiff's designations of Mr. Singular's testimony. Ferris Aff. ¶ 4; *see also* August 6, 2021 Transcript at 60:13-21; 54: 2-14. However, the trial was adjourned to a new date. *Id.* at ¶ 5. During this time, the defendants began pushing an alternative reading of Mr. Singular's deposition testimony, arguing that Mr. Olsen's comments occurred during or prior to 2011. *See* **Exhibit E** (Defendants' November 4, 2021 Letter to the Court).

While the Court had already found that much of Mr. Singular's testimony was admissible during the August 6, 2021 hearing, the Defendants' opening of the door to their alternative reading of the testimony that Mr. Olsen's discriminatory comments had only occurred prior to 2011 gave the Court some pause. *See* March 9, 2022 Transcript at 19:3-26:15. The Court noted it had read the defendants' letter and invited briefing on the issue, which the parties then did. *Id.*

Following the briefing, during the May 11, 2022 pretrial conference, the Court did not change its previous ruling that Mr. Singular's testimony was relevant and admissible, but did echo Defendants' concerns that Defendants raised that the deposition testimony was not as precise as it could have been. *See* May 11, 2022 Transcript at 27:25-28:15. In fact, the Court noted the obvious solution to the door that Defendants had opened: if Mr. Singular testified at trial that the ageist comments were in fact made by Mr. Olsen in 2011 (or more recently), then those comments would be admissible. *See* May 11, 2022 Transcript at 35:15-20 ("I don't disagree with you that I would let in Lyle Singular if he got up on the witness stand and testified about when he was there in 2011, Olsen was running around with Chase and Livingston, and they were making these biased remarks against older people."). Thus, the issue was not whether Mr. Singular's testimony would come in, but instead how it would be read.

Given the direction in the Court's views of Mr. Singular's prior testimony, and the Court's view that Mr. Singular's testimony would be admissible if it was tied more directly to Ms. Piehler's case, Plaintiff's counsel determined that it should meet those concerns. Ferris Aff. ¶ 6.

Given the Court's invitation to contact Mr. Singular, Plaintiff's counsel began immediately following the hearing to track down Mr. Singular. *Id.* at ¶ 7. The following day,

May 12, 2022, Plaintiff's counsel spoke to Mr. Singular. *Id*. Mr. Singular was perplexed as to

why Absolute would think that his testimony was that Mr. Olsen's comments were only limited

to 2011 or earlier. *Id.* at ¶ 8. In discussing Mr. Singular's potential trial testimony, Plaintiff's

counsel determined that there were eight discreet topics on which Mr. Singular could testify at

trial. *Id.* at ¶ 8. Six of those topics were ones in which the Defendants had opened the door

regarding the timing and context of the comments that Mr. Olsen had made:

1.  That he personally heard Errol Olsen make numerous ageist remarks about older employees at Absolute.

2.  That Mr. Olsen repeatedly made these comments from the time he and Mr. Olsen first interacted until Mr. Singular left the company in 2016.

3.  That he remained actively involved in the company from the time he became a contract employee in 2011 until his retirement in 2016.

4.  That Mr. Olsen's comments were not only routinely made over a period of years, and they were also made during the time period Mr. Olsen was playing a critical role in the termination of Ms. Piehler in early half of 2015.

5.  That Mr. Olsen could not be dissuaded from repeatedly making such comments.

6.  That Mr. Olsen deliberately excluded older employees in his interactions with them, as well as part of the decision-making process at the company.

*Id*. ¶ 10. (the "Deposition Topics Raised By Defendants"). In addition to those topics, Mr.

Singular also stated that he could also testify as to two other issues related to this lawsuit:

1.  That Absolute's culture was based on a young, jock mentality that was based on a fanciful view of what a young, tech orientated company should look like and Mr. Olsen personified that culture.

2.  That Mr. Singular was privy to the company's internal investigation of the nude swim, the recommendations that arose from that investigation, and their ultimate collapse with the arrival of Thomas Kenny.

*Id*. ¶ 11.

In order to avoid any prejudice to Defendants, Plaintiff quickly notified counsel for Defendants that they had spoken to Mr. Singular about testifying. ¶ 12. In order to place Defendants on equal footing for trial, Plaintiff's counsel offered to arrange for defense counsel opportunity to cross-examine Mr. Singular prior to the scheduled trial in person or by video. ¶ 13. Defense counsel rejected that offer on the basis they considered discovery closed. ¶ 14. At a subsequent pretrial conference on May 20, 2022, the Court ruled that Plaintiff could not depose Mr. Singular at that time. *See* May 20, 2022 Transcript at 7:23-8:9. The Court indicated that it would make a ruling in the future as to whether a deposition of Mr. Singular could occur before trial. *Id.*

However, because of the adjournment of the trial by the Court, the issue of Mr. Singular's deposition was never ruled on. Ferris Aff. ¶ 15. The Court subsequently indicated to the parties in a June 17, 2022 email that the earliest the trial could be rescheduled would likely be mid-2023. *Id.* at ¶ 16.

Knowing that the issue of a deposition would therefore not be resolved for many months, counsel for Plaintiff contacted counsel for Defendants on June 24, 2022 to discuss deposing Mr. Singular so that any remaining concerns about ambiguity in his testimony, either from the Defendants or the Court, could be resolved well before trial and the parties could have a well-developed record on this issue. *Id*. at ¶ 17.

However, Defendants were not willing to agree to a deposition of Mr. Singular that would resolve any lack of clarity in his testimony. ¶ 18. As a result, Plaintiff filed a Motion to Re-Open Discovery for the Limited Purpose of Deposing Lyle Singular. *See* Dkt. 307. However, the Court denied that motion during the January 13, 2023 conference. *See* Dkt. 320.

Plaintiff therefore makes this motion to allow Mr. Singular to testify live at trial.

**ARGUMENT**

**I.      The Court should permit Mr. Singular to testify as a live witness because it has already permitted his testimony and there is no prejudice to Defendants.**

This Court should permit Mr. Singular's live testimony at trial on all eight topics of which he can testify because the Court has already found that he has relevant and admissible testimony and Defendants will suffer no prejudice because they are well aware of the testimony that he will offer. Indeed, Defendants are the ones who have opened the door to having Mr. Singular testify by offering a wholly inaccurate reading of his deposition transcript.

Courts within the Second Circuit find that the preclusion of testimony is a "drastic remedy" that should be given only in special cases. *See Widman v. Stegman*, No. 313CV00193BKSDEP, 2015 WL 13832105, at *4 (N.D.N.Y. Apr. 28, 2015) (witness preclusion under Rule 37 is a "drastic remedy" that should only be applied in rare cases of bad faith and disregard for the Federal Rules); *Rhone v. U.S.*, No. 04 Civ. 5037 (PKL), 2007 WL 3340836, at *8 (S.D.N.Y. Nov. 9, 2007) (same); *Kunstler v. City of New York,* 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (citing *Jockey International Inc. v. M/V "Leverkusen Express",* 217 F.Supp.2d 447, 452 (S.D.N.Y. 2002) ("[p]reclusion of evidence is generally a disfavored action")). A violation of the Rule 26 is harmless "when there is no prejudice to the party entitled to the disclosure." *Lesser v. Wildwood,* 2003 WL 22228757 (S.D.N.Y. 2003) (*quoting Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995)). "[A] failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial." *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002).

In evaluating whether to exclude a witness,[1] district courts in the Second Circuit consider four factors: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the potentially precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

As an initial matter, the Court has already ruled that Mr. Singular has relevant and admissible testimony that is probative of the issues in this case. *See* August 6, 2021 Oral Argument Transcript at 54: 2-14 (Court finding that "[Olsen] is a relevant player in that regard. So if he had age bias, if he was trying to get rid of employees who were older or who were women and he was expressing that to other individuals in the company, I think that is certainly relevant."); May 11, 2022 Transcript at 26:23-27:23; 35:15-20; January 13, 2023 Transcript at 9:15-19; *see also Lubahn v. Absolute Software, Inc.*, No. 16-14425, 2018 WL 5634353, at *4 (E.D. Mich. Oct. 31, 2018). Plaintiff is now only seeking to take the very small step forward of having the jury hear Mr. Singular's testimony straight from the horse's mouth to resolve the door that Defendants have opened in arguing that Mr. Olsen's comments were only made in 2011 or earlier.

Additionally, applying the four-factor test under *Patterson*, Mr. Singular should be allowed to testify live. As for the first factor, the party's explanation for the failure to comply with the disclosure requirement, that factor is irrelevant here because the Court already ruled

---

[1] Although *Patterson* is in the context of precluding a witness from testifying at trial in its entirety, the same framework would apply to a court seeking to preclude a witness from testifying live as opposed to deposition testimony. 440 F.3d at 117. In fact, the Court should apply a more lenient standard for live testimony given the fact that the Court has already ruled that Mr. Singular's deposition testimony is admissible.

that the failure to include Mr. Singular on Plaintiff's initial disclosures was not a basis for exclusion. *See* August 6, 2021 Transcript at 55:6-11 ("I don't find that the failure to include him on the initial disclosures in and of itself should prec'ude his testimony as long as it is sufficiently relevant and important. And I think that chain of communications or testimony that Mr. Ferris just cited to rises to that level."). That determination is the law of the case and cannot be disturbed. *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990).

As to the second factor, the importance of the testimony of the potentially precluded witness, Mr. Singular's testimony is clearly important to rebutting the door that Defendants have opened regarding Mr. Olsen's statements. Defendants contend that Mr. Singular's testimony shows that Mr. Olsen did not make the discriminatory comments after 2011. Mr. Singular's live testimony will provide crystal clear clarity as to whether that is true or not. As there would no longer be any uncertainty as to the dates and manners in which Mr. Olsen made the ageist comments, Mr. Singular's live testimony for the jury is highly preferred.

In regards to the third factor, there is no absolutely no prejudice suffered by Absolute in allowing Mr. Singular to testify live for numerous reasons. First, Defendants are the ones opening the door to having Mr. Singular testify at trial by arguing that there is ambiguity in his testimony. Defendants should be estopped from arguing that there is any prejudice when they are the ones that have argued that they need more specifics and contexts in his testimony. Second, Defendants have known about Mr. Singular's testimony for years. In fact, the Lubahn allegations were so strikingly similar to the claims (age discrimination) in this lawsuit that defendants deposed Ms. Piehler in the Lubahn action. Additionally, Mr. Singular's deposition was not only attended by Absolute's outside counsel, but by its then-General Counsel as well.

Third, Plaintiff offered the Defendants the opportunity to conduct a further deposition of Mr. Singular so that there would be no surprises at trial as to his testimony. Defendants have had the opportunity to take Mr. Singular's deposition since knowing about this issue in August 2021, but have not done so. Fifth, Defendants will of course have the opportunity to cross examine Mr. Singular at trial. (As discussed below, alternatively, Mr. Singular's testimony should be permitted as to at least the Deposition Topics Raised By Defendants.)

Lastly, the factor concerning the possibility of a continuance weighs in favor of having Mr. Singular testify live. As noted above, while the trial is scheduled to begin on March 6, 2023, Defendants have had the opportunity, and indeed been invited to, depose Mr. Singular but have failed to do so and at their own peril. Furthermore, Mr. Singular *was* already deposed in the *Lubahn* action and Defendants are certainly on notice of his testimony.

As Mr. Singular has important testimony that the Court has already found to be relevant and admissible, and because Defendants will suffer no prejudice, this Court should grant Plaintiff's motion and permit Mr. Singular to testify live at trial on the precise issues on which the Defendants have opened the door.

## II.     At the very least, Mr. Singular should be permitted to testify as a live witness regarding the topics discussed in his deposition transcript.

As discussed above, Mr. Singular should be allowed to testify at trial as a live witness without restriction. However, to the extent that the Court is inclined to limit or preclude his testimony in any way, at the very least, the Court should allow Mr. Singular regarding the six Deposition Topics Raised By Defendants.

For the same reasons discussed above regarding the *Patterson* factors, Mr. Singular should be permitted to testify live as to the six Deposition Topics Raised By Defendants. Defendants have no arguments that there is any prejudice in having live testimony on the

Deposition Topics Raised By Defendants. Defendants cannot claim that there would be any surprise or harm from his live testimony because it would be based entirely on the testimony that was discussed during his deposition. For Defendants to now argue that they were unaware of what that testimony could be strains credibility. The only difference would be the clarification on the specifics of what Mr. Olsen said and when, but that is exactly what Defendants have sought. Defendants have contended that Mr. Singular's testimony shows that Mr. Olsen did not make the discriminatory comments after 2011. If that is true, Defendants should have no problem with his live testimony as it would bolster *their* case, not Plaintiff's.

Allowing Mr. Singular to testify as a live witness about the topics in his deposition transcript also comports with the strong favor for live testimony as opposed to deposition testimony. "Live testimony is strongly preferred over deposition testimony at trial because it permits the fact finder 'to observe the demeanor of the witness.'" *See Downing v. Lee*, 2021 WL 5965206 (S.D.N.Y. Dec. 16, 2021) (quoting *United States v. Int'l Bus. Machs. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981); *see also* Advisory Committee Note to Fed. R. Civ. P. 43 ("The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."). Here, Plaintiff will make Mr. Singular available at trial to testify live. Given the preference for live testimony as opposed to reading his deposition transcript, this Court should permit (and in fact, demand) his live testimony on the Deposition Topics Raised By Defendants.

Accordingly, at the very least, the Court should allow Plaintiff to present Mr. Singular as a live witness regarding the Deposition Topics Raised By Defendants.

III.   **Mr. Singular should be allowed to testify live as a rebuttal or impeachment witness.**

Even ignoring the points above, Mr. Singular should be allowed to testify as an impeachment or rebuttal witness. Federal Rule of Civil Procedure 26(a)(1)(A) does not impose a duty on parties to identify witnesses in their initial disclosures if those witnesses are to be used solely for impeachment, and as a result, the fact that Mr. Singular was not identified in Plaintiff's initial disclosures is of no consequence and he is no different than any other rebuttal or impeachment witness that may testify live. As this Court has noted, Mr. Olsen was a key player in Ms. Piehler's termination. August 6, 2021 Transcript at 54:3-14. Although it is impossible to know before trial, Plaintiff expects that Defendants will claim that age was not a factor in Plaintiff's termination. Plaintiff therefore requests that the Court reserve on this issue depending on the testimony that Defendants offer at trial that opens the door to rebuttal/impeachment testimony.

## CONCLUSION

For the forgoing reasons, this Court should grant Plaintiff's motion to allow Mr. Singular to testify as a live witness at trial.

Dated:  January 27, 2023

**THOMAS & SOLOMON LLP**

By:   s/ Jonathan W. Ferris
    J. Nelson Thomas, Esq.
    Jonathan W. Ferris, Esq.
    *Attorneys for Plaintiffs*
    693 East Avenue
    Rochester, New York 14607
    Telephone:  (585) 272-0540
    nthomas@theemploymentattorneys.com
    jferris@theemploymentattorneys.com