UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

---

MARY VAN BRUNT-PIEHLER,

                Plaintiff,

v.

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY and TODD AWTRY,

                Defendants.

Index No. 16-cv-6313(EAW) (MWP)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PERMIT ROBERT BOOKER TO TESTIFY AT TRIAL**

**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, New York 10019
(212) 415-9200

## **TABLE OF CONTENTS**

                                                                      **Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................4

        A.        The Failure to List Mr. Booker Was Substantially Justified and Harmless .............4

        B.        The *Patterson v. Balsamico* Factors Favor Permitting Mr. Booker to Testify ......................................................................................................................7

CONCLUSION ................................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Budget Rent a Car Sys., Inc. v. Shea*,
  2018 U.S. Dist. LEXIS 193158 (M.D. Fla. Nov. 13, 2018) ........................................................6

*Lujan v. Cabana Mgmt.*,
  284 F.R.D. 50, 2012 U.S. Dist. LEXIS 104585 (E.D.N.Y. July 26, 2012) ...............................7

*Montera v. Premier Nutrition Corp.*,
  2022 U.S. Dist. LEXIS 83676 (N.D. Cal. May 9, 2022) ...........................................................7

*Moore v. Computer Assocs. Int'l*,
  653 F. Supp. 2d 955 (D. Ariz. 2009) .......................................................................................5

*Nixon v. TWC Admin. LLC*,
  2019 U.S. Dist. LEXIS 55093 (Mar. 29, 2019) ........................................................................8

*Patterson v. Balsamico*,
  440 F.3d 104 (2d. Cir. 2006)............................................................................................4, 7, 9

*Williams v. Arctic Cat, Inc.*,
  2014 U.S. Dist. LEXIS 33090 (N.D.N.Y. Mar. 13, 2014)........................................................6

**Other Authorities**

Federal Rule of Civil Procedure 26 ....................................................................................4, 5, 6, 7

Federal Rule of Civil Procedure 37 .......................................................................................1, 4, 7

Defendants Absolute Software, Inc. and Absolute Software Corporation (collectively, "Absolute"), Geoff Haydon, Thomas Kenny, and Todd Awtry (collectively with Absolute, "Defendants") submit this Memorandum of Law in Support of their Motion to Permit Robert Booker to Testify at Trial.

## PRELIMINARY STATEMENT

Defendants identified Robert Booker, Absolute's current Vice President of Human Resources, on their Amended Voir Dire Materials (Dkt. 270) as a witness they expect to call to lay foundation for the introduction of Absolute corporate records including demographic information about Absolute's employees during the relevant time period of 2013-2016. Mr. Booker is a corporate representative of both corporate defendants—Absolute Software, Inc. and Absolute Software Corporation—and would testify in the capacity as a records custodian. The evidence to be offered through him is highly probative, and, as the Court signaled in a prior conference, it would be entirely appropriate for the parties to simply stipulate to foundation. Instead, Plaintiff has objected to trial testimony from Mr. Booker on the grounds that he was not identified in Defendants' Initial Disclosures. This objection is not sufficient to exclude Mr. Booker's testimony.

Under Federal Rule of Civil Procedure 37(c)(1), an undisclosed witness is permitted to testify if the nondisclosure "was substantially justified or is harmless." Here, both prongs of this test are met. Defendants seek to call Mr. Booker as an Absolute corporate representative and custodian of records witness to lay foundation for business records made and kept by Absolute in the ordinary course of business and to testify about company demographics. For example, Absolute's employee rosters are quintessential business records that include each employee's birthdate, sex, and department within a given year. These rosters are highly probative because they establish that despite Plaintiff's assertions that Absolute implemented new discriminatory

hiring and firing criteria in 2015 to displace older female employees with younger men, Absolute's demographics with respect to age and gender did not meaningfully change from 2013 to 2016. Indeed, the Court specifically stated that this evidence is relevant, and that the Plaintiff's argument designed to call it into question goes to the weight, and not the admissibility of these records. Instead of simply stipulating to these documents,[1] Plaintiff is seeking to prevent Defendants from calling a witness to lay the foundation for these documents, despite the fact that the rosters are unquestionably relevant and probative.  Moreover, **both** parties have listed other Absolute business records on their exhibit lists, including Absolute's recent financial statements, and annual information forms.  Mr. Booker would likely be the only witness who could testify at trial to lay the foundation for these additional documents.

Defendants served their Initial Disclosures on September 15, 2016, more than six years ago.  Mr. Booker did not work for Absolute at that time, and did not begin working for Absolute until July 2020.  Defendants' Initial Disclosures did include both Errol Olsen, Absolute's former Chief Financial Officer, and Amanda Mallow (through incorporation of Plaintiff's Initial Disclosures).  *See* Declaration of Joshua R. Kornfield dated February 10, 2023 ("Kornfield Dec.") at Exs. A (Defendants' Initial Disclosures); B (Plaintiff's Initial Disclosures).

Ms. Mallow was Mr. Booker's predecessor as head of HR.  Ms. Mallow succeeded Daniel Berardo, who headed HR during Ms. Piehler's employment.  Both Mr. Olsen and Ms. Mallow have since left Absolute and are unavailable as trial witnesses because they are located in Vancouver, Canada.  For the initial trial date in August 2021, the Court had granted permission

---

[1] Plaintiff is willing to stipulate to the majority of the content of these records, but not to the records themselves. *See* Dkt. 277-1 at 2 ("Plaintiff is willing to stipulate to the gender and ages of the employees listed in Exhibits 628-635 to avoid the need for a custodial witness to appear regarding these exhibits").  Apparently, the only content of the records that Plaintiff is unwilling to stipulate to is the identification of the departments that each employee worked in.

2

for Mr. Olsen to testify remotely and Defendants intended to introduce the company demographic information through him. *See* Kornfield Dec., Ex. C (August 6, 2021 Hearing Tr.) at 42:19-20 ("Mr. Ols[e]n is going to testify live. I mean, live through a video feed"). When the trial date was moved to May 2022, on April 27, 2022, Defendants submitted as part of their Amended Voir Dire Materials a List of Prospective Defense Witnesses. *See* Dkt. 270. The list included Mr. Olsen with the caveat "if permitted to testify virtually," and also included Mr. Booker with the explanation that Booker was expected to testify "concerning the demographics of Absolute's salesforce." The Court subsequently ruled on May 11, 2022 that Olsen would not be permitted to testify virtually. *See* Kornfield Dec., Ex. D (May 11, 2022 Hearing Tr.) at 16:25-17:2 ("at this point, I'm not allowing the witnesses to testify remotely"). There would have been no reason to call Mr. Booker had Mr. Olsen testified at the initial trial date.

Moreover, Plaintiff had ample opportunity to pursue deposition testimony about the rosters, but ultimately did not do so. As Plaintiff has now acknowledged, Defendants produced the rosters during discovery on May 30, 2018, well before the close of discovery. *See* Kornfield Dec., Ex. E (1/18/23 email from J. Ferris). They were produced as part of Defendants' interrogatory responses that were signed by Errol Olsen. Plaintiff never asked Mr. Olsen about the rosters during his deposition on May 9, 2019, about a year after the rosters were produced.[2] Plaintiff did not seek any information about the rosters, or ask any questions concerning company demographics at any of the other numerous depositions, and did not elect to conduct a Rule

---

[2] Nevertheless, Plaintiff has since repeatedly alleged without a shred of evidence that Mr. Olsen manipulated the rosters for the purposes of this litigation. *See* Dkt. 277-1 at 4 ("Just as Mr. Olsen placed employees in the "Sales" department who did not sell to customers or were subject to Mr. Kenny's directive, he pulled other employees performing Sales work and placed them in other departments"); *see also* Kornfield Dec., Ex. F (January 13, 2023 Hearing Tr.) at 25:14-19 ("You keep saying Mr. Olsen went through a list and classified the employees. What I'm hearing the Defense counsel, they just extracted information from a database. So, why are you saying that Mr. Olsen somehow manipulated the information[?] Do you have any proof of that?")

3

30(b)(6) deposition of either of the corporate defendants on these topics.  Likewise, Plaintiff never noticed Ms. Mallow's deposition despite listing her on Plaintiff's Initial Disclosures.

Furthermore, Mr. Booker would be laying the foundation for business records, which simply reflect data about Absolute.  As the Court pointed out, this is the type of evidence that the parties should stipulate that a proper foundation exists.  *See* Kornfield Dec., Ex. C (August 6, 2021 Hearing Tr.) at 116:8-119:5.  More recently, the Court stated that, under the circumstances, the parties "may be able to reach agreement on Mr. Booker being a records custodian who is allowed to testify."  *See* Kornfield Dec., Ex. F (January 13, 2023 Hearing Tr.) at 33:7-9.

## ARGUMENT

Federal Rule of Civil Procedure 37(c)(1) permits a party to call a witness not identified on their F.R.C.P. 26(a) Initial Disclosures when "the failure was substantially justified or is harmless." Further, courts should consider four factors in determining whether to permit such testimony: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d. Cir. 2006).  Mr. Booker's omission from the Initial Disclosures was substantially justified and harmless, and based on these conditions and factors, Mr. Booker should be permitted to testify.

**A. The Failure to List Mr. Booker Was Substantially Justified and Harmless**

Mr. Booker first came to work at Absolute in July 2020.  He currently serves as Absolute's Vice President of Human Resources.  Defendants served their Initial Disclosures on September 15, 2016.  Fact discovery concluded on June 28, 2019, a full year before Mr. Booker began working for Absolute.  Dkt. 109.  Because (1) it would have been impossible for Defendants to identify Mr. Booker before the conclusion of fact discovery, and (2) because Mr. Booker was timely identified

4

as a trial witness in Defendants' Amended Voir Dire materials, the failure to identify Mr. Booker was substantially justified.

Further, Mr. Booker is not being called to offer new evidence. His testimony is no different from the testimony that other witnesses who were identified in Defendants' Initial Disclosures would have provided, except that they are now unavailable to testify. Defendants listed on their Initial Disclosures two employees—Errol Olsen, Absolute's former Chief Financial Officer, and Amanda Mallow, Mr. Booker's predecessor as head of HR—who could testify in this capacity. *See* Kornfield Dec., Ex. A. Plaintiff could have deposed Mr. Olsen or Ms. Mallow on these issues during the discovery period, but did not. That Mr. Booker is now the witness who will testify to these issues does not alter Plaintiff's position in the least.

Defendants produced the rosters on May 30, 2018, nearly five years ago.[3] Plaintiff declined to ask any questions about the rosters of any deponent, nor did Plaintiff elect to conduct a deposition of an Absolute corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiff's decision to not pursue this discovery demonstrates that any omission of Mr. Booker from Defendants' Initial Disclosures was harmless. *See Moore v. Computer Assocs. Int'l*, 653 F. Supp. 2d 955, 960, (D. Ariz. 2009) ("Lester is not offering the sworn statements in her capacity as an 'individual,' defined by Rule 26(a)(1), but rather as a corporate spokesperson, as contemplated in Rule 30(b)(6). . . . [i]f Plaintiff had wanted to depose Defendant on these topics, Plaintiff could have submitted the appropriate questions to Defendant within the body of the Rule 30(b)(6) deposition notice and Defendant would then have been obligated to produce a deponent with sufficient corporate knowledge to answer the questions").

---

[3] In addition, the rosters have been listed as Defendants' trial exhibits DX 628-635. *See* Dkt. 274. Summaries of the information reflected in the rosters are set forth on trial exhibits DX 627 and 693. Plaintiff has also included the rosters as Plaintiff's trial exhibit PX 946.

5

In light of the fact that Plaintiff did not elicit any testimony about these rosters while discovery was open, despite the opportunity to do so, Plaintiff cannot credibly claim that permitting Mr. Booker, as a corporate representative from the HR department, to lay the foundation for them causes any harm to Plaintiff whatsoever.

Third, the demographic information is highly probative. The Court has previously stated, with respect to the rosters,

> Well, if there is evidence that the Defense can introduce showing that there wasn't a change in the gender or age composition by the company, that is relevant evidence, so I would allow that into evidence as long as a proper foundation is laid for it. And I would think that is something, that is the kind of thing I would think you would stipulate to the foundational requirements of that.

*See* Kornfield Dec., Ex. C (August 6, 2021 Hearing Tr.) at 116:8-119:5. The Court has also stated that Mr. Booker "seems like a fairly innocuous witness" and that under the circumstances, the parties "may be able to reach agreement on Mr. Booker being a records custodian who is allowed to testify." *See* Kornfield Dec., Ex. F (January 13, 2023 Hearing Tr.) at 32:23-33:9. Permitting Mr. Booker to testify is harmless and therefore should be permitted.

Many courts have allowed trial testimony from a witness to lay foundation for evidence when that witness is not listed on initial disclosures. *See Williams v. Arctic Cat, Inc.*, 2014 U.S. Dist. LEXIS 33090, at *23 (N.D.N.Y. Mar. 13, 2014) ("The Court will dismiss any objection to this witness. Mr. Hussar's testimony is necessary only because of Plaintiffs' unwillingness to stipulate to the authenticity of photographs. Mr. Hussar's testimony is not material to any fact other than those photographs, and his presence in the case will not prejudice the Plaintiffs"); *Budget Rent a Car Sys., Inc. v. Shea*, 2018 U.S. Dist. LEXIS 193158, at *6 (M.D. Fla. Nov. 13, 2018) (". . . Plaintiffs are permitted to utilize Vacha to authenticate the document despite failing to identify her in their Rule 26(a) Initial Disclosures. 'If a party fails to provide information or

identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' Here, the failure to disclose Vacha for the limited purpose of authenticating the Toxicology Report was harmless. First, it cannot be a surprise to Defendants that Plaintiffs are relying on the Toxicology Report given that the issue of Shea's intoxication is at the center of this dispute."); *see also Montera v. Premier Nutrition Corp.*, 2022 U.S. Dist. LEXIS 83676, at *7 (N.D. Cal. May 9, 2022) ("As for the records custodians, any failure to disclose is harmless. Plaintiff states that she only plans to call these custodians if Defendant objects to the admissibility of documents. The documents in question are documents which Defendant has been aware of over the course of this litigation. Plaintiff may call these witnesses . . . .").

### B. The *Patterson v. Balsamico* Factors Favor Permitting Mr. Booker to Testify

The Second Circuit has prescribed a four-factor test to determine whether a witness should be precluded from testifying pursuant to Federal Rule of Civil Procedure 37(c)(1). *Patterson v. Balsamico*, 440 F.3d at 117.[4] Based on this test, Mr. Booker's testimony should be permitted.

The first factor, the explanation for not identifying Mr. Booker in Defendants' Initial Disclosures, as discussed in Section A, is satisfied by the fact that Mr. Booker was not working for Absolute at the time and Defendants identified then-employees of Absolute, namely Mr. Olsen and Ms. Mallow, who could have provided this testimony. In addition, Mr. Olsen was going to testify at trial in August 2021 as to the information now to be supplied by Mr. Booker. Defendants timely identified Mr. Booker in their Amended Voir Dire Materials on April 27, 2022, when

---

[4] The Court need not consider these factors if it determines that the omission of Mr. Booker from Defendants' initial disclosures is substantially justified or harmless. *Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 70, 2012 U.S. Dist. LEXIS 104585, *52 (E.D.N.Y. July 26, 2012) ("If the violation was not substantially justified and not harmless, then the Court must consider the *Patterson* factors in determining whether preclusion is appropriate").

7

amended witness lists for the trial scheduled in May 2022 were due and it appeared that Mr. Olsen might not be available to testify at the adjourned trial. Dkt. 270.

The second factor, importance of the evidence, is clearly satisfied. Specifically, the Court has already stated that the primary evidence for which Mr. Booker would provide a foundation—the rosters showing that the age and gender demography at Absolute did not change between 2013 and 2016—is relevant. It is relevant because it undercuts Plaintiff's core allegation—that Absolute implemented a new policy at the end of April 2015 to terminate older employees and hire male employees that led to Plaintiff's termination on July 1, 2015. *See Nixon v. TWC Admin. LLC*, 2019 U.S. Dist. LEXIS 55093, at *4 (Mar. 29, 2019) ("The second factor favors Defendant, as the contested declarations authenticate documents central to this case and provide evidence of the purported technological impossibility of a central element of Plaintiff's discrimination case").

The third factor, concerning prejudice, also favors permitting Mr. Booker's testimony. Production of the rosters was complete by May 2018, long before the close of discovery. Plaintiff had ample opportunity to depose witnesses about them and declined to do so. The rosters simply reflect data about the employee demographics at Absolute.[5]

However, if Mr. Booker is not permitted to lay the foundation for the rosters, this will greatly prejudice Defendants, despite the fact that (1) Defendants previously identified the individuals who would lay the foundation for the demographic information; (2) those individuals are no longer available as trial witnesses, and (3) Defendants identified Mr. Booker in their Amended Voir Dire materials as the corporate representative and document custodian for Absolute. As the Court stated, Mr. Booker is an "innocuous witness" who is testifying on behalf of his employer as a custodian of records. That Plaintiff declined to elicit any testimony from any

---

[5] As directed by the Court, on January 27, 2023, Defendants provided to Plaintiff the underlying data for the information in the rosters.

8

deposition witness about these rosters further goes to show the innocuous nature of Mr. Booker's testimony. Plaintiff appears to be seeking to keep the rosters out for no other reason than the fact they are highly probative and damaging to Plaintiff's case.

As for the fourth factor, Defendants' acknowledge that a continuance of the upcoming trial is not feasible given that it is scheduled to commence in less than a month and has been postponed on two prior occasions.

Therefore, Booker's testimony should be permitted because his omission from Defendants' Initial Disclosures was substantially justified and harmless, and because his preclusion is not appropriate under the *Patterson* factors.

## **CONCLUSION**

For the foregoing reasons, Mr. Booker should be permitted to testify at trial.

Dated: New York, New York  
February 10, 2023

**DORSEY & WHITNEY LLP**

By:  */s/ Laura M. Lestrade*  
    Laura M. Lestrade  
    Mark S. Sullivan  
    Joshua R. Kornfield  
    51 West 52nd Street  
    New York, New York 10019  
    (212) 415-9200  
    *Attorneys for Defendants*