UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY VAN BRUNT-PIEHLER,

            Plaintiff,

   v.

ABSOLUTE SOFTWARE, INC.,
ABSOLUTE SOFTWARE CORPORATION,
GEOFF HAYDON, THOMAS KENNY,
and TODD AWTRY,

            Defendants.
_____

**BENCH STATEMENT**

6:16-CV-06313 EAW

**THIS STATEMENT DOES NOT CONSTITUTE A PUBLISHED DECISION AND ORDER OF THIS COURT. IT IS LIMITED TO THE FACTS OF THIS CASE AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY OR OTHERWISE USED IN UNRELATED CASES BEFORE THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

    Presently pending before the undersigned at Docket 322 is Plaintiff's motion to permit Lyle Singular to testify live at trial, filed on January 27, 2023. Defendants filed a response on February 10, 2023, at Docket 326. For the reasons set forth below, the motion is denied.

    Mr. Singular is a former employee of defendant Absolute. On March 19, 2018, Mr. Singular gave deposition testimony in an unrelated case brought by former employee Douglas Lubahn against Absolute, in the United States District Court for the Eastern District of Michigan in 2016. During his deposition, Mr. Singular testified that he

previously heard Errol Olsen, Absolute's CFO, make discriminatory comments about the age of Absolute's workforce.

Mr. Singular was previously identified by Plaintiff as a deposition witness, and that issue was addressed by the Court on August 6, 2021, when it ruled that, despite Plaintiff's failure to disclose Mr. Singular as a witness when it made its pretrial disclosures, certain portions of his deposition transcript could be introduced at trial. Since that time, the parties have made multiple submissions to the Court with respect to their deposition testimony designations for Mr. Singular and objections thereto, the most recent versions of which were filed on February 8, 2023, at Dockets 324 and 325. As noted above, Plaintiff now seeks to present Mr. Singular as a live witness at trial. Mr. Singular was never identified by Plaintiff as a witness during the discovery phase of the case and, up until May 13, 2022, when she filed "Amended Voir Dire Information" stating that she expected that he would testify live (*see* Dkt. 294 at 7), and thereafter on August 17, 2022, when she filed her motion to reopen discovery to conduct Mr. Singular's deposition (Dkt. 307), Plaintiff expressly represented that she was only attempting to introduce his testimony through the prior deposition transcript.[1]

---

[1] Plaintiff first disclosed Mr. Singular as a witness in a filing dated July 13, 2021. (*See* Dkt. 205 ("Plaintiff's Voir Dire Information")). Plaintiff included Mr. Singular in a section entitled "Witness List," but further specified that Plaintiff "believes that [Mr. Singular] will be a deposition witness unless he appears at trial, at which point plaintiff may call on him for live testimony." (*Id.* at 7). However, Plaintiff consistently represented thereafter that she intended to call Mr. Singular as a deposition witness only. For example, at a pretrial conference on August 4, 2021, when the Court questioned the parties regarding Mr. Singular, the Court asked, "would the parties agree that . . . the only means by which Singular is going to testify is through deposition testimony, correct? Everyone is shaking their head yes." (*See* Dkt. 243 at 8-9; *see also* Dkt. 232 at 5

Rule 26(a)(1)(A)(i) requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Likewise, Rule 26(e) requires a party to supplement its Rule 26(a) disclosures, in the event they receive additional information. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Despite the language of Rule 37(c), "preclusion is a drastic remedy that is generally disfavored." *Benn v. Metro-North Commuter Railroad Co.*, No. 3:18-cv-737 (CSH), 2019 WL 6467348, at *3 (D. Conn. Dec. 2, 2019) (quotations and citation omitted). In evaluating whether to exclude witness testimony under Rule 37, the Court considers four factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations and citation omitted); *see also Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

---

(Plaintiff's trial brief stating, "Since [Singular] would not be a live witness, there can be no dispute over what his testimony would be and the parties are on equal grounds.")). As explained above, since that time the Court has received submissions from the parties and heard argument on which portions of Mr. Singular's deposition transcript would be admissible at trial.

The first factor—the party's explanation for the failure to comply with the disclosure requirement—weighs in favor of excluding Mr. Singular's testimony at trial. In her moving papers, Plaintiff offers no valid reason as to why she failed to comply with the disclosure requirement. Rather, Plaintiff contends that this factor is "irrelevant" because the Court previously ruled that the failure to include Mr. Singular on Plaintiff's initial disclosures was not a basis for exclusion, and that determination is law of the case.

Plaintiff is mistaken. First, the Court's prior determination with respect to the admissibility of Mr. Singular's deposition testimony despite Plaintiff's failure to include him in her initial disclosures is not "law of the case." The Court's ruling in that respect was on a motion *in limine*. Trial has not yet commenced, and the Court may revisit that conclusion prior to trial due to changed circumstances. *See Highland Capital Management, L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) ("The court's ruling regarding a motion *in limine* is subject to change when the case unfolds." (quotations and citation omitted)). Second, what Plaintiff seeks here—that she be permitted to offer Mr. Singular as a live witness at trial without restriction—is wholly distinct from the relief previously sought, which was that she be permitted to offer limited portions of his deposition transcript at trial. The Court's ruling to allow certain, truncated portions of Mr. Singular's deposition transcript at trial is not the same as permitting him to testify live at trial, where Plaintiff could elicit—and indeed proposes to elicit—a host of testimony far beyond the scope of what is included in the deposition transcript.

Plaintiff gave a deposition in connection with the *Lubahn* matter, and therefore Plaintiff's counsel has been aware of that litigation for some time. During discovery, Defendants propounded two interrogatories requesting the identities of (1) "any person with knowledge of the facts and circumstances set forth in the Complaint . . . ." and (2) "each person whom you plan to call as a fact witness at the trial of this action." Plaintiff responded, "See Plaintiff's Initial Disclosures for such individuals." Mr. Singular was not identified by Plaintiff as a fact witness or as a person with knowledge in connection with either of those requests. When the Court previously questioned Plaintiff's counsel regarding their failure to disclose Ms. Singular as a witness, counsel agreed that their failure to designate Mr. Singular as a witness was an "oversight." (*See* Dkt. 253 at 50 (responding to the court's inquiry regarding why initial disclosures were not amended to include Mr. Singular's identity with, "I guess, you know, there is always the could have, should of")). This is not an adequate explanation excusing Plaintiff's failure to comply with the disclosure requirement, particularly in light of the fact that Plaintiff had ample opportunity to disclose Mr. Singular as a witness. Because Plaintiff has offered no valid explanation for her failure to disclose Mr. Singular as a live trial witness, this factor weighs in favor of excluding his testimony at trial. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (finding that the explanation factor weighed heavily in favor of preclusion where the omitting party did not explain the omission from the initial disclosures); *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 75 (E.D.N.Y. 2012) (same).

The second factor—the importance of the testimony—is either neutral or tips slightly in favor of permitting Mr. Singular's testimony at trial. As the Court indicated at

the January 13, 2023 pretrial conference, Mr. Singular's testimony regarding Mr. Olsen's statements about the age of Absolute's workforce is relevant to Plaintiff's age-related claims, given Mr. Olsen's role in the company and his role in Plaintiff's case. However, the Court is strained to conclude, particularly in light of the fact that Mr. Singular did not work in Plaintiff's department and he has no evidence directly related to Plaintiff, that Mr. Singular's testimony is "important" to Plaintiff's claims. Based on his deposition testimony, Mr. Singular heard Mr. Olsen make age-related comments in 2011, well before Plaintiff's termination in 2015, and with respect to a different group of employees than Plaintiff's group.[2] This makes his testimony less probative to her claims. Indeed, if Mr. Singular was such a critical witness to Plaintiff's case, it would have been reasonable to expect Plaintiff to pursue efforts to present him as a live witness at trial long before May 2022—years after the close of discovery, after one trial date had been adjourned, and on the eve of the second scheduled trial date. In other words, Plaintiff's lack of diligence in pursuing Mr. Singular's live trial testimony undercuts any claims about the importance of his testimony.

The third factor—the prejudice suffered by the opposing party—weighs in favor of precluding Mr. Singular's testimony. Defense counsel represents that they have conducted no discovery on Mr. Singular, including from his e-mail mailbox, because

---

[2] The Court acknowledges that Plaintiff's current proffer of Mr. Singular's live trial testimony is broader than the facts he testified to during his deposition, but this raises credibility issues as to the veracity of Mr. Singular's testimony that would be offered at trial, which only further compounds the problems with Plaintiff's failure to timely disclose this witness so as to afford Defendants the full panoply of tools available to investigate the witness and his potential testimony.

Plaintiff did not identify him as a relevant witness. Accordingly, defense counsel did not have the opportunity to collect information that may speak to the reliability of Mr. Singular's testimony. In addition, Defendants contend that they cannot offer testify from Mr. Olsen on the issues raised by Mr. Singular's testimony because Mr. Olsen cannot be compelled to appear at trial, and because when Plaintiff deposed Mr. Olsen in 2019, Mr. Olsen was asked no questions regarding Mr. Singular or given the opportunity to address Mr. Singular's statements.

Again, the fact that Defendants have conducted no discovery pertaining to Mr. Singular is the result of Plaintiff's belated identification of Mr. Singular as a witness approximately five years after the case was filed and two years after the close of discovery. Plaintiff neglected to make a motion to call Mr. Singular as a live witness until January 27, 2023—after the trial had already been postponed on two occasions and approximately one month before the rescheduled trial is scheduled to begin. Had Plaintiff moved for such relief sooner, perhaps any prejudice suffered by Defendants could have been cured—but at this stage it is simply too late.

The fourth factor—the possibility of a continuance—also weighs in favor of precluding Mr. Singular's testimony. This matter has been pending since May 2016, and discovery closed almost four years ago, in June of 2019. The trial was originally set to commence in August 2021, and was previously adjourned on two occasions. Trial is now scheduled to commence in less than one week, and the Court is not inclined to continue the matter for a third time. *See Yin v. Alvarado*, No 1:11-CV-00780 EAW, 2016 WL 5115357, at *3 (W.D.N.Y. Sept. 20, 2016) ("At this late stage in the litigation—less than

two weeks before trial—granting a continuance would prejudice Defendant because it would waste the resources, time, and effort he spent in preparing for the instant trial."); *see also Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y. 2014) ("a continuance is not appropriate, given the age of this case and the fact that discovery has long been closed"), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014).

Plaintiff argues that, should the Court preclude Mr. Singular from testifying as a trial witness, it should at the very least allow Plaintiff to present Mr. Singular as a live witness regarding the six deposition topics she contends were raised by Defendants. Plaintiff identifies these topics at Docket 322-1, page 8, as follows:

1. That he personally heard Errol Olsen make numerous ageist remarks about older employees at Absolute.

2. That Mr. Olsen repeatedly made these comments from the time he and Mr. Olsen first interacted until Mr. Singular left the company in 2016.

3. That he remained actively involved in the company from the time he became a contract employee in 2011 until his retirement in 2016.

4. That Mr. Olsen's comments were not only routinely made over a period of years, and they were also made during the time period Mr. Olsen was playing a critical role in the termination of Ms. Piehler in the early half of 2015.

5. That Mr. Olsen could not be dissuaded from repeatedly making such comments.

6. That Mr. Olsen deliberately excluded older employees in his interactions with them, as well as part of the decision-making process at the company.

In support of this argument, Plaintiff cites to boilerplate case law standing for the proposition that live testimony is preferred to deposition testimony because the fact finder can observe the demeanor of the witness. However, Plaintiff has not articulated—by citing to case law or otherwise—how this preference overcomes or outweighs her failure to comply with the disclosure requirements under Rule 26, or offer any reason why the Court should depart from its conclusion under the *Patterson* test. The Court further rejects Plaintiff's contention that these six topics were "raised" by Defendants. Since 2021 it has been Plaintiff—not Defendants—who have sought to use Mr. Singular's testimony in connection with this case. Simply because Defendants have challenged the relevancy or the clarity of Mr. Singular's deposition testimony is not "opening the door" to having him testify at trial. Indeed, as noted previously, Mr. Singular's proffered testimony appears to contradict his deposition testimony, at least in part, which only further compounds the problems and prejudice caused by the lack of timely disclosure. In sum, Plaintiff's contention that Defendants have raised and/or opened the door to these topics is not supported by the record.

Finally, Plaintiff contends that Mr. Singular should be permitted to testify live as a rebuttal or impeachment witness, citing to Rule 26(a)(1)(A). Specifically, Plaintiff argues that she expects Defendants will claim that age was not a factor in Plaintiff's termination.

Rule 26(a)(1)(A)(i) exempts from disclosure the identity of individuals having discoverable information to support its claims or defenses, "unless the use would be solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1)(A)(i). At the outset, the Court

notes that, contrary to Plaintiff's implication, Rule 26 says nothing about "rebuttal" evidence. The Rule speaks only to information used solely for impeachment. *See Funk v. Belneftekhim*, No. 14-cv-0376 (BMC), 2018 WL 11169668, at *2 (E.D.N.Y. May 31, 2018) ("There is no exception to Rule 26 . . . for rebuttal witnesses or evidence."); *see also Lujan*, 284 F.R.D. at 74 ("Even if the [witnesses] were contacted solely for rebuttal purposes, this does not vitiate defendants' obligation to supplement their Rule 26(a) disclosures by timely informing plaintiffs, in advance of filing their opposition papers, that they intended to rely on these witnesses.").

With respect to the exception for impeachment, "courts are divided over the scope of that exception." *Rivera v. United Parcel Service*, 325 F.R.D. 542, 547 n.5 (S.D.N.Y. 2018); *see also Slavin v. Garrison Property & Casualty Insurance Company*, 805 F. App'x 561, 568 (10th Cir. 2020) (explaining that "[o]ur case law distinguishing evidence used solely for impeachment from substantive evidence in this context is not very developed. Other circuits vary regarding the extent to which evidence may have substantive, rather than just impeachment, value and still fit within Rule 26(a)'s solely-for-impeachment exception," but noting that "we have suggested that the evidence should have no substantive value"); *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1283-84 (D.C. Cir. 2015) (explaining that "some courts have concluded that the impeachment exception is limited to evidence that has no potential utility other than impeachment," but that others have "held that undisclosed evidence with both impeachment and substantive qualities may be presented at trial so long as it is strictly used to impeach").

At this juncture, Plaintiff has failed to articulate that the exception for impeachment evidence should apply. Since 2021 when Plaintiff first indicated that she wished to call Mr. Singular as a deposition witness, Plaintiff sought his testimony to demonstrate that Mr. Olsen made ageist comments—in other words, as evidence to prove her direct case regarding alleged age discrimination she experienced at Absolute. Accordingly, the Court is deeply skeptical of Plaintiff's claim that she now intends to employ Mr. Singular as an impeachment witness. However, without the foresight of knowing what evidence Defendants will present at trial, the Court is unable to rule definitively that Mr. Singular would not qualify as an impeachment witness. Accordingly, the Court denies without prejudice Plaintiff's request to call Mr. Singular as an impeachment witness because Plaintiff has not established at this stage that Mr. Singular would qualify as such a witness. However, Plaintiff may renew the request at the time of trial if she finds it appropriate and can support the request based on the trial record. *Cf. Benson v. Gardner*, No. 1:19-cv-1004 (TWD), 2022 WL 523729, at *6 (N.D.N.Y. Feb. 22, 2022) (precluding witnesses not identified in accordance with Rule 26 from testifying at trial, but reserving for later date a decision on whether the testimony of the witnesses may be introduced solely for impeachment). Of course, Defendants' interrogatories sought witness information broader than that required by Rule 26(a)(1)(A)(i), and therefore in the event Plaintiff seeks leave to present Mr. Singular as an impeachment witness, she would also have to justify her failure to disclose him in response to Defendants' interrogatories.