UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

---

MARY VAN BRUNT-PIEHLER,

                              Plaintiff,                    Index No. 16-cv-6313(EAW) (MWP)

                    v.

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY and TODD AWTRY,

                              Defendants.

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**DORSEY & WHITNEY LLP**
51 West 52nd Street
New York, New York 10019
(212) 415-9200

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

    No Protected Activity .........................................................................................2

    No Causal Connection to Termination .................................................................3

    No Causal Connection With Any Other "Adverse" Action....................................3

PROCEDURAL BACKGROUND................................................................................3

ARGUMENT..............................................................................................................4

I.      LEGAL STANDARD.................................................................................4

II.    PLAINTIFF FAILED TO PRESENT SUFFICIENT EVIDENCE AT
      TRIAL TO SUPPORT HER NYSHRL RETALITION CLAIM ..........................5

      A.    There is Insufficient Evidence that Plaintiff Engaged in Protected
           Activity .....................................................................................5

      B.    Plaintiff Failed To Establish That Defendants Knew That She Was
           Complaining Of Gender Discrimination ...................................10

      C.    There is No Evidence that Any Alleged Protected Activity was a
           But-For Cause of Any Cognizable Adverse Actions .....................12

      D.    There Is No Causal Connection Between The Alleged Protected
           Activity And The Termination Of Plaintiff's Employment....................15

           1.    The Termination of Plaintiff's Employment Was Too
                 Remote in Time ....................................................................16

           2.    The Termination of Plaintiff's Employment Was
                 Contemplated Prior to the Alleged Protected Activity ................18

            3.    Plaintiff's Favorable Performance Review in February 2015
                 Severs any Causal Connection .................................................19

      E.    Plaintiff Did Not Prove that Defendants' Legitimate Business
           Justifications for the Adverse Actions Were Pretextual...........................20

      F.    Because Plaintiff's Termination Was Not Causally Related to Any
           Protected Activity, Plaintiff Is Not Entitled To An Award Of Lost
           Wages, Eliminating the Need to Proceed to the Damages Phase of
           the Trial....................................................................................22

CONCLUSION...........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aiossa v. Bank of Am., N.A.*,
   538 F. App'x 8 (2d Cir. 2013) ................................................................12

*Aspilaire v. Wyeth Pharm., Inc.*,
   612 F. Supp. 2d 289 (S.D.N.Y. 2009) .......................................................6

*Benzinger v. Lukoil Pan Ams., LLC*,
   447 F. Supp. 3d 99 (S.D.N.Y. 2020) .........................................................7

*Brummell v. Webster Cent. Sch. Dist.*,
   No. 06-CV-6437, 2009 U.S. Dist. LEXIS 7644 (W.D.N.Y. Jan. 29, 2009) ...........6

*Chu v. City of N.Y.*,
   99 CIV. 11523 (DLC), 2000 U.S. Dist. LEXIS 18513 (S.D.N.Y. Dec. 27,
   2000) ..............................................................................5

*Clark Cty. Sch. Dist. v. Breeden*,
   532 U.S. 268, 121 S. Ct. 1508 (2001) .......................................................17

*Collymore v. New York*,
   767 F. App'x 42 (2d Cir. 2019) ...............................................................14

*Debose v. Univ. of S. Fla. Bd. of Trs.*,
   811 F. App'x 547 (11th Cir. 2020) ...........................................................4

*Evert v. Wyo. Cnty. Cmty. Health Sys.*,
   2017 U.S. Dist. Lexis 69681 (W.D.N.Y. 2017)..............................................11

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
   136 F.3d 276 (2d Cir. 1998) ...............................................................4, 11

*Gissendanner v. Gen. Motors Corp.*,
   No. 6:20-CV-06109 EAW, 2022 U.S. Dist. LEXIS 213631 (W.D.N.Y. Nov.
   28, 2022)..........................................................................14

*Green v. Mount Sinai Health Sys.*,
   826 F. App'x 124 (2d Cir. 2020) ............................................................20

*Guzman v. Crothall Healthcare*,
   No. 17-CV-4306-CBA (PK), 2021 U.S. Dist. LEXIS 213777 (E.D.N.Y. Sep.
   29, 2021)........................................................................9, 13

*Hollington v. CDM Fed. Programs Corp.*,
   No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887 (S.D.N.Y. Mar. 10,
   2023)................................................................................................................17

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
   470 F. Supp. 2d 345 (S.D.N.Y. 2007) .................................................................7

*Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*,
   716 F.3d 10 (2d Cir. 2013) ...............................................................................11

*Kobos v. Target Corp.*,
   No. 2:15-cv-5573 (DRH)(SIL), 2018 U.S. Dist. LEXIS 98554 (E.D.N.Y. June
   12, 2018)............................................................................................................6

*Kraiem v. JonesTrading Institutional Servs. LLC*,
   571 F. Supp. 3d 53 (S.D.N.Y. 2021) .................................................................17

*Lebowitz v. New York City Dep't of Educ.*,
   407 F. Supp. 3d 158 (E.D.N.Y. 2017)................................................................22

*Lehman v. Bergmann Assocs.*,
   11 F. Supp. 3d 408 (W.D.N.Y. 2014) ................................................................22

*Mayers v. Emigrant Bancorp, Inc.*,
   796 F. Supp. 2d 434 (S.D.N.Y. 2011) ...............................................................10

*Maynor v. Dow Chem. Co.*,
   No. G-07-0504, 2010 U.S. Dist. LEXIS 143289 (S.D. Tex. July 19, 2010) ..........5

*McHenry v. One Beacon Ins. Co.*,
   Civil Action No. 03-CV-4916, 2005 U.S. Dist. LEXIS 46573 (E.D.N.Y. Aug.
   29, 2005)............................................................................................................6

*Negron v. Ulster Cty.*,
   No. 1:08-CV-692, 2012 U.S. Dist. LEXIS 117142 (N.D.N.Y. Aug. 20, 2012) ......5

*Ochoa v. N.Y.C. Dep't of Educ.*,
   No. 20-cv-9014 (ALC), 2021 U.S. Dist. LEXIS 224901 (S.D.N.Y. Nov. 22,
   2021)................................................................................................................19

*Oyer v. New York*,
   No. 1:19-CV-01201 EAW, 2020 U.S. Dist. LEXIS 173868 (W.D.N.Y. Sep.
   22, 2020)..........................................................................................................14

*Richards v. Dep't of Educ. of N.Y.*,
   No. 21-cv-338 (LJL), 2022 U.S. Dist. LEXIS 19674 (S.D.N.Y. Feb. 2, 2022) ....14

*Russell v. Aid to Developmentally Disabled, Inc.*,
    416 F. Supp. 3d 225 (E.D.N.Y. 2017) .................................................................................17

*Sletten v. LiquidHub, Inc.*,
    2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 10, 2014) .......................................................2

*Thompson v. City of Charlotte*,
    No. 3:17-cv-00600-FDW-DSC, 2018 U.S. Dist. LEXIS 179270 (W.D.N.C.
    Oct. 18, 2018) .......................................................................................................................5

*United States v. N.Y.C. Dep't of Educ.*,
    407 F. Supp. 3d 365 (S.D.N.Y. 2018) .................................................................................14

*Valentine v. Standard & Poor's*,
    50 F. Supp. 2d 262 (S.D.N.Y. 1999) ...................................................................................15

*Van Brunt-Piehler v. Absolute Software, Inc.*,
    504 F. Supp. 3d 175 (W.D.N.Y. 2020)........................................................... 1, 2, 4, 16, 18

*Weber v. City of N.Y.*,
    973 F. Supp. 2d 227 (E.D.N.Y. 2013) .................................................................................12

*White v. Pacifica Found.*,
    973 F. Supp. 2d 363 (S.D.N.Y. 2013) .................................................................................14

*Wierzbic v. Howard*,
    331 F.R.D. 32 (W.D.N.Y. 2019) ...........................................................................................4

**Statutes**

New York State Human Rights Law.................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 50(b) ...............................................................................1, 4

Defendants Absolute Software, Inc. and Absolute Software Corporation (collectively, "Absolute" or "Defendants")[1] submit this Memorandum of Law in support of their Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claim for retaliation under the New York State Human Rights Law ("NYSHRL").

## PRELIMINARY STATEMENT

The jury's verdict in favor of Plaintiff on her retaliation claim under the NYSHRL is unsupported by the record adduced at trial. The finding of liability on this claim contravenes a legion of cases, and is contrary to the rationale of this Court's decision to dismiss Plaintiff's retaliation claim under the Equal Pay Act on summary judgment. *See Van Brunt-Piehler v. Absolute Software, Inc.*, 504 F. Supp. 3d 175, 193 (W.D.N.Y. 2020) ("Given that Plaintiff's termination did not occur until one year later, the Court concludes that no reasonable trier of fact could find a causal connection between the alleged protected activity under the EPA and Plaintiff's termination").

Plaintiff's evidence of retaliation was thin at the summary judgment phase of this action and only shrank – significantly – by the time of the trial. At the oral argument regarding Defendants' Motion for Summary Judgment, the Court expressed misgivings about whether there was sufficient evidence of protected activity by the Plaintiff to try the NYSHRL retaliation claim:

> I'll be very up front with you. This is one of the closer issues in this motion whether or not there is enough to go forward with a retaliation claim. I've gone through the record, my law clerk has gone through the record, and I'm having some trouble understanding what the Plaintiff is relying on for the protected activity that she is claiming raises enough of a question, at least, that this has to go to a jury.

---

[1]  Defendants Todd Awtry, Thomas Kenny, and Geoff Haydon do not join this Motion because the jury decided that there should be no individual liability against them, thus ending this action as it pertains to them. *See* Jury Verdict Form, Section I (5) (rejecting claims for individual liability); *see* Final Instructions at pp. 26 (stating that the jury would need to assess individual liability for retaliation claim).

*See* Declaration of Joshua R. Kornfield ("Kornfield Dec.") at Exh. A (November 9, 2020 Hearing Tr.) at 6:25-7:8.  The Court ultimately determined that "on a motion for summary judgment, these issues are not ripe for resolution."  *See Van Brunt-Piehler*, 504 F. Supp. 3d at 194, 196.

The retaliation claim is now ripe for dismissal, as the quantum of proof and the scope of what Plaintiff claimed constituted protected activity was materially broader at the summary judgment stage than what Plaintiff adduced at trial.  Most significantly, at trial Plaintiff relied only on alleged protected activity in July 2014, *see* Plaintiff's Amended *Voir Dire* Information (Dkt. 345) at pg. 2 ("Plaintiff alleges that defendants violated the law by . . . retaliating against her for having complained of discrimination in **July 2014**") (emphasis added).  Consistent with Plaintiff's lack of proof on her retaliation claim, Plaintiff's counsel did not suggest that retaliation played any role in the decision to terminate her employment in either the opening statement or the closing argument.  Instead, Plaintiff's counsel was consistent that the "real reason" Plaintiff was fired was because she is a woman.  Kornfield Dec., Exhs. B (March 6, 2023 Trial Tr.) at 29:19-20; C (March 15, 2023 Trial Tr.) at 1348:12-13.  The jury rejected that theory.  However, Plaintiff failed to prove, or even argue, that retaliation was the rationale for any adverse actions and thus Plaintiff's NYSHRL retaliation claim should be dismissed.

### No Protected Activity

The evidence presented by Plaintiff at trial was insufficient to satisfy the elements of a retaliation claim under the NYSHRL.  Fundamentally, Plaintiff failed to present sufficient evidence to support a finding that she engaged in protected activity in July 2014 – or at any time during her employment.  To qualify as protected activity under the NYSHRL, a plaintiff must be clear that she is "complaining of unfair treatment **due to [her] membership in a protected class** and that [she is] not complaining merely of unfair treatment generally." *Sletten v. LiquidHub, Inc.*, 2014 U.S. Dist. LEXIS 94697, at *14 (S.D.N.Y. July 10, 2014) (emphasis in original) (citation

omitted).   Plaintiff has failed to meet her burden to show that she complained about unfair treatment based on her gender.

### No Causal Connection to Termination

Plaintiff also failed to establish any causal connection between her alleged protected activity in July 2014 and the termination of her employment in July 2015.   Courts within the Second Circuit have consistently held that a passage of more than two months does not allow for an inference of causation.   Indeed, this Court voiced a similar concern during the trial:   "I don't think the Second Circuit would uphold a finding of causation with a year time frame. . . ."   *See* Kornfield Dec., Exh. D (March 9, 2023 Trial Tr.) at 603:16-23.   A one-year delay between the alleged protected activity and the termination of employment where, as here, there is no direct evidence of retaliatory animus, breaks any causal connection between the two events.

### No Causal Connection With Any Other "Adverse" Action

Other than Plaintiff's termination, which was too remote in time to be considered causally related, Plaintiff identified no other action that could be considered "adverse," and even the few actions that Plaintiff raised at trial predated the alleged protected activity.   Mr. Awtry's behavior toward Plaintiff did not change after her alleged complaints.   In fact, the incident that upset Plaintiff the most – the DOE investigation (including the alleged stealing accusation, threat of termination and withholding of commissions) – happened *before* Plaintiff allegedly complained.   There can be no causal connection where there is no change of behavior stemming from the alleged protected activity.

## PROCEDURAL BACKGROUND

On January 15, 2020, Defendants filed a motion for summary judgment to dismiss Plaintiff's claims including her claims for retaliation under the NYSHRL and the Equal Pay Act. Dkts. 143, 149.   On November 30, 2020, the Court granted in part and denied in part Defendants'

summary judgment motion, dismissing the Equal Pay Act-based retaliation claims, but denying the motion with respect to the NYSHRL retaliation claim. *See Van Brunt-Piehler*, 504 F. Supp. 3d at 180. A jury trial was held on Plaintiff's claims from March 6, 2023 through March 16, 2023. At the conclusion of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law on Plaintiff's retaliation claim, arguing primarily that Plaintiff presented inadequate proof that she engaged in protected activity or that any adverse actions were caused by any protected activity. *See* Kornfield Dec., Exhs. D (March 9, 2023 Trial Tr.) at 588:17-595:4; E (March 14, 2023 Trial Tr.) at 1221:17-21. The Court reserved decision on the Motion. Kornfield Dec., Exhs. D (March 9, 2023 Trial Tr.) at 608:7-8; E (March 14, 2023 Trial Tr.) at 1222:4-5.

**<u>ARGUMENT</u>**

## I.   LEGAL STANDARD

Judgment as a matter of law may be granted "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." *Wierzbic v. Howard*, 331 F.R.D. 32, 44 (W.D.N.Y. 2019) (citation omitted). "A Rule 50(b) motion for judgment as a matter of law is decided according to the same standard as a motion for summary judgment. . . ." *Id*. at 44-45. However, "a previous denial of summary judgment does not bar the district court from later granting judgment as a matter of law in favor of the summary judgment movant." *Id*. at 45. While there is a high standard for these motions, courts grant judgment as a matter of law when the facts adduced at trial do not satisfy the elements of a retaliation claim. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (affirming grant of judgment as a matter of law on retaliation claim); *Debose v. Univ. of S. Fla. Bd. of Trs.*, 811 F. App'x 547, 557-58 (11th Cir. 2020) (affirming decision to overturn jury verdict on retaliation claim because there was insufficient evidence to show a causal connection between the protected activities and the adverse

employment actions); *Chu v. City of N.Y.*, 99 CIV. 11523 (DLC), 2000 U.S. Dist. LEXIS 18513, at \*19 (S.D.N.Y. Dec. 27, 2000) (granting motion for judgment as a matter of law on retaliation claim); *Negron v. Ulster Cty.*, No. 1:08-CV-692 (FJS/RFT), 2012 U.S. Dist. LEXIS 117142, at \*12 (N.D.N.Y. Aug. 20, 2012) (same); *Thompson v. City of Charlotte*, No. 3:17-cv-00600-FDW-DSC, 2018 U.S. Dist. LEXIS 179270, at \*12 (W.D.N.C. Oct. 18, 2018) (same); *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2010 U.S. Dist. LEXIS 143289, at \*47 (S.D. Tex. July 19, 2010) (same).

## II.   PLAINTIFF FAILED TO PRESENT SUFFICIENT EVIDENCE AT TRIAL TO SUPPORT HER NYSHRL RETALITION CLAIM

Plaintiff claims that she made complaints of gender discrimination in July 2014.  *See* Plaintiff's Amended Voir Dire Information (Dkt. 345) at pg. 2.  However, there was insufficient evidence adduced at trial for a reasonable juror to conclude that (1) Plaintiff engaged in protected activity; (2) Defendants knew of Plaintiff's alleged protected activity; (3) the alleged protected activity was a ***but-for*** cause for any cognizable adverse actions, and (4) Defendants' legitimate, non-retaliatory reasons for the adverse actions were pretextual and retaliation was the true reason for such actions.

### A.   There is Insufficient Evidence that Plaintiff Engaged in Protected Activity

As the Court already observed at the conclusion of Plaintiff's case-in-chief, Plaintiff has presented little evidence, if any, that she engaged in protected activity in July 2014.  *See* Kornfield Dec., Exh. D (March 9, 2023 Trial Tr.) at 604:19-605:4 ("**I'm not sure a reasonable juror could conclude that Mrs. Piehler was complaining about sex discrimination**"); 603:2-9 ("I was surprised to see in the statement of the case that was agreed to that the retaliation was allegedly comments back in July of 2014, the suggestion that somehow you could prove causation with that, **even if there was a complaint of gender discrimination, and I'm not sure the evidence**

**supports that**. . . ."); 603:16-23 ("I don't think the Second Circuit would uphold a finding of causation with a year time frame where **the underlying evidence of alleged complaints about discrimination is so weak**. I mean, so, in other words, this isn't a situation where you have somebody going to a supervisor and saying, 'I'm being discriminated against because I'm a woman.' **We don't have that here**") (emphasis added).

The Court's concern about the sufficiency of the NYSHRL retaliation claim is well-founded. To qualify as protected activity, Plaintiff would have needed to raise complaints that would have put Defendants on notice that she was complaining about unfair treatment **based on her gender**. "[M]ere complaints of unfair treatment by an individual are not protected[.]" *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009). For example, in *Aspilaire*, the plaintiff alleged that she met with an HR representative to discuss the fact that a group including African-American employees were being "treated unfairly" with respect to scheduling and work assignments. *Id.* at 309. The court granted summary judgment in favor of the employer and held that even if the group of complaining employees was African-American, "the mere fact that the group making the complaints was African American will not convert an ordinary complaint into a complaint of racial discrimination[.]" *Id.* at 310; *see also Brummell v. Webster Cent. Sch. Dist.*, No. 06-CV-6437, 2009 U.S. Dist. LEXIS 7644, at *12-13 (W.D.N.Y. Jan. 29, 2009) (granting summary judgment in favor of employer because plaintiff's claim that she was "treated differently than other employees" did not constitute protected activity because she did not allege that she was being treated differently because she was a woman); *see also Kobos v. Target Corp.*, No. 2:15-cv-5573 (DRH)(SIL), 2018 U.S. Dist. LEXIS 98554, at *19-21 (E.D.N.Y. June 12, 2018) (plaintiff's claim that her hours were cut while other employees' hours were increased did not constitute protected activity); *see also McHenry v. One Beacon Ins. Co.*, Civil

Action No. 03-CV-4916, 2005 U.S. Dist. LEXIS 46573, at *24 (E.D.N.Y. Aug. 29, 2005) (plaintiff's "alleged periodic complaints that she was being unfairly paid less than her counterpart Senior Trial Attorney did not rise to the level of protected activity since those complaint[s] were not articulated as gender-based discrimination but only as 'unfair'"); *see also Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 126 (S.D.N.Y. 2020) (plaintiff's complaint about "unfair" compensation did not constitute protected activity because it was unclear that plaintiff's complaint related to her national origin); *see also Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (granting summary judgment to employer because "complaints from a female high-level manager about having to perform secretarial work" did not put employer on notice that plaintiff felt that she was discriminated against on the basis of sex).

The principles set forth in these cases are directly applicable here. Plaintiff testified that she told Mr. Berardo and Mr. Olsen only that she wanted to be treated like the "others," without even identifying who the "others" were.[2]  Those statements were not sufficient to put Defendants on notice that Plaintiff was complaining about unfair treatment **based on her gender**. General statements of that nature are insufficient to raise an inference of protected activity, as a matter of law.

---

[2]  In her Affirmation filed in support of the Opposition to Defendants' Motion for Summary Judgment (Dkt. 156), Plaintiff characterized her complaints to Messrs. Berardo and Olsen as related to gender. *See* Dkt. 156 ¶ 73 ("I also complained to Mr. Berardo that . . . other **male** employees were being paid full commissions"), ¶ 77 ("I told Mr. Olsen that . . . other employees, who were **males**, continued to receiver their commissions") (emphasis added).  However, in her trial testimony, Plaintiff did not claim to compare herself to males, but to "others." Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 292:24-293:6 ("I wanted to be treated equally to the others"), 350:2-7 ("I wanted to be treated like the others.  I wanted the same respect and to be treated like the other managers. . . .").  Therefore, while Plaintiff's allegations of protected activity may have been just enough to survive summary judgment, her allegations were substantially weaker at trial.  Notably, Plaintiff's trial testimony is consistent with her deposition testimony.  It was only in opposition to summary judgement that Plaintiff included the word "male(s)" in describing what she allegedly said to Mr. Berardo and Mr. Olsen after the DOE investigation.  *See* Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 172) at pg. 24.

In the context of Defendants' review of why sales to the New York City Department of Education (the "DOE") were treated as new business for sales commission purposes, Plaintiff claims that she called Daniel Berardo, the former head of HR, on June 30, 2014,[3] to ask him (1) whether he was aware of the DOE investigation, (2) whether she was being fired, and (3) about her withheld salary and commissions.  *See* Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 215:7-217:5; 291:2-293:16.  Plaintiff testified that, in the context of that discussion, she told Mr. Berardo that she "was concerned that [she] wanted to be treated equally to the others.  And that [she] was at **a substantial disadvantage based on what had just happened**."  *Id.* at 292:24-293:6.  Plaintiff did not connect her allegedly unequal treatment to her gender.  When asked by her counsel what she said to Mr. Berardo about commissions being withheld, Plaintiff answered, "I told him that my commission check covers sales from 10 states, not just the DOE."  *Id.* at 216:20-23.  When Plaintiff's counsel asked again what she told Mr. Berardo about the DOE commissions being withheld, Plaintiff answered "I asked him if he was aware of it," not that she attributed it to gender discrimination.  *Id.* at 217:3-5.

It is clear from Plaintiff's trial testimony that her concern was that the DOE investigation "was going to impact [her]] going forward" "with a new CEO starting the next week."  *Id.* at 291:22-292:19.  It is transparent that Plaintiff was contacting Mr. Berardo to defend herself in the context of the DOE investigation.[4]  She was not engaging in protected activity.

---

[3]   As Plaintiff's conversation with Daniel Berardo allegedly took place on June 30, 2014 (Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 242:16-20), it also falls outside the time-period of July 2014 when Plaintiff alleges she engaged in protected activity.

[4]   Plaintiff also raised an issue with the reporting of sales numbers but did not relate this issue to her gender either. Kornfield Dec., Exh. H (March 8, 2023 Trial Tr.) at 492:24-493:5 (Plaintiff acknowledged Absolute's finance department compiled sales numbers and that she did not know whether Mr. Awtry was involved).  Plaintiff also acknowledged that although she stated in an email to Daniel Berardo on July 6, 2014 "all I want is the data reflected correctly and to be paid fairly" (Kornfield Dec., Exh. G (Exhibit 21)), she did not identify any person in comparison to whom she allegedly was paid unfairly.  Kornfield Dec., Exh H (March 8, 2023 Trial Tr.) at 495:24-496:4.

*Guzman v. Crothall Healthcare* is analogous.  In *Guzman*, the plaintiff was the subject of a company investigation for improper timekeeping practices.  *Guzman v. Crothall Healthcare*, No. 17-CV-4306-CBA (PK), 2021 U.S. Dist. LEXIS 213777, at *7 (E.D.N.Y. Sep. 29, 2021).  In response to the investigation, the plaintiff sent a letter to the HR department complaining that she was purposefully singled out and treated differently than others.  *Id.* at *11, *44.  The E.D.N.Y. court held that the plaintiff's complaint about being singled out by an investigation did not constitute protected activity because the employee did not reference a protected trait in her complaint.  *Id.* at *44-46.  The exact same scenario transpired here.  Plaintiff's conversation with Mr. Berardo about the DOE investigation does not constitute protected activity.

Plaintiff also claims that she approached Errol Olsen to defend herself following the DOE investigation.  Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 347:17-349:23 ("I started out telling him how upset I was with the stealing accusation.").  Plaintiff reiterated her concern about how the new CEO, Geoff Haydon, would perceive her.  *Id.* at 349:6-13.  Plaintiff also testified that she told Mr. Olsen about the fact that Mr. Awtry "e-mailed out, **everyone's** performance ranking . . . to all of the other managers."  Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 348:21-349:5 (emphasis added).

Just as in her discussion with Mr. Berardo, Plaintiff did not claim to make any complaints of mistreatment based on her gender to Mr. Olsen.  When prompted by her counsel, Plaintiff testified that she told Mr. Olsen "I wanted to be treated like the others.  I wanted the same respect and to be treated like the other managers and I didn't feel that was happening."  *Id.* at 350:2-7.  When asked by her counsel whether she described to Mr. Olsen what she thought caused "this unequal treatment[,]" Plaintiff testified, "Well Errol knew.  I mean Errol was aware of the DOE

saga." *Id*. at 349:14-19.  Thus, Plaintiff admittedly did not connect her treatment to gender in her discussion with Errol Olsen.

### B. Plaintiff Failed To Establish That Defendants Knew That She Was Complaining Of Gender Discrimination

In addition to the fact that Plaintiff did not characterize her complaints as based on her gender, the evidence at trial established that neither Mr. Berardo, nor Mr. Olsen had any reason to infer that Plaintiff's complaints about the DOE investigation had anything to do with her gender. Two out of the three people who were investigated for treating sales to the DOE as sales to a new customer were men. *See* Kornfield Dec., Exh. H (March 8, 2023 Trial Tr. (Plaintiff's testimony)) at 483:7-484:25 ("Q. And just to be clear, two of the three people who had their commissions withheld during the DOE investigation were males, correct?  A. Correct").  All three individuals had their commissions withheld pending the investigation.  Likewise, Plaintiff testified that one of the male employees, Charles Springgay, contacted her and was very upset because he had been accused of something improper.  *Id*.  Therefore, if Plaintiff complained about being the subject of the same investigation as her male co-workers, Mr. Berardo and Mr. Olsen had no reason to infer that Plaintiff was complaining about gender discrimination.  *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448-50 (S.D.N.Y. 2011) (holding that employer had no reason to infer that the plaintiff's complaints to HR about a manager's mistreatment of female employees was based on gender discrimination because at least two of his victims were male).

Consistent with Plaintiff's testimony and the documentary evidence, both Mr. Berardo and Mr. Olsen testified unequivocally that they did not believe that Plaintiff was alleging discrimination.  Mr. Berardo was asked: "Q: Despite all the conversations with Mary Piehler, the emails we have seen, you never once investigated discrimination?  Mr. Berardo answered, "That's correct.  That was never raised."  Kornfield Dec., Exh. I (Berardo Tr.) at 261:21-262:5.  Mr.

Berardo was also asked whether any of the concerns raised by Plaintiff involved discrimination of any kind. Mr. Berardo answered, "Never." *Id*. at 330:11-14. Likewise, Mr. Olsen testified that there was "nothing in [Plaintiff's] complaint that was gender-related[.]" Kornfield Dec., Exh. J (Olsen Tr.) at 91:14-24. Mr. Olsen was also asked if "at any time during Mary Piehler's employment at Absolute Software, did she complain about discrimination?" He answered "No." *Id*. at 154:16-21.

"[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998). In *Galdieri –Ambrosini*, the Second Circuit affirmed the post-trial entry of judgment as a matter of law because "there was no semblance of gender-oriented motivation in the events or conversations to which [the plaintiff] testified" and that plaintiff's complaints "did not state that [she] viewed [her supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the company] to understand that that was the nature of her objections." *Id.; see also*, *Evert v. Wyo. Cnty. Cmty. Health Sys.,* 2017 U.S. Dist. Lexis 69681 at *18 (W.D.N.Y. 2017) ("[I]t is objectively unreasonable to believe that complaining about poor treatment in the workplace that is unrelated to any trait, protected or otherwise, is a 'protected activity' under Title VII").

As there was no evidence of protected activity and no evidence that Defendants knew that Plaintiff was engaging in protected activity, Plaintiff's NYSHRL retaliation claim should be dismissed as a matter of law.

### C.  There is No Evidence that Any Alleged Protected Activity was a But-For Cause of Any Cognizable Adverse Actions

Plaintiff also failed to establish that her alleged protected activity was a but-for cause of any of the actions about which she complained.  "In order to establish but-for causation, Plaintiff would have to prove that the adverse employment actions would not have occurred in the absence of a retaliatory motive." *Weber v. City of N.Y.*, 973 F. Supp. 2d 227, 271-72 (E.D.N.Y. 2013).

In her trial testimony, Plaintiff complained of very few actions and provided no direct evidence that any of those actions were the result of any alleged protected activity (as well as failing to connect them in any way to gender discrimination).  *See Aiossa v. Bank of Am., N.A.*, 538 F. App'x 8, 10 (2d Cir. 2013) (affirming summary judgment dismissal of retaliation claim because "[s]hort of speculation . . . there is no evidence that retaliation . . . played even a partial motivating role in any of the allegedly adverse actions").

In addition, as Plaintiff's trial testimony makes clear, no evidence was adduced at trial establishing that Mr. Awtry's treatment of Plaintiff changed in any way after the alleged protected activity.  Most of the behavior that she complained of during the trial also predated the alleged protected activity, proving that there is no causal connection between the two.

| Alleged Actions After Protected Activity | Alleged Actions Before Protected Activity |
|---|---|
| Mr. Awtry was angry, yelled at Plaintiff and accused her of stealing in Vancouver office in 2nd week of July 2014 | Plaintiff testified that Mr. Awtry accused her of stealing, threatened to terminate her and withheld her commissions on June 27, 2014 (prior to the alleged protected activity). Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 194:17-196:7; 207:12-23; 208:8-13.<br><br>Plaintiff testified that in 2013, a few weeks after her first substantive interaction with Mr. Awtry, he got "angry" because she told him that he should not include an "HP Confidential" footer in a presentation.  Kornfield Dec., Exh. B (March 6, 2023 Trial Tr.) at 101:2-3; 105:22107:25. |

| Alleged Actions After Protected Activity | Alleged Actions Before Protected Activity |
|---|---|
| Plaintiff's DOE commissions were withheld[5] | Plaintiff testified that at the same time Mr. Awtry accused Plaintiff of stealing (on June 27, 2014), he withheld her pay.  Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 210:22-211:3. Plaintiff also testified that she notified Daniel Berardo on June 30, 2014 that her pay had been withheld.  *Id.* at 215:15-23; 216:14-17; 216:20-23; 217:3-5; Kornfield Dec., Exhs. K (Exhibit 166) (June 30, 2014 email refers to the fact that commissions were withheld pending the investigation); L (Exhibit 437) (June 30, 2014 email refers to the fact that Plaintiff, Charles Springgay, and Justin Peacock were not paid commissions pending the investigation). |
| Plaintiff did not receive a pay raise at the end of Fiscal Year 2014 | Plaintiff testified that Mr. Awtry could have given her a pay raise in June 2013 but did not. Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 170:20-171:5; 179:6-7. |
| Plaintiff received a negative performance evaluation at the end of Fiscal Year 2014, which was emailed to her instead of having a sit down review | Plaintiff testified that her Fiscal Year 2013 performance review contained the same comment for every category and allegedly was not communicated to her in a meeting. Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 172:20-173:10. |
| Plaintiff's employment was terminated on July 1, 2015 | Plaintiff testified that on June 27, 2014, Mr. Awtry threatened to terminate her employment. *Id.* at 196:2-7; 207:12-23; 208:13; 210:22-211: 3; *see also*, Kornfield Dec., Exh. M (Exhibit 73) (Mr. Awtry believed there were grounds to terminate "all three" individuals investigated for the DOE sales: Plaintiff, Charles Springgay and Justin Peacock). |

"[A]n employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct."  *Guzman*,

---

[5]   The Court excluded evidence that Plaintiff was not ultimately paid commissions on the DOE sales because she was unable to make an evidentiary proffer.  Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 139:6-7.

2021 U.S. Dist. LEXIS 213777, at *47 (citation omitted); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 385 (S.D.N.Y. 2013) ("Where there is evidence that the employer was considering the adverse employment action before any protected activity, . . . an employer's proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality") (quotation marks omitted); *see Gissendanner v. Gen. Motors Corp.*, No. 6:20-CV-06109 EAW, 2022 U.S. Dist. LEXIS 213631, at *26 (W.D.N.Y. Nov. 28, 2022) (J. Wolford) (observing that plaintiff was issued written discipline both before and after engaging in protected conduct and granting summary judgment to the employer); *see also Oyer v. New York*, No. 1:19-CV-01201 EAW, 2020 U.S. Dist. LEXIS 173868, at *19 (W.D.N.Y. Sep. 22, 2020) (J. Wolford) ("However, it is well-established that '[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise'"); *see also United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 404 (S.D.N.Y. 2018) ("It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity").

In addition to the fact that virtually everything that Plaintiff complained of predates her alleged protected activity, several of her so-called complaints are not cognizable as a matter of law. For example, assuming that Plaintiff was only yelled at after engaging in protected activity, being yelled at does not constitute an adverse action. *See Collymore v. New York*, 767 F. App'x 42, 46 (2d Cir. 2019) (yelling falls within the category of "petty slights, minor annoyances, and simple lack of good manners"); *see also Richards v. Dep't of Educ. of N.Y.*, No. 21-cv-338 (LJL), 2022 U.S. Dist. LEXIS 19674, at *53 (S.D.N.Y. Feb. 2, 2022) (same).

Plaintiff also claims that her receipt of a negative performance review in August 2014 was an adverse action, but "[n]egative evaluations alone, without any accompanying adverse result, however, are not cognizable." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283 (S.D.N.Y. 1999).[6]  Moreover, for several categories in the performance review, Plaintiff assigned herself the same or a lower rating than Mr. Awtry assigned her.  *See* Kornfield Dec., Exh. N (Exhibit 11) at pp. 1 (2H –Q3 Revenue Attainment), 4 (Expense Reporting), 6 (Maintain an accurate and healthy pipeline. . .), 8 (Set clear goals around accountability. . .), 9 (Take 'ownership' of resources. . .). And in all but three out of the seventeen questions in the review, Mr. Awtry and Plaintiff's scores were within a point of each other.  In all, Plaintiff's average rating for herself was only .77 points higher than Mr. Awtry's average rating on a five-point scale.  *Id*. at pg. 10.

### D.  There Is No Causal Connection Between The Alleged Protected Activity And The Termination Of Plaintiff's Employment

The only arguably cognizable adverse action in this case is the termination of Plaintiff's employment.  However, Plaintiff, as a matter of law, has failed to prove that the termination of her employment was causally related to any alleged protected activity for the following reasons: (1) Plaintiff presented no direct evidence of retaliatory animus in connection with her termination, and in fact argued that comments allegedly made by Thomas Kenny about hiring only athletes provided the impetus for her termination; (2) Plaintiff adduced evidence that Mr. Awtry sought to terminate her employment ***prior to*** her alleged protected activity (if the alleged adverse action took place before the protected activity, there can be no causal connection); (3) the termination took place a full year after the alleged protected activity, which, as a matter of law, is too remote in time; and (4) between the date of the alleged protected activity and the termination, Plaintiff

---

[6]  Plaintiff's rebuttal to her 2014 performance evaluation (Kornfield Dec., Exh. W (Exhibit23)) contains explanations for her performance but does not identify any incorrect information in the performance evaluation.

received a favorable performance rating,[7] severing any causal connection between her alleged complaints and the termination of her employment.

### 1. The Termination of Plaintiff's Employment Was Too Remote in Time

A full year elapsed between the alleged protected activity in July 2014 and the termination of Plaintiff's employment in July 2015. That is too long a time to support an inference of causation. Plaintiff's prior allegation of engaging in protected activity on May 22, 2015 had been significant to the Court's analysis at the summary judgment stage to distinguish the NYSHRL retaliation claim from the dismissed EPA retaliation claim. *Van Brunt-Piehler*, 504 F. Supp. 3d at 195 (holding that the fact that the alleged protected activity on May 22, 2015 had preceded Plaintiff's termination by only five weeks gave rise to an inference of retaliation for the NYSHRL claim). Given that Plaintiff abandoned the May 22, 2015 email as protected activity[8] and has now committed to basing her retaliation claim on alleged protected activity in July 2014, the same year-long period between the alleged protected activity and Plaintiff's termination that doomed her EPA retaliation claim should similarly doom her NYSHRL retaliation claim. The Court specifically noted Plaintiff's Amended Voir Dire Information limiting the protected activity to July 2014 and voiced concern with Plaintiff's ability to prove causation. *See* Kornfield Dec., Exh. D (March 9, 2023 Trial Tr.) at 602:25-603:9 ("I was surprised to see in the statement of the case that was agreed to that the retaliation was allegedly comments back in July of 2014, the suggestion that somehow you could prove causation with that, even if there was a complaint of gender discrimination, and

---

[7]   Mr. Awtry rated Ms. Piehler's performance more highly than she rated herself in February 2015. *See* Kornfield Dec., Exh. O (Exhibit 66) at pg. 9.

[8]   In any event, there is nothing in the May 22, 2015 email to indicate that Plaintiff was raising any concern about gender discrimination. The email appears to suggest only that two ***male*** employees may at some point want to consult with Human Resources for an undisclosed reason. Nothing in the May 22, 2015 email would put a reasonable employer on notice that Plaintiff was attempting to make out a complaint of gender discrimination.

I'm not sure the evidence supports that, that you could prove causation with the termination in July of 2015. I mean, I'm having a hard time seeing that").

"Where there is no direct evidence of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by a retaliatory action." *Russell v. Aid to Developmentally Disabled, Inc.*, 416 F. Supp. 3d 225, 235-36 (E.D.N.Y. 2017) (citation omitted). However, here, as with the dismissed EPA retaliation claim, the main adverse action that Plaintiff complains about is her termination, which followed the alleged protected activity by a year. "[D]istrict courts in this Circuit have 'consistently held that a passage of more than **two months** between the protected activity and the adverse employment action does not allow for an inference of causation.'" *Id.* at 236 (citation omitted; emphasis added). While "[t]here is no firm outer limit to the temporal proximity required, [] most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59-60 (S.D.N.Y. 2021) (citation omitted); *see also Russell*, 416 F. Supp. 3d at 236 (same); *see also Hollington v. CDM Fed. Programs Corp.*, No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887, at *29-31 (S.D.N.Y. Mar. 10, 2023) (same); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) ("[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"). A year passed between Plaintiff's alleged protected activity in July 2014 and her termination on July 1, 2015. Courts are consistent that this is far too extended a lapse in time to reasonably infer causation.

Plaintiff has failed, as matter of law, to establish a causal connection between her alleged protected activity in July 2014 and the termination of her employment in July 2015. As this Court already held with respect to Plaintiff's dismissed EPA retaliation claim, "**no reasonable trier of fact could find a causal connection** between the alleged protected activity under the EPA [where Plaintiff allegedly compared herself to male employees who were not investigated regarding sales to the DOE] and Plaintiff's termination." *Van Brunt-Piehler*, 504 F. Supp. 3d at 193 (emphasis added). While the allegation of protected activity on May 22, 2015 had distinguished the NYSHRL retaliation claim from the EPA retaliation claim at the summary judgment stage, since Plaintiff abandoned this allegation, that distinction no longer exists. *Id.* at 195.

### 2. The Termination of Plaintiff's Employment Was Contemplated Prior to the Alleged Protected Activity

Moreover, evidence adduced at trial undercut any possibility of retaliatory animus after Plaintiff's alleged protected activity. Mr. Awtry contemplated terminating Plaintiff's employment in June 2014, before Plaintiff is alleged to have engaged in any protected activity. Plaintiff testified that on June 27, 2014, prior to the alleged protected activity, Mr. Awtry was "extremely annoyed" with her and told her "You're stealing and you're going to be terminated." Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 194:17-196:3. Plaintiff also adduced evidence at trial that on June 26, 2014, Mr. Awtry sent an email to others in connection with the DOE investigation in which he stated he believed there were grounds to terminate Plaintiff's employment. Kornfield Dec., Exh. M (Exhibit 73) (Email from Mr. Awtry on June 26, 2014: "Do we have enough grounds for termination for all 3? I believe we do but want others [*sic*] thoughts").[9] As discussed above, a

---

[9]  The notion that Mr. Awtry had a longstanding grudge against Plaintiff and sought to terminate her since June 2014 was one of Plaintiff's themes at trial. *See* Kornfield Dec., Exh. C (March 15, 2023 Trial Tr.) at 1323:9-13 ("In fact, we all know if Mr. Awtry had his way, she would have been fired in June of 2014 back when he said, I think we have grounds for termination. . . .").

causal connection cannot be established where the alleged adverse action was contemplated prior to any protected activity.

### 3. Plaintiff's Favorable Performance Review in February 2015 Severs any Causal Connection

Moreover, Plaintiff claims that Mr. Awtry gave her a positive performance review in February 2015, between the alleged protected activity and the decision to terminate her employment.  *See* Kornfield Dec., Exhs. F (March 7, 2023 Trial Tr.) at 302:12-316:10; O (Exhibit 66).  On that basis, the Court questioned whether a causal link could be shown.  *See* Kornfield Dec., Exh. D (March 9, 2023 Trial Tr.) at 604:19-605:4 ("where is the causal link here . . . [T]here was a performance evaluation that was given in February of 2015 that Ms. Piehler says was good, and, I mean, I think that is her argument that it was good").  The fact that Plaintiff received a positive review would undercut an inference of causation.  *Ochoa v. N.Y.C. Dep't of Educ.*, No. 20-cv-9014 (ALC), 2021 U.S. Dist. LEXIS 224901, at *10 (S.D.N.Y. Nov. 22, 2021) (holding that a prolonged passage of time and the fact that the plaintiff received both positive and negative performance reviews undercut causation).  In fact, Plaintiff's counsel contended in his opening statement that evidence would show that there was no intention to terminate Plaintiff's employment until just a few months before her termination.  Kornfield Dec., Exh. B (March 6, 2023 Trial Tr.) at 33:20-24 ("Suddenly, this decision-making process, we are going to show you, accelerates from nothing to termination in a few months").  Not only did Plaintiff not present any evidence linking any protected activity to her termination, she affirmatively tried to prove that she was in good standing at Absolute until the company imposed discriminatory hiring and firing criteria in the months leading up to her termination.  But the jury rejected that theory and now Plaintiff must resort to arguing that her termination was a *fait accompli* since she spoke to Mr. Berardo on June 30, 2014.  What is more, in order to explain Plaintiff's frequent disparaging

communications about Mr. Awtry, another pillar of Plaintiff's trial strategy was to claim that Mr. Awtry encouraged her to be ***more vocal*** in her complaints about him at the same time that he allegedly retaliated against her for complaining about him. *See* Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 269:15-21 ("He actually wrote in one of the performance reviews that I needed to be more vocal and speak up"), 278:19-280:23. Plaintiff construed Mr. Awtry's August 2014 review as encouraging her to be more vocal in her complaints about him, but also must now characterize this review as an adverse action to discourage her from raising complaints about him. She cannot have it both ways.

### E. Plaintiff Did Not Prove that Defendants' Legitimate Business Justifications for the Adverse Actions Were Pretextual

The evidence adduced at trial does not satisfy the elements of a *prima facie* case of retaliation under the NYSHRL. However, even assuming that Plaintiff did satisfy the elements of a *prima facie* case, Defendants should still prevail on this motion because Plaintiff failed to establish that any of the legitimate business justifications for any adverse actions were pretextual. *See Green v. Mount Sinai Health Sys.*, 826 F. App'x 124, 126 (2d Cir. 2020) (affirming grant of summary judgment on retaliation claim because plaintiff failed to rebut employers' evidence that the adverse action was due to a legitimate business reason).

As for the decision to terminate Plaintiff's employment, there were a number of well-substantiated justifications offered at trial that Plaintiff failed to discredit. *See* Kornfield Dec., Exhs. P (March 13, 2023 Trial Tr.) at 952:11-25; 964:9-965:2; 1103:21-25 (Mr. Awtry testified that Ms. Piehler's performance was "inconsistent," and she never met quota in any of the fiscal years he managed her, and she lacked the recent cybersecurity experience that the CEO Geoff Haydon was looking for in candidates for the new acquisition sales roles); Q (March 10, 2023 Trial Tr.) at 729:25-730:8; 862:12-22 (Mr. Kenny testified "her performance was inconsistent, [] she

was difficult and challenging to manage, and [] she lacked the recent cyber security [*sic*] experience"); E (March 14, 2023 Trial Tr.) at 1186:18-22, 1190:7-22, 1191:12-1192:6; (Mr. Haydon testified that Plaintiff's performance was variable and deficient in areas of strategic importance and that Plaintiff lacked the necessary cybersecurity experience for the acquisition role); R (Exhibit 787) (showing repeated failure to make quota and significant drop-off in quota attainment in the six months preceding Plaintiff's termination).

Plaintiff conceded that her performance was inconsistent and that the cybersecurity experience she cited was not recent as it predated her tenure at Absolute. *See* Kornfield Dec., Exh. F (March 7, 2023 Trial Tr.) at 387:13-16 ("On a quarterly basis, I would agree my performance was inconsistent"); 379:17-382:17 (Plaintiff testified that her only cybersecurity experience after she began working at Absolute in 2010 came from her experience at Absolute).

Mr. Kenny was terminated because he lacked the recent cybersecurity experience that the CEO Geoff Haydon required. *See* Kornfield Dec., Exhs. Q (March 10, 2023 Trial Tr.) at 686:13-20; E (March 14, 2023 Trial Tr.) at 1198:9-1199:25 (Mr. Haydon terminated Mr. Kenny and replaced a number of other employees and managers due to their lack of recent cybersecurity experience). Likewise, Mr. Awtry was demoted twice for lacking recent cybersecurity experience. *See* Kornfield Dec., Exh. P (March 13, 2023 Trial Tr.) at 964:24-965:9, 1101:17-1102:25.

As for the rationale that Plaintiff was difficult to work with, there was considerable documentary and testimonial evidence about her disparaging treatment of management, her refusal to support company objectives, and her fraught relationship with her manager, Todd Awtry. *See e.g.*, Kornfield Dec., Exhs. P (March 13, 2023 Trial Tr.) at 953:2-9, 1003:23-1004:8, 1019:3-9; Q (March 10, 2023 Trial Tr.) at 729:22-730:8, 862:12-25; S (Exhibit 420); T (Exhibit 421); U (Exhibit 638); V (Exhibit 891).

Given the ample and largely uncontested evidence about the reasons for Plaintiff's termination, Plaintiff did not come close to establishing that the legitimate reasons for Plaintiff's termination were pretextual.

### F.   Because Plaintiff's Termination Was Not Causally Related to Any Protected Activity, Plaintiff Is Not Entitled To An Award Of Lost Wages, Eliminating the Need to Proceed to the Damages Phase of the Trial

The Court should grant this motion and dismiss Plaintiff's NYSHRL retaliation claim as a matter of law because Plaintiff has failed to establish that she engaged in protected activity or that any alleged protected activity was the but-for cause of any of the events of which she complains. However, if the Court concludes that Plaintiff has carried her burden to prove that she engaged in protected activity and that the purported adverse actions in 2014 were legally cognizable and retaliatory, but that Plaintiff has failed to establish that the termination of her employment in 2015 was causally related to such protected activity, Defendants request that the Court grant this motion in part, and dismiss Plaintiff's retaliation claim to the extent that it is based on the termination of Plaintiff's employment.  The effect of such a ruling would be to preserve the jury's finding on liability, but would eliminate the need to assess back pay or front pay damages arising from Plaintiff's termination, allowing the Court to enter final judgment in the amount of $75,000. Courts have stripped out adverse actions from complaints alleging retaliation when those adverse actions are not cognizable or provable as a matter of law.  *See Lehman v. Bergmann Assocs.*, 11 F. Supp. 3d 408, 415-17 (W.D.N.Y. 2014) (dismissing claims that an alleged "constructive discharge" was an adverse act, but allowing claims that a demotion and placement on a PIP were adverse actions); *see also Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 171-172 (E.D.N.Y. 2017) (holding that a denial of a request to transfer was not an adverse action).

Here, Plaintiff offered no support for her claim that her termination was in retaliation for protected activity in July 2014.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for judgment as a matter of law dismissing Plaintiff's retaliation claim in its entirety and entering final judgment in favor of Defendants or, in the alternative, granting their motion in part and entering final judgment in favor of Plaintiff in the amount of $75,000.

Dated: New York, New York
April 14, 2023

**DORSEY & WHITNEY LLP**

By:     _/s/ Laura M. Lestrade_
       Laura M. Lestrade
       Mark S. Sullivan
       Joshua R. Kornfield
       51 West 52nd Street
       New York, New York 10019
       (212) 415-9200
       *Attorneys for Defendants*