UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY VAN BRUNT-PIEHLER,

*Plaintiff,*

v.

ABSOLUTE SOFTWARE, INC., ABSOLUTE
SOFTWARE CORPORATION, GEOFF HAYDON,
THOMAS KENNY, and TODD AWTRY,

*Defendants.*

Civil Action No.
16-CV-6313-EAW-MWP


PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE
JUDGMENT AS A MATTER OF LAW


THOMAS & SOLOMON LLP
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, NY 14607
(585) 272-0540

Of Counsel:   J. Nelson Thomas
Jonathan W. Ferris

i

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................iv

PRELIMINARY STATEMENT ............................................................................ 1

FACTS.................................................................................................................... 1

ARGUMENT ......................................................................................................... 1

   **I.**   LEGAL STANDARD FOR A NEW TRIAL UNDER RULE 59................................ 1

   **II.**   A NEW TRIAL IS WARRANTED BECAUSE THE ERRORS IN THE ADMISSION AND EXCLUSION OF EVIDENCE IMPACTED MS. PIEHLER'S SUBSTANTIAL RIGHTS AND THE OUTCOME OF THE CASE......................... 2

      A.  The Court's Preclusion of Live Testimony from Mr. Singular was erroneous... 2

      B.  The Court's Admission of the Demographic Data and Charts was Erroneous.. 8

      C.  The Court Erred in Not Admitting the Complete and Unredacted Anonymous Survey ............................................................................................................ 13

      D.  The Court's Exclusion of the Survey Conducted by Mr. Awtry on Ms. Piehler Was Error..................................................................................................... 16

      E.  The Court Erred in Not Admitting Ms. Rathbun's Resignation Letter........... 17

      F.  The Court Erred in Excluding Emails and Comments Made by Art Robinson...

          .................................................................................................................... 19

      G.  The Court Improperly Allowed Testimony That Amy Rathbun Was The Recipient of a Bullying Complaint................................................................ 20

      H.  The Court's Exclusion of the *Lubahn* Complaint Was in Error ...................... 21

      I.  The Court Erred in Imposing a Different Burden on Plaintiff as to the Unpaid Commissions as Opposed to the Burden Placed on Defendants.................... 22

J.   The Court Allowing Defendants to Offer New and Different Reasons for Ms. Piehler's Termination at Trial Was Highly Prejudicial and Warrants a New Trial ........................................................................................................... 23

**III.**   IN THE ALTERNATIVE TO A NEW TRIAL, JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED FRO PLAINTIFF AS THE JURY VERDICT AS TO PLAINTIFF'S GENDER DISCRIMINATION CLAIMS IS UNSUPPORTED BY THE EVIDENCE ................................................................................................ 24

## TABLE OF AUTHORITES

Page(s)

Cases

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*,
  328 F.3d 309 (7th Cir. 2003) ................................................................... 10
*Benn v. Metro-North Commuter Railroad Co.*,
  2019 WL 6467348 (D. Conn. Dec. 2, 2019) .......................................... 3
*Buscemi v. Pepsico, Inc.*,
  736 F.Supp. 1267 (S.D.N.Y. 1990) ....................................................... 10
*Cioffi v. New York Cmty. Bank*,
  465 F. Supp. 2d 202 (E.D.N.Y. 2006) ..................................................... 2
*Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*,
  2002 WL 31108380 (S.D.N.Y. Sept. 23, 2002) ...................................... 3
*Johnson v. Strive E. Harlem Emp't Grp.*,
  990 F. Supp. 2d 435 (S.D.N.Y.2014) ...................................................... 1
*Libront v. Columbus McKinnon Corp.*,
  832 F. Supp. 597 (W.D.N.Y. 1993) ....................................................... 10
*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) ..................................................................... 2
*Malek v. Fed. Ins. Co.*,
  994 F.2d 49 (2d Cir. 1993) ....................................................................... 2
*Mattivi v. S. Afr. Marine Corp.*,
  618 F. 2d 163 (2d Cir. 1980) ................................................................. 24
*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006) ............................................................ 3, 5, 8
*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997) ................................................................... 23
*Schering Corp. v. Pfizer Inc.*,
  189 F.3d 218 (2d Cir. 1999) ................................................................... 15
*Simblest v. Maynard*,
  427 F.2d 1 (2d Cir. 1970) ....................................................................... 24
*Stampf v. Long Island R. Co.*,
  761 F.3d 192 (2d Cir. 2014) ..................................................................... 1
*Tesser v. Bd. of Educ. of City Sch. Dist. of New York*,
  370 F.3d 314 (2d Cir. 2004) ..................................................................... 2
*Undefeated, Inc. v. UNCL, LLC*,
  2013 WL 12142961 (C.D. Cal. Apr. 17, 2013) ...................................... 4
*United States v. Landau*,
  155 F.3d 93 (2d Cir. 1998) ....................................................................... 2

Rules

Fed. R. Civ. P. 26 ......................................................................................... 4
Fed. R. Civ. P. 26 (a)(A)(i) ......................................................................... 3
Fed. R. Civ. P. 26(e)(1)(A) ......................................................................... 4

Fed. R. Civ. P. 37(c)(1) ................................................................................. 12, 13

Fed. R. Civ. P. 402 ............................................................................................... 9

Fed. R. Civ. P. 403 ............................................................................... 9, 11, 23

Fed. R. Civ. Pro. 50(b) .................................................................................. 1, 24

Fed. R. Civ. Pro. 59(a) ........................................................................................ 1

Federal Rule of Civil Procedure 59(a)(1)(A) ..................................................... 1

Federal Rule of Evidence 402 ............................................................................. 9

Federal Rule of Evidence 608(b) ................................................................. 20, 21

Federal Rule of Evidence 801(d)(2) ............................................................ 15, 17

Federal Rule of Evidence 803(1) ................................................................. 15, 17

Federal Rule of Evidence 803(3) ................................................................. 15, 17

Federal Rule of Evidence 803(6) ................................................................. *passim*

Federal Rule of Evidence 807 ...................................................................... 15, 17

Rule 37 ............................................................................................................. 2, 13

Rule 59 ................................................................................................... 13, 20, 24

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in support of her motion to set aside the jury verdict and for a new trial pursuant to Fed. R. Civ. Pro. 59(a) as to her gender discrimination claims. A new trial is warranted under Rule 59(a) as the Court made numerous errors in its evidentiary rulings both before and during trial, and those errors were critical to the jury's decision to not find in Plaintiff's favor on her gender discrimination claims. Alternatively, the Court should also grant judgment as a matter of law on Plaintiff's gender discrimination claims pursuant to Fed. R. Civ. Pro. 50(b).

## FACTS

Given the Court's familiarity with the factual background and testimony during the recent eight-day trial, Plaintiff does not repeat those facts here. The specific factual background and evidence relevant to this motion is set forth in full detail in the accompanying affirmation of J. Nelson Thomas.

## ARGUMENT

## I. LEGAL STANDARD FOR A NEW TRIAL UNDER RULE 59

Federal Rule of Civil Procedure 59(a)(1)(A) allows courts to "on motion, grant a new trial on all or some of the issues—and to any party—after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Among those traditional grounds for a new trial are errors in the admission or exclusion of evidence." *Leo v. Long Island R. Co.*, 307 F.R.D. 314, 321 (S.D.N.Y. 2015). A new trial on an evidentiary error is warranted if "it is likely that in some material respect the factfinder's judgment was swayed by the error." *Tesser v. Bd. of Educ. of City Sch. Dist. of New*

1

*York*, 370 F.3d 314, 319 (2d Cir. 2004) (quoting *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000)).

In assessing whether evidentiary errors require a new trial, courts consider factors such as "whether the testimony bore on an issue that is plainly critical to the jury's decision, whether that testimony was material to the establishment of the critical fact or whether it was instead corroborated and cumulative, and whether the wrongly admitted evidence was emphasized in arguments to the jury." *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (quoting *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000) (citations and internal quotation marks omitted). "[T]he principal factors to be considered are the importance of the witness's wrongly admitted testimony, and the overall strength of the [movant's] case." *Wray*, 202 F.3d at 526.

## II. A NEW TRIAL IS WARRANTED BECAUSE THE ERRORS IN THE ADMISSION AND EXCLUSION OF EVIDENCE IMPACTED MS. PIEHLER'S SUBSTANTIAL RIGHTS AND THE OUTCOME OF THE CASE.

### A. The Court's Preclusion of Live Testimony from Mr. Singular was erroneous.

Plaintiff first moves for a new trial on the grounds that the Court erred when it did not allow Lyle Singular to testify as a live witness, despite the Court's earlier finding that Mr. Singular had relevant testimony and that portions of his deposition testimony would be permitted at trial.

In its March 1, 2023 Bench Statement denying Plaintiff's motion to permit Mr. Singular to testify live, the Court identified the four-factor test used by the Second Circuit in evaluating the exclusion of witness testimony under Rule 37: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to meet the new testimony; and (4) the possibility of a continuance." *See* Dkt. 337 at *3 (quoting

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). As the Court also additionally noted, "preclusion is a drastic remedy that is generally disfavored." *Id*. (quoting *Benn v. Metro-North Commuter Railroad Co.*, No. 3:18-cv-737 (CSH), 2019 WL 6467348, at *3 (D. Conn. Dec. 2, 2019)). Furthermore, the "failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial." *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002).

While the Court identified the proper legal standard, the Court's subsequent application of those factors was in error, affecting Plaintiff's rights in prosecuting the action in not being allowed to present Mr. Singular as a live witness. As to the first factor, the Court found that because Mr. Singular was not disclosed as a live trial witness during discovery, this weighed in favor of precluding his live testimony at trial. *See* Dkt. 337 at *5. However, the Court had previously determined that the failure to disclose Mr. Singular would not be a basis for excluding his deposition testimony. *See* August 6, 2021 Transcript at 55:6-11 ("I don't find that the failure to include him on the initial disclosures in and of itself should preclude his testimony as long as it is sufficiently relevant and important. And I think that chain of communications or testimony that Mr. Ferris just cited to rises to that level."). The Court correctly did not cite any law or fact that would justify a reconsider of its finding as that finding was well-rooted in the record of the case.

Plaintiff was not aware of the *Lubahn v. Absolute Software, Inc.* action pending in the Eastern District of Michigan until years into this action. Thomas Aff. ¶ 3. While Plaintiff in discovery in this case asked the Defendants identify any prior complaints of discrimination against the company, Defendants did not formally disclose the existence of the *Lubahn*

litigation until Plaintiff pressed the issue and it was discussed with Judge Payson at a discovery conference held on May 8, 2018. *Id*. at ¶ 4. Thus, it was Defendants' own actions that prevented Plaintiff from identifying Mr. Singular as a potential witness earlier in the case, while defendants were aware of Mr. Singular the entire time. Given this, Defendants had no basis to claim that they were prevented about knowing about Mr. Singular and his testimony because he as not listed in Plaintiff's initial disclosures. Defendants were also aware of the general substance of Mr. Singular's testimony from the *Lubahn See* Fed. R. Civ. P. 26(e)(1)(A) (a party does not need to make a supplemental disclosure if "the additional or corrective information has ... otherwise been made known to the other parties during the discovery process or in writing"); Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules, 1993 Amendment ("There is ... no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process…"); *see also Undefeated, Inc. v. UNCL, LLC*, No. SACV121622PARZX, 2013 WL 12142961, at *2 (C.D. Cal. Apr. 17, 2013) ("Parties need not serve formal supplemental responses when the new or corrected information is disclosed through the discovery process."). Thus, not only was the Court satisfied with Plaintiff's reasons for not disclosing Mr. Singular, but Plaintiff was not even obligated to do so. As a result, it was clear error for this Court to weigh the first *Patterson* factor against Plaintiff.

The Court's analysis in the Bench Statement of the relief that Plaintiff sought, deposition testimony versus live testimony, is irrelevant to the analysis of the first *Patterson* factor as relief has nothing to do with the explanation for failing to comply with the disclosure requirement. Additionally, neither Rule 26(a)(A)(i) nor Defendants' interrogatories requested

Plaintiff to specifically identify any witnesses she would call as *live* witnesses.[1] As the Court was initially satisfied with Plaintiff's explanation for non-disclosure of Mr. Singular, there was no reason for the Court to arbitrarily change course when Plaintiff sought to have Mr. Singular testify as a live witness.

As to the second factor, the importance of the testimony of the precluded witness, the Court found that this factor weighed in favor of Plaintiff, or at the very least, was neutral. Bench Statement at * 5. Plaintiff proffered that Mr. Singular would offer important testimony about Absolute's gender discriminatory culture in at least two respects: (1) that Absolute's culture was based on a male-dominated jock mentality that was based on a fanciful view of what a tech orientated company should look like and Mr. Olsen personified that culture; and (2) that Mr. Singular was privy to the company's internal investigation of the nude swim, the recommendations that arose from that investigation, and their ultimate collapse with the arrival of Thomas Kenny. *See* Dkt 322-2. The Court itself noted the importance of Mr. Singular's testimony about Mr. Olsen and his role in the discriminatory culture at Absolute. *See* August 6, 2021 Oral Argument Transcript at 54: 2-14 ("[Olsen] is a relevant player in that regard . . . if he was trying to get rid of employees . . .  who were women and he was expressing that to other individuals in the company, I think that is certainly relevant. It's relevant. I mean, he is going to be a witness here and it's relevant even from an impeachment standpoint because he testified even with the pool incident he didn't think there was anything inappropriate about that.").

---

[1]     The closest Defendants come to this is perhaps in their Interrogatory No. 8 to Plaintiff. *See* Thomas Aff. ¶ 18. But this request merely calls for fact witnesses and does not distinguish between deposition and live testimony.

The suggestion by the Court that the importance of Mr. Singular's testimony is somehow lost because Plaintiff did not pursue him as a live witness at trial until May 2022 is erroneous for multiple reasons. First, the importance of Mr. Singular's testimony rises or falls on the importance of Mr. Singular's testimony. A witness's testimony does not become more or less important based on whether a party choses to use provisions in the FRCP to have that witness appear by transcript. Live or deposition testimony are given equal weight under the law. *See* Jury Instructions; **Exhibit K**.  Plaintiff's initial *voir dire* submission stated Mr. Singular could be called as a live witness. *See* Dkt. 205 ("Plaintiff believes that he will be a deposition witness unless he appears at trial, at which point plaintiff may call him for live testimony."). Second, Plaintiff only decided to call Mr. Singular as a live witness to satisfy Defendants objections to his deposition testimony which could be cured by his live testimony. Third, the decision to call Mr. Singular as a live witness did not catch Defendants off guard because Plaintiff informed Defendants of his live testimony some nine months  before the trial was held. Plaintiff further offered him up as a deposition witness for Defendants to question, an offer which Defendants not only rejected but actively opposed. which defendants it was not clear that Mr. Singular's live testimony would even be necessary until Defendants raised issues concerning the timing and context of when the discriminatory comments were made by Mr. Olsen. *See* Exhibit B at 54:18-24; *see also* Exhibits F, G, Dkt. 262 at *4; Exhibit S, Dkt. 267 at *2.; Exhibit H at 32:7-16. Accordingly, given the importance of Mr. Singular's testimony, this second factor weighs in favor of Plaintiff.

As to the third factor, the Court improperly determined that the prejudice suffered by the opposing party weighed in favor of precluding Mr. Singular from testifying. Bench Statement at *6-7. In particular in reaching that decision, the Court placed particular emphasis

on the fact that there had not been an opportunity for discovery as to Mr. Singular and that Plaintiff delayed in filing a motion to call him as a live witness until January 27, 2023. *Id*. at * 7. "Had Plaintiff moved for such relief sooner, perhaps any prejudice suffered by Defendants could have been cured." *Id*.

However, there had been some nine months for Defendants to conduct discovery on Mr. Singular. Plaintiff offered from May 2022 until the trial to make Mr. Singular available for deposition. The reason the deposition did not occur was not because the deposition was not available to Defendants (it was), but because defendants themselves chose not to do it.

Nor did Plaintiff delay filing a motion on the issue. To the contrary, shortly after Plaintiff offered Mr. Singular for a deposition, **the Court itself stated that Plaintiff could not go forward with a deposition of Mr. Singular** and that the Court would make a ruling as to whether or not Mr. Singular could be presented as a live witness. May 20, 2022 Conference at 7:25-8:9. The Court made that ruling on March 1, 2023, just five days before trial. To the degree one categorizes the length of time from when the Court said it would issue an order until when the order was issued as "delay," (and arguably characterizing that period as "delay" is inappropriate given the adjournment of the trial in the interim), it was not Plaintiff that was the source of the delay.

After the postponement of the trial and while awaiting the Court's adjudication as to whether Mr. Singular could testify live, counsel for Plaintiff contacted counsel for Defendants on June 24, 2022 to discuss deposing Mr. Singular so that the parties could have a well-developed record as to his testimony. *Id*. at ¶ 8. However, Defendants were once again not willing to agree to a deposition of Mr. Singular. ¶ 9. As a result, Plaintiff filed a Motion to Re-Open Discovery for the Limited Purpose of Deposing Lyle Singular on August 17, 2022. *See*

Dkt. 307. However, the Court did not rule on that motion until the January 13, 2023 conference, it which time it indicated that Plaintiff needed to file a motion to have Mr. Singular testify as a live witness. *See* Dkt. 320. The Court's determination that Plaintiff waited too long to seek relief was therefore incorrect as Plaintiff repeatedly sought, both through informal and formal means, to conduct discovery on Mr. Singular so that Defendants would be well aware of his testimony at trial. Plaintiff cannot bear the blame that Defendants failed to avail themselves of those opportunities. Viewing this procedural posture in the correct light, there was no prejudice to Defendants and this third factor also weighed in favor of allowing Mr. Singular to testify live at trial.

Finally, as to the fourth factor, the possibility of a continuance, this factor also weighed in favor of allowing Mr. Singular to testify live for substantially the same reasons as to the third factor. As discussed above, Plaintiff requested Mr. Singular testify live beginning in at least May 2022, and despite being aware of that position, Defendants failed to take any steps to conduct a deposition of Mr. Singular. In fact, the trial *was* continued from its June 2022 date after Plaintiff first sought to have Mr. Singular testify live. Given that the trial did not occur for approximately nine months after Plaintiff made that request, there was more than ample time for Defendants to obtain whatever further discovery they needed in regards to Mr. Singular, but they simply chose not to do so. As a result, this factor also weighed in favor of allowing Mr. Singular to testify live at trial.

Therefore, because each of the four *Patterson* factors favored allowing Mr. Singular to testify live at trial, this Court erred in not allowing Mr. Singular to testify as a live witness during the trial. Furthermore, given the importance of Mr. Singular's testimony in establishing the discriminatory culture at Absolute, the exclusion of his testimony at trial affected Plaintiff's

substantial rights in demonstrating Absolute's discriminatory culture, thus warranting a new trial.

**B.      The Court's Admission of the Demographic Data and Charts was Erroneous.**

A new trial is also warranted because the jury should not have considered the overall demographics of the Defendants workforce that was not tied to the relevant statistical cohort.

Statistical analyses in employment cases must be based on the proper group of employees, must reflect the employees subject to the challenged employment practice, and are not admissible if they are overly or underly inclusive. *See Buscemi v. Pepsico, Inc.*, 736 F.Supp. 1267, 1270-1271 (S.D.N.Y. 1990) ("statistical evidence regarding defendant's hiring practices is not relevant to the decision to terminate plaintiff whether taken in isolation or in the context of the other offered proof."); *Libront v. Columbus McKinnon Corp.*, 832 F. Supp. 597, 618 (W.D.N.Y. 1993) ("The statistics upon which plaintiffs rely must refer to a proper sample of employees, and must not take impermissible factors into account."); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) ("In order to be considered, the statistics must look at the same part of the company where the plaintiff worked [and] include only other employees who were similarly situated with respect to performance, qualifications, and conduct").

Here, the employee rosters were indisputably not based on the proper cohort of employees that were subject to Mr. Haydon's directive to hire male jocks that would get in each others' faces and talk trash. Mr. Kenny testified at trial that Mr. Haydon's comments about the workforce were directed only as to "customer facing sales reps," a group not listed in any exhibit. that none of the exhibits is directed to. Since the exhibits were not tailored to the relevant cohort, they were inadmissible. Even assuming *arguendo* that such demographic

evidence would in theory be relevant, the demographic evidence offered by Defendants at trial was unreliable, and as such, its prejudicial effect far outweighs its probative value under Rule 403. As discussed above, Defendants placed individuals in the "Sales" department who did not perform sales duties, with Mr. Kenny admitting as such as to Ms. Jeffries. This was hardly the only problem. Even after the Court ordered Defendants to provide Plaintiff in January 2023 with the underlying spreadsheet data that they used from their human resources system to compile the data in Exhibits 628-635, Defendants readily admitted that there was a further error in the spreadsheet and that a male employee was omitted from the July 1, 2015 data and roster. Thomas Aff. ¶ 13; Trial Transcript 563:3-13.

If that were not enough, when pressed during cross examination as to additional discrepancies in the employee data and spreadsheets, Mr. Booker could not explain why Joe Morini was listed as a supervisor on the July 1, 2015 spreadsheet for Absolute Software Inc., but did not start working for Absolute until July 20, 2015 and why Ms. Piehler was still listed as an employee on July 1, 2015 when she was fired that day. Trial Transcript at 658:6-662:16. Given the clear unreliability surrounding both the composition of the rosters and its underlying accuracy (which Plaintiff repeatedly raised in her pretrial motions), it was clearly error for the Court to allow such evidence given its likelihood to mislead the jury due to its complete lack of reliability. This is even more true given the fact that had the employee rosters as of July 1, 2015 been accurate (e.g., the removal of Ms. Piehler and Ms. Jeffrey, and the adding of Mr. Carlton and Mr. Morini), the female percentage composition of Absolute's workforce would have been substantially lower for 2015 and 2016 (Exhibits 627 and 693). Thus, it is certainly not harmless error when Defendants likely never would have been able to use the workforce

10

demographic changes in their closing argument to argue that Mr. Haydon's directive did not come to fruition.

Finally, in addition to the relevancy and unduly prejudicial issues above, the Court also improperly allowed Mr. Booker to testify as an undisclosed fact witness at trial. Rule 37(c)(1) provides the remedy of precluding the party from using an undisclosed witness at trial, unless the failure was substantially justified, or harmless. Fed. R. Civ. P. 37(c)(1). Mr. Booker was not identified in Defendants' initial disclosures and therefore Plaintiff never had an opportunity to depose him as he was not known. Thomas Aff. ¶ 14. While Plaintiff did not object to Mr. Booker being called solely as a records custodian under Rule 803(6), Plaintiff warned that if Mr. Booker's trial testimony exceeded that scope, which would include replicating the demographical analysis and employee classifications that was previously done by Mr. Olsen in the affidavit that was submitted with Defendant's motion for summary judgment, he would be an undisclosed fact witness that would be barred under Rule 37(c)(1). But that is precisely what Mr. Booker did at trial, even going so far as to offer pure speculation as to the reasons that Mr. Morini would be listed on the employee spreadsheets on July 1, 2015 despite the fact that Absolute's own records contradicted that start date. Trial Transcript at 662:11-666:17. It was therefore error to allow Mr. Booker's testimony as an undisclosed fact witness under Rule 37, especially when the Court prohibited Plaintiff from allowing Mr. Singular to be presented as a live witness under the same rule.

Therefore, the Court's errors in allowing both the admission of the employee rosters and the accompanying testimony of Mr. Booker warrants a new trial.

### C.   The Court Erred in Not Admitting the Complete and Unredacted Verbatim Comments Survey.

Plaintiff's Rule 59 motion should also be granted because the Court also erred in only admitting very limited portions of the Verbatim Comments employee survey ("Verbatim Comments Survey") that was conducted by Absolute (Plaintiff's original Exhibit 67), as well as any surrounding witness testimony relating to the entirety of the Verbatim Comments Survey. As the Court improperly limited the admission of the Verbatim Comments Survey to only seven unredacted comments despite the entirety of the Verbatim Comments Survey being relevant and not hearsay, the Court's exclusion of the entirety of Exhibit 67 was erroneous.

As the Court correctly held, the Verbatim Comments Survey is admissible because it is it is not being offered for the truth of the matter asserted, but rather to demonstrate Absolute's state of mind. However, the Court limited the admissible comments to those reflecting the poor communication skills of Awtry and Kenny because Ms. Piehler had been faulted for her communication skills. But Absolute's "state of mind" about various employees' performance is not limited to areas comparing identical areas but to all aspects of their employment. Given that, the Court should not have limited the jury's knowledge to identical performance metrics.

Additionally, even if the comments in the Verbatim Comments Survey were viewed entirely as hearsay, the Court wrongfully concluded (or did not consider) that the comments were also admissible under a number of the hearsay exceptions. First, the Verbatim Comments Survey is not hearsay because it is an admission by a party opponent under Federal Rule of Evidence 801(d)(2) because the comments were made by Absolute's employees are part of their job duties in responding to a company initiative. Second, under Federal Rule of Evidence 803(1), the survey was a present sense impression. The survey asked employees about their present views on the company including questions about the culture, what motivated employees to stay with Absolute, what they wanted to see as priorities at the company, the

best things about the company, and what the company needed to focus on improving. *See* Exhibit 67. As the survey by definition called for Absolute's employees to state their present impressions of the company, it is admissible under the exception of Rule 803(1). Third, pursuant to Federal Rule of Evidence 803(3), the survey reflected the defendants' then-existing state of mind because the defendants used it to inform their knowledge of "what the main issues are in the company," "understand[] of the level of engagement within the company," and to rectify the major issues raised in the survey. *See* Federal Rule of Evidence 803(3); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218 (2d Cir. 1999). Fourth, the Verbatim Comments Survey is a business record under Federal Rule of Evidence 803(6). The survey was commissioned by Absolute, done across a large group of employees, employees answered it as part of their employment at Absolute, and the answers were provided to and reviewed by Absolute's executive team with the goal of understanding and improving the company. Fifth, the survey also qualifies for admission under the Residual Exception under Rule 807 as they are highly reliable having been conducted a professional survey company, Defendants admitted that they thought the results were reliable and accurate, and a number of the comments in the Employee Survey make substantially the same comments. *See* Trial Exhibit 67; *see also* Berardo Dep. 49:2-13.

Accordingly, for these reasons, it was error for the Court to admit only the seven redacted comments in Exhibit 67 as opposed to the entirety of the document.

**D.     The Court's Exclusion of the Survey Conducted by Mr. Awtry on Ms. Piehler Was Error.**

At trial, and despite Defendants' never filing a motion *in limine* before the trial, the Court excluded Trial Exhibit 1056, a survey that was conducted by Mr. Awtry of Ms. Piehler ("Awtry Survey") regarding how Ms. Piehler's subordinates viewed how she was performing her job duties. In particular, the Awtry Survey asked questions about how Ms. Piehler kept her subordinates aware of organizational changes at Absolute, whether they understood how their quotas were set, and whether they regularly communicated with Ms. Piehler about their forecast. *See* Trial Exhibit 1056. This information is undoubtedly relevant given the pretextual reasons that Defendants offered at trial that Ms. Piehler was difficult to work with and supposedly had communications issues.

For substantially the same reasons discussed above as to the Anonymous Survey, the Court erred in excluding the Awtry Survey. As an initial matter, while the Court only considered that Plaintiff was offering Trial Exhibit 1056 for the truth of the matter, which was not the case. *See* **Exhibit P** at 284:18-285:16. As the Court pointed out as to why it had allowed the Anonymous Survey discussed above, "the [A]nonymous [S]urvey of the company is relevant to state of mind is because the proffered reason or one of the reasons for terminating Ms. Piehler is that she was a poor communicator." *Id.* at 285:22-286:2. For the same reasons that the Court admitted portions of the Anonymous Survey on non-hearsay grounds, the Court should have done the same here. The Awtry Survey similarly asked numerous questions regarding how Ms. Piehler communicated, including whether subordinates were aware of organizational changes. *See* Trial Exhibit 1056. Given that Absolute was therefore on notice that Ms. Piehler's subordinates did not think she had communications issues (whether or not that was actually true), it is not hearsay as it is only being offered to show Defendants' awareness of such responses.

14

Additionally, the Awtry Survey was admissible under numerous hearsay exceptions. First, the Awtry Survey is not hearsay because it is an admission by a party opponent under Federal Rule of Evidence 801(d)(2). Second, under Federal Rule of Evidence 803(1), the survey was a present sense impression because the survey was commission by Mr. Awtry so that he could see how Ms. Piehler and other regional directors were performing. Third, under Federal Rule of Evidence 803(3), the Awtry Survey reflected the Defendants' then-existing state of mind as to Ms. Piehler's job performance. Fourth, the Anonymous Survey is a business record under Federal Rule of Evidence 803(6) that was ordered by Mr. Awtry in order to evaluate his employees. Fifth, the survey also qualifies for admission under the Residual Exception under Rule 807 as it was conducted internally by Mr. Awtry and (assuming a new trial is granted) he could testify to its veracity.

Therefore, the Court's failure to admit Trial Exhibit 1056 also constitutes grounds for a new trial.

### E.    The Court Erred in Not Admitting Ms. Rathbun's Resignation Letter.

A new trial is also warranted because the Court erred in not admitting the resignation letter of Amy Rathbun (Trial Exhibit 105) and any underlying testimony relating to her resignation letter.

First, the Rathbun resignation letter is not hearsay because it was not being offered for the truth of the matter asserted, but rather to show Absolute's awareness of complaints and discrimination and its failure to investigate such complaints. In her resignation letter, Ms. Rathbun wrote that she felt that she was "managed out of the company" because she was not being paid the same as her male counterparts, not being invited to the strategic leadership meeting in Whistler that her male counterparts were invited to, witnessing discrimination in

15

Absolute's hiring practices, the company's dismal track record with women in leadership and sales, and female employees being terminated or leaving Absolute. *See* Trial Exhibit 105. Mr. Berardo testified that complaints pertaining to: (1) an employee asking to be treated the same as other employees; (2) a female employee asking to be paid fairly; and (3) a female employee stating that she was being treated differently than her male counterparts would all warrant further questions and investigation. **Exhibit O** at 94:21-95:7; 95:9-18; 95:20-97:5; 97:10-19; 97:21-98:5. Mr. Olsen likewise testified that under Absolute's policy, complaints of discrimination should be investigated. **Exhibit Q** at 143:6-10. However, despite that testimony, the claims of discrimination raised in Ms. Rathbun's letter were not investigated and that Absolute did not consider Ms. Rathbun's letter to raise any complaints of discrimination. *Id.* at 142:10-23. Despite that her claims were never investigated, Absolute still paid her approximately $100,000 even though she left the company voluntarily. *Id.* at 141:10-145:13. Thus, the resignation is not being offered for the truth of the matter, but rather to demonstrate Absolute's general awareness of complaints of discrimination and that it did not investigate such complaints.

Second, even if the resignation letter is considered hearsay, it was still admissible under Rule 803(6) as a business record. The document was produced as part of this litigation and was therefore stored as a business record. Furthermore, Mr. Olsen testified that the letter was the basis for Absolute paying Ms. Rathbun $100,000 in severance. **Exhibit Q** at 141:10-145:13.

Accordingly, a new trial is also warranted on the Court's failure to admit the Rathbun resignation letter.

> **F.     The Court Erred in Excluding Emails and Comments Made by Art Robinson.**

The Court also improperly excluded several emails and comments made or sent by Art Robinson that showed gender animus, including comments that "a woman should never be President," referring to "make up sex" with a customer, and commenting that a client was "going to rape us on price." *See* Trial Exhibits 101, 102, 103; **Exhibit R** at 128:18-129:20.

During the August 6, 2021 hearing, the Court excluded the emails on the basis that they were not relevant and were unfairly prejudicial because they occurred after Plaintiff was terminated, because Mr. Robinson was not a decisionmaker in Plaintiff's termination, and because this was not a hostile work environment case. *See* **Exhibit B** at 16:2-18:13. That decision is in error because it ignores that Mr. Robinson's emails and comments are highly relevant to this case. Defendants cannot reasonably dispute that one of the central issues in this case was Absolute's culture towards women. In fact, Defendants themselves introduced numerous exhibits that attempted to show that Absolute had an acceptable culture for women. *See e.g.* Trial Exhibits 429, 459, 462, 471, 505, 1012.

The Court's failure to allow Plaintiff to present Mr. Robinson's comments and emails prevented Plaintiff from being able to counter Defendants' narrative. Art Robinson was one of the highest-ranking employees and longest-tenured employees at Absolute. He eventually took over Mr. Awtry's spot after Mr. Awtry was demoted. **Exhibit T** at 968:8-14. Mr. Robinson during his deposition confirmed that he made such comments, that his treatment of women was not outside the norm at Absolute, and that it was in line with the values and culture of Absolute. **Exhibit U** at 28:12-23; 29:3-9; 36:13-53:22. As Mr. Robinson was therefore one of Ms. Piehler's peer regional directors, a high level employee, and familiar with Absolute's values and culture where he testified that his words and actions were consistent with Absolute's values, the emails and comments made by Mr. Robinson are highly relevant. Furthermore, while this

17

was not a hostile work environment case, the Court allowed Defendants to present evidence of equity and professionalism towards women, but significantly prejudiced Plaintiff by not allowing her to present contrary evidence.

Accordingly, Plaintiff's Rule 59 motion should be granted because the Court improperly excluded relevant evidence that prejudiced Plaintiff's case.

### G. The Court Improperly Allowed Testimony That Amy Rathbun Was The Recipient of a Bullying Complaint.

The Court also allowed evidence relating to a bullying complaint that was made against Ms. Rathbun. *See* Court Exhibit 3 at 313:4- 316:5. That was error because Ms. Rathbun is a non-party witness and such evidence is inadmissible because it is not relevant.

Federal Rule of Evidence 608(b) provides that instances of specific conduct may not be proved by extrinsic evidence for the purpose of attacking or supporting a witness' credibility. Furthermore, specific instances of conduct may not be inquired into unless such instances of conduct go to the veracity or truthfulness of the witness. Fed. R. Evid. 608(b).

Here, the bullying complaint that was made against Ms. Rathbun is both impermissible character evidence and has no relevance to this case. Ms. Rathbun herself was not on trial and her own conduct has nothing to do with Ms. Piehler's termination, nor does it have anything with Absolute's culture of discrimination towards women. Absolute knew that it had no relevance to this action because it did not originally produce the written warning (Exhibit 126) that Ms. Rathbun received as a result of the bullying allegation in discovery. Instead, Absolute provided the written warning as to the bullying complaint for the first time during Ms. Rathbun's deposition on June 6, 2019. Thomas Aff. at ¶ 15. Instead, the only reasonable interpretation for the inclusion of such testimony by Absolute is that it was an attempt to smear Ms. Rathbun's status as a superstar witness based on the negative testimony that Ms.

Rathbun offered against Absolute as to her observations and experiences about how Absolute treated women. But that type of character assassination is exactly what is prohibited by Rule 608(b), and the bullying allegation did not go towards the veracity of Ms. Rathbun's testimony. Furthermore, even if the Court thought that such testimony was relevant, its prejudicial value greatly outweighed any probative value given that it has nothing to do with the issues of discrimination and retaliation as to Ms. Piehler.

Thus, the Court erred in allowing testimony and evidence relating to the bullying against Ms. Rathbun.

### H. The Court's Exclusion of the *Lubahn* Complaint Was in Error.

The Court's exclusion of the complaint that was filed in the *Lubahn* action was also in error because it was relevant to the complaints of discrimination made by Ms. Piehler (and Ms. Rathbun) in this action.

In its pretrial rulings, the Court ruled that Plaintiff could not reference the *Lubahn* complaint because the Court deemed it not relevant. *See* **Exhibit B** at 55:18-24. But the *Lubahn* complaint is just another complaint of discrimination. As the Court is well aware, both actions involve overlapping discriminatory comments made by Mr. Kenny at the April 2015 Westin meeting. Furthermore, as discussed above, Absolute's policies and practices of how it investigated such complaints of discrimination was certainly at issue. Had the Court admitted the *Lubahn* complaint, Plaintiff would have been able to further press on Absolute's supposed position that only "formal" complaints of discrimination would be investigated. **Exhibit R** at 75:23-79:13. As a result, contrary to the Court's ruling, the *Lubahn* complaint of discrimination involving the same comments made by Mr. Kenny is relevant to this issues in this case.

Therefore, the Court's exclusion of the *Lubahn* complaint and any surrounding testimony was error.

### I.   The Court Erred in Imposing a Different Burden on Plaintiff as to the Unpaid Commissions as Opposed to the Burden Placed on Defendants.

The Court also unfairly prejudiced Plaintiff by requiring her to provide evidentiary proof that she was not paid her full commissions, but similarly did not require Defendants to do so. In its January 13, 2023 pretrial ruling, the Court held that if Plaintiff was alleging that she was not paid her full commissions, Plaintiff would have to proffer "actual evidence that she was not paid what she was owed." **Exhibit V** at 15:20-16:2. Prior to trial, and it its motion *in limine* on that very issue, Defendants offered wholly conclusory allegations that Ms. Piehler was paid her full commissions. *See* Dkt. 272 at *11 ("these commissions were initially withheld pending an investigation into why accelerated commissions were being paid on sales to a long-standing existing customer. Ultimately, Plaintiff and others were paid accelerated commissions on many of the DOE sales . . ."). In contrast, the Court set an extremely high bar for Plaintiff, requiring her to provide actual evidence that she was not paid the full amount, which the Court acknowledged would be "a trial within a trial on a complicated calculation"—which is exactly what the Court said it wanted to avoid. *See* **Exhibit V** at 15:10-19. As a result, the Court placed differing burdens on Plaintiff versus the Defendants and permitted Defendants to thus rely on conclusory allegations that she was in fact paid her full commissions. The Court's arbitrary and prejudicial ruling on this issue therefore warrants a new trial.

### J.   The Court Allowing Defendants to Offer New and Different Reasons for Ms. Piehler's Termination at Trial Was Highly Prejudicial and Warrants a New Trial.

Finally, the Court also committed prejudicial error in allowing Defendants to offer differing reasons at trial than they had previously offered during the case as to the reasons for

Ms. Piehler's termination. Prior to trial, Defendants disavowed several reasons for Ms. Piehler's termination including: (1) not meeting her sales goals; (2) not having a balanced book of business; and (3) cybersecurity experience. **Exhibit AS** at 133:8-134:24; **Exhibit AT** at 51:22-52:3;137:5-138:21; **Exhibit O** at 279:10-280:20. Instead, Defendants' took the position (at least prior to trial) that the sole proffered reason for Plaintiff's termination was that Mr. Awtry and Ms. Piehler "did not get along." *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Dkt. 149 at 34.

The Court's allowing Defendants to present new theories as to the reasons for Ms. Piehler's termination was highly prejudicial. Defendants' reliance on these theories was not minor or passing—they relied heavily on each of those three themes during their closing argument. *See* **Exhibit K** at 1279-1311; *see also* Court Exhibit 8. As a result, Plaintiff at trial was forced to spend considerable time attacking these new reasons for Plaintiff's termination, despite the fact that Defendants previously had testified under oath that those three reasons were not the basis of her termination. Undoubtedly, this resulted in confusing and conflating the issues for the jury, who now had to sort through a plethora of supposed reasons for Ms. Piehler's termination. Such evidence should have been barred as both not relevant under Rule 401/402 and unduly prejudicial under Rule 403. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) (evidence should be barred under Rule 403 if the evidence has "an undue tendency to suggest decision on an improper basis.").

Given that the Court should have barred Defendants from presenting reasons for Ms. Piehler's termination that they previously testified under oath were not the basis for her termination, it was highly prejudicial for the jury to hear and consider such evidence and a new trial under Rule 59 is warranted.

III.   **IN THE ALTERNATIVE TO A NEW TRIAL, JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED FRO PLAINTIFF AS THE JURY VERDICT AS TO PLAINTIFF'S GENDER DISCRIMINATION CLAIMS IS UNSUPPORTED BY THE EVIDENCE.**

In the unlikely event that the Court does not grant Plaintiff's Rule 59(a) motion, the Court should alternatively enter judgment as a matter of law on Plaintiff's gender discrimination claims pursuant to Fed. R. Civ. Pro. 50(b) given the overwhelming evidence of gender discrimination that was presented at trial.

Rule 50(b) of the Federal Rules of Civil Procedure allows for a party to move for a judgment as a matter of law within twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b).  In ruling on a motion for judgment as a matter of law, the Court must determine, "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970). Judgment as a matter of law should be granted when, in viewing the evidence in the light most favorable to the non-moving party, "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Mattivi v. S. Afr. Marine Corp*., 618 F. 2d 163, 167-68 (2d Cir. 1980).

Because the evidence supporting Plaintiff's gender discrimination claim was so overwhelming and because even viewing the evidence in the light most favorable to the defendants, no reasonable or fair-minded juror could have reached a verdict favoring the Defendants. To the extent that the Court does not grant Plaintiff's Rule 59 motion for the many reasons stated above, the Court should alternatively grant Plaintiff's Rule 50(b) motion

given the weight of the evidence.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for a New Trial pursuant to Rule 59(a) as to her gender discrimination claims. Alternatively, the Court should grant Plaintiff's Rule 50(b) motion and enter judgment as a matter of law on Plaintiff's gender discrimination claims.

Dated:  April 14, 2023

**THOMAS & SOLOMON LLP**

By:    s/ J. Nelson Thomas
J. Nelson Thomas, Esq.
Jonathan W. Ferris, Esq.
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com