UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

MARY VAN BRUNT-PIEHLER,

                    Plaintiff,                          **DECISION AND ORDER**

          v.                                            6:16-CV-06313 EAW

ABSOLUTE SOFTWARE, INC.,
ABSOLUTE SOFTWARE CORPORATION,
GEOFF HAYDON, THOMAS KENNY,
and TODD AWTRY,

                    Defendants.

―――――――――――――――――――――

        Plaintiff Mary Van Brunt-Piehler ("Plaintiff") sued defendants Absolute Software,

Inc. and Absolute Software Corporation (collectively "Absolute"), along with Geoff

Haydon, Thomas Kenny, and Todd Awtry, for discrimination and retaliation arising from

her employment with Absolute.  (Dkt. 1; Dkt. 34).  On March 6, 2023, the case proceeded

to a jury trial on these causes of action: gender discrimination in violation of Title VII of

the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.; gender

discrimination in violation of the New York State Human Rights Law ("NYSHRL"),

New York Executive Law § 290, *et seq*.; violation of the Equal Pay Act ("EPA"), 29

U.S.C. § 206, *et seq*.; and retaliation in violation of the NYSHRL.  (*See* Dkt. 350; Dkt.

369).  On March 16, 2023, the jury found in Defendants' favor on all causes of action,

except with respect to Plaintiff's NYSHRL retaliation claim, for which the jury awarded

Plaintiff $75,000 in compensatory damages.  (Dkt. 369).

Pending before the Court are the parties' post-trial motions, including Defendants' motion for judgment as a matter of law (Dkt. 381) and Plaintiff's motion for a new trial (Dkt. 384).  For the reasons explained below, Defendants' motion is granted, Plaintiff's motion is denied, and the jury's verdict on the NYSHRL retaliation claim is vacated. Alternatively, even if the retaliation verdict were not vacated in its entirety, the Court would vacate it as much as it was based on the termination of Plaintiff's employment as the adverse action, and accordingly proceeding to the economic damages phase of the trial would be unnecessary and the case would be closed.

## BACKGROUND

Familiarity with the history of this case—including particularly the Court's Decision and Order entered on November 30, 2020 (Dkt. 179), and the evidence adduced at trial—is assumed for purposes of this Decision and Order.  The Court has summarized the salient procedural background below.

Plaintiff commenced the instant action on May 18, 2016. (Dkt. 1).  Following discovery and motion practice, the claims that remained for purposes of trial were gender discrimination in violation of Title VII; gender discrimination in violation of the NYSHRL; violation of the EPA; and retaliation in violation of the NYSHRL.  (Dkt. 369). Prior to trial, the parties stipulated that Plaintiff's claims for economic damages relating to any back pay and front pay were to be bifurcated and decided by the Court post-trial, if necessary.  (Dkt. 237).

Trial commenced on March 6, 2023, and continued for about eight days.  (Dkt. 350; Dkt. 357; Dkt. 358; Dkt. 361; Dkt. 362; Dkt. 364; Dkt. 365; Dkt. 367).  Both at the

close of Plaintiff's case and before the claims proceeded to the jury, Defendants moved for judgment as a matter of law, including with respect to Plaintiff's retaliation claim. (Dkt. 361; Dkt. 365). The Court expressed some misgivings about the proof at trial with respect to the retaliation claim, but reserved decision on the motion. (*See, e.g.*, Dkt. 363 at 57-63).

The jury found in Plaintiff's favor only on the retaliation claim. (Dkt. 369). The jury also found that Plaintiff failed to establish her claims for individual liability against defendants Haydon, Kenny, and Awtry. (*Id.*).

Following entry of the judgment, on April 14, 2023, Defendants filed their motion for judgment as a matter of law (Dkt. 381), and Plaintiff filed her motion for a new trial (Dkt. 384). Responses to these motions were filed on May 12, 2023 (Dkt. 394; Dkt. 395; Dkt. 396; Dkt. 397), and replies were filed on May 26, 2023 (Dkt. 400; Dkt. 401). The Court held oral argument on February 16, 2024. (Dkt. 414; Dkt. 416). The Court reserved decision pending the receipt of supplemental submissions on two issues: (1) whether the Court may grant a new trial on Plaintiff's retaliation claim even though Defendants did not seek such relief; and (2) although the jury's verdict on retaliation did not specify the alleged adverse action(s) on which it was based, may the Court evaluate, on the existing trial record, whether there is a causal link between the alleged protected activity and the termination of Plaintiff's employment. (Dkt. 416). The Court received the parties' supplemental briefing on March 1, 2024. (Dkt. 418; Dkt. 419).

## **DISCUSSION**

Reluctant to interfere with a verdict reached by a jury, the Court is nonetheless obligated to set aside a verdict where there is a complete absence of evidence. This is such a case. No rational jury could conclude that Plaintiff engaged in protected activity—in other words, that Plaintiff voiced complaints of gender discrimination to her employer. There is no question that Plaintiff voiced complaints that she was being treated unfairly—but no reasonable person would have construed those complaints as based on gender. Without any evidence of protected activity, the verdict for Plaintiff on her retaliation claim cannot stand. Alternatively, even if that conclusion were incorrect, there is no possible way that a reasonable jury could have concluded that the purported protected activity was linked in any way—let alone the but-for cause of—the termination of Plaintiff's employment. As a result, for the reasons explained below, the Court grants Defendants' motion for judgment as a matter of law. (Dkt. 381).

Before discussing Defendants' motion, the Court first turns to Plaintiff's motion for a new trial. Plaintiff's motion raises arguments that at times border on frivolous, with Plaintiff largely seeking to relitigate certain evidentiary rulings that were resolved prior to trial. For the reasons discussed below, Plaintiff's motion for a new trial is denied. (Dkt. 384).

## I. Plaintiff's Motion for a New Trial[1]

Plaintiff seeks a new trial on her gender discrimination claims pursuant to Rule 59(a).[2]  Rule 59(a) of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ."  *See* Fed. R. Civ. P. 59(a)(1)(A).

"As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quotation and alterations omitted); *see also Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) ("[A] decision is against the weight of the evidence, for purposes of a Rule 59 motion, if and only if the verdict is seriously erroneous or a miscarriage of justice[.]").  "Rule 59(a) . . . has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) may be granted

---

[1]     In connection with their supplemental briefing, the parties also addressed whether it would be appropriate for the Court to grant a new trial in favor of a party that did not seek that relief (*i.e.*, a new trial in favor of Defendants on Plaintiff's retaliation claim). (Dkt. 418; Dkt. 419).  Plaintiff concluded that the Court could grant a new trial in favor of Defendants even though Defendants did not move for such relief, but Defendants argued that it would be improper.  Both parties have cited authority in support of their respective positions, but neither party has cited Second Circuit authority definitively ruling on the issue, nor has the Court located any.  In any event, the Court need not resolve the issue because it has concluded that Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim.  Therefore holding a new trial on the retaliation claim is unnecessary.

[2]     Plaintiff moves for a new trial "as to her gender discrimination claims." (Dkt. 386 at 6).  However, Plaintiff does not reference the specific claims or Defendants she seeks to retry.

even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence [her]self, and need not view it in the light most favorable to the verdict winner." *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quotations and citation omitted). "The legal standard for granting a new trial under Rule 59(a) calls for deference to jury determinations while affording discretion to the trial judge to order a new trial in the event of manifest injustice." *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-CV-76, 2018 WL 11419657, at *1 (D. Vt. May 7, 2018). Whether to grant a new trial under Rule 59(a) is entrusted to the Court's discretion. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 261 (2d Cir. 2002) ("This court reviews the grant of a new trial on the ground that the verdict was against the weight of the evidence for abuse of discretion.").

As relevant here, "a motion for a new trial based on the erroneous admission of evidence is warranted only where the court made substantial errors in admitting the evidence. . . . Such relief is not to be granted unless the court finds that the introduction of such evidence 'was a clear abuse of discretion *and* was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Ojeda v. Metro. Trans. Auth.*, 477 F. Supp. 3d 65, 77 (S.D.N.Y. 2020) (emphasis in original) (quoting *Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005)), *aff'd*, 41 F.4th 56 (2d Cir. 2022). Further, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

In support of her motion for a new trial, Plaintiff advances ten arguments: (1) the Court's pre-trial ruling precluding live testimony from Lyle Singular was erroneous (Dkt. 386 at 7-14); (2) the Court erred when it admitted demographic data and charts offered by Defendants, and when it permitted defense witness Corey Booker to testify to this evidence at trial (*id*. at 14-16); (3) the Court erred in not admitting the complete and unredacted anonymous survey evidence (*id*. at 16-18); (4) the Court erred by excluding the survey conducted by Awtry as to Plaintiff (*id*. at 18-20); (5) the Court erred by not admitting Amy Rathbun's resignation letter (*id*. at 20-21); (6) the Court erred in excluding emails and comments by Art Robinson (*id*. at 21-23); (7) the Court improperly allowed testimony that Rathbun was the recipient of a bullying complaint (*id*. at 23-24); (8) the Court erred when it excluded the complaint from another matter, *Lubahn v. Absolute Software* (*id*. at 24-25); (9) the Court erred in imposing a different burden on Plaintiff as to unpaid commissions, as opposed to the burden placed on Defendants (*id*. at 25); and (10) the Court's permitting Defendants to offer new and different reasons for Plaintiff's termination at trial was highly prejudicial and warrants a new trial (*id*. at 25-26).  As discussed below, none of these arguments merit the granting of a new trial, but even viewed in their totality, the points pressed by Plaintiff do not come close to meeting her burden.

## A.    Singular's Live Testimony

Plaintiff's first argument in support of her motion for a new trial is a re-hashing of previous arguments she made in support of her motion to offer Singular—who was never identified as a witness in Plaintiff's Rule 26 disclosures—as a live trial witness (*see* Dkt.

- 7 -

322-1; Dkt. 386 at 7-14), which the Court denied before trial (*see* Dkt. 337 (March 1, 2023 Bench Statement)).  Plaintiff's argument is therefore improper on its face, since Rule 59 is not a vehicle for re-litigating old issues.

Singular's deposition testimony was taken in connection with the aforementioned *Lubahn* matter and focused on his knowledge of age discrimination allegedly occurring at Absolute.  Plaintiff peculiarly spends a significant portion of her brief focused on this argument even though she agreed it was a moot issue when she abandoned her age discrimination claims prior to trial.  (*See* Dkt. 389 at 3-4 (discussing Plaintiff's withdrawal of her age discrimination claims, raising Singular's deposition testimony, and Plaintiff agreeing that Singular's testimony would not be relevant)).  Given that Plaintiff voluntarily discontinued her age discrimination claims before trial, it strains the bounds of reasonable advocacy to suggest that Singular's live trial testimony would have any bearing at a new trial.

While conceding that the Court applied the correct legal standard under *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) (*see* Dkt. 386 at 8), Plaintiff argues that the Court failed to explain why it excluded Singular's testimony at trial "despite the . . . earlier finding that Mr. Singular had relevant testimony and that portions of his deposition testimony would be permitted at trial." (*Id*. at 7; *see also id*. at 8).  By way of background, Plaintiff did not initially seek to offer Singular as a live witness at trial.  Rather, Plaintiff consistently sought to offer only Singular's deposition testimony.  (*See, e.g.*, Dkt. 243 at 8-9; Dkt. 232 at 5).  It was only after issues emerged with respect to the timing of Singular's testimony did Plaintiff seek to call him as a live witness, despite that

he had not been identified in any of Plaintiff's Rule 26 disclosures.  This occurred in late January 2023—after the trial had already been postponed two times, and about one month before the rescheduled trial was set to begin.

Contrary to Plaintiff's suggestion, the Court did explain why it declined to permit Singular to testify as a live witness at trial—because allowing limited, truncated portions of Singular's deposition transcript at trial against Absolute only[3], was different than permitting Singular to testify live at trial, where Plaintiff could elicit a host of testimony far beyond what was included in the deposition transcript.  (*See* Dkt. 337 at 4).  In other words, the Court was inclined to permit Plaintiff to offer the deposition testimony because there would be no disputes over the testimony, and the parties would be on equal footing.

As to the *Patterson* factors, Plaintiff has identified no error by the Court requiring a new trial.[4]  Plaintiff still offers no valid explanation as to why she failed to include Singular on her Rule 26 disclosures, or her failure to supplement the same.  Rather, Plaintiff tries to shift the blame to Defendants, contending that they failed to disclose the

---

[3]    The Court ruled that, because the individual defendants were not parties to the *Lubahn* litigation, Singular's deposition testimony could not be admitted against them. Rather, the testimony could be admitted with respect to the corporate defendants only. (*See* Dkt. 306 at 25-26).

[4]    As  the  Court  explained  in  the  Bench  Statement,  in  assessing  whether  to  exclude witness testimony under Rule 37, the *Patterson* factors require the Court to consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility  of  a  continuance."    *Patterson*,  440  F.3d  at  117  (alterations  and  citation omitted).

existence of Singular and the *Lubahn* matter "until Plaintiff pressed the issue." (Dkt. 386 at 8-9). But as the Court previously found, Plaintiff *admitted* during a pretrial conference that she was responsible for failing to designate Singular as a witness, referring to her failure to do so as an "oversight." (*See* Dkt. 253 at 50 (responding to the Court's inquiry about why initial disclosures were not amended to include Mr. Singular's identity, and stating, "I guess, you know, there is always the could have, should of")). The fact of the matter is, Plaintiff had ample time after learning of Singular's testimony to supplement her Rule 26 disclosures to name him as a witness, but she failed to do so.

In addition, Plaintiff has failed to show any error in the Court's determination as to the importance of Singular's testimony. In its Bench Statement resolving this issue, the Court concluded that Singular's testimony about Olsen's statements about the age of Absolute's workforce was relevant to Plaintiff's age-related claims, but given that Singular did not work in Plaintiff's department and had no evidence directly relating to Plaintiff, the Court could hardly characterize the testimony as "important." (Dkt. 337 at 6). Other than to argue that a witness's testimony does not become more or less important based on whether the party chooses to present his testimony live or by deposition transcript, Plaintiff offers no substantive argument as to why Singular's testimony is otherwise important—a factor underscored by the fact that Plaintiff voluntarily discontinued her age discrimination claims before trial.

Plaintiff has also demonstrated no error in the Court's conclusion on the last two factors. As to prejudice, Plaintiff has demonstrated no error in the Court's determination that Defendants would be prejudiced by Singular's live testimony. Offering Singular as

a live witness would create prejudice because defense counsel conducted no discovery on him, nor did they have a chance to question Olsen as to Singular's statements—but offering only his deposition testimony gave both sides notice of the content of his testimony.

Finally, as the Court explained in the Bench Statement, Plaintiff filed her complaint in May 2016. The trial was originally set to commence in August 2021, and was previously adjourned two times. At the time Plaintiff sought to introduce Singular's live testimony, the trial was impending, and the Court was not inclined to continue the matter for a third time. *See Yin v. Alvarado*, No 1:11-CV-00780 EAW, 2016 WL 5115357, at *3 (W.D.N.Y. Sept. 20, 2016) ("At this late stage in the litigation—less than two weeks before trial—granting a continuance would prejudice Defendant because it would waste the resources, time, and effort he spent in preparing for the instant trial."). Plaintiff offers no meaningful argument as to why the Court's conclusion in this respect was error. A continuance so that Plaintiff could depose Singular and Defendants could conduct further discovery would have been impractical. Accordingly, the Court denies Plaintiff's motion for a new trial on this basis.

### B.    Admission of Demographic Data and Charts

Plaintiff next argues that she is entitled to a new trial because the Court should not have allowed the jury to consider the overall demographics of Absolute's workforce, since the demographics were not "tied to the relevant statistical cohort" of "customer facing sales reps," referencing employee rosters and spreadsheets admitted into evidence at Exhibits 628 through 635. (Dkt. 386 at 14-16). Plaintiff contends that the employee

rosters were "not based on the proper cohort of employees that were subject to Mr. Haydon's directive to hire male jocks that would get in each others' faces and talk trash." (*Id*. at 14).  Plaintiff also challenges the accuracy of the underlying spreadsheet data, including because during the trial witness Cory Booker could not explain why employee Joe Morini and Plaintiff were listed on a particular July 2015 spreadsheet.  (*Id*. at 15).

Plaintiff's objection about the tie to the "relevant statistical cohort" lacks merit because that objection goes to the weight of the evidence, rather than to its admissibility. *See, e.g.*, *GeigTech E. Bay LLC v. Lutron Electronics Co.*, No. 18 Civ. 05290 (CM), 2023 WL 6614486, at *41 (S.D.N.Y. Sept. 20, 2023) ("Courts in this circuit have consistently allowed the testimony of experts relying on internal company data, on the ground that any issues with the underlying data goes only to the weight that should be afforded their testimony but not its reliability.").  Indeed, Plaintiff had the opportunity to argue to the jury—and in fact did argue to the jury—the reasons why the demographic data should be given little weight.  (*See* Dkt. 377 at 92-93 (Plaintiff's closing argument that "the problem is that demographic information includes all employees in the sales function, including administrative assistants and all sorts of people who are not doing outside—or sales work. . . .  So the statistics they put up there don't show what they were talking about.")).

In connection with this argument, Plaintiff contends that the Court improperly allowed Booker to testify as an undisclosed fact witness.  At trial, Plaintiff did not object to Booker testifying as a records custodian under Fed. R. Evid. 803(6), but she now argues that Booker's testimony on the employee demographic data exceeded the scope of

his knowledge.   (*See* Dkt. 386 at 16 (arguing that Booker's testimony was "pure speculation as to the reasons that Mr. Morini would be listed on the employee spreadsheets on July 1, 2015 despite the fact that Absolute's own records contradicted that start date.")).

Contrary to what Plaintiff's argument suggests, Defendants properly limited their direct questioning of Booker to the introduction of the rosters and charts.  It was *Plaintiff* who introduced the employee spreadsheets and asked Booker questions on cross-examination regarding the content of the spreadsheets, including why Morini was listed as a supervisor.[5]  (*See* Dkt. 363 at 95-96, 117-18).  Given that Plaintiff herself offered this evidence at trial, she has waived any objection to its admission into evidence.

Finally, even if Plaintiff had not waived any such objection, she has failed to explain why the admission of company demographics would require a new trial.  *See, e.g, Ojeda*, 477 F. Supp. 3d at 77; *see also McCarter & Eng., LLP v. Jarrow Formulas*, Inc., No. 3:19-cv-01124 (MPS), ___ F. Supp. 3d ____, 2024 WL 489328, at *18 (D. Conn. Feb 8, 2024) ("when a party seeks a new trial because the court admitted evidence that the party never objected to, a new trial is warranted . . . only if its admission is plain error, meaning that the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings" (citation omitted)).  For those reasons, Plaintiff's motion for a new trial on this basis is denied.

---

[5]     The employee roster correctly reflected that Morini was not an employee at Absolute on July 1, 2015.  (*See* Exhibit 630; *see also* Dkt. 363 at 19).

### C.       Survey Evidence

### 1.       Anonymous Employee Survey

Plaintiff's next argument involves the admission of Exhibit 67, an anonymous employee comments survey completed by Absolute employees.  Plaintiff contends that the Court erred by not admitting the complete and unredacted survey—rather, the Court limited the admission of the survey to "only seven unredacted comments"—and she is entitled to a new trial because of this error.  (Dkt. 386 at 16-18).  Plaintiff argues that the complete employee survey fit into several exceptions to the rule against hearsay and therefore should have been admitted.  (*Id*. at 17-18).

The Court first notes that Plaintiff *herself* sought to admit only portions of the employee survey.  (*See* Dkt. 240 at 46 (at July 26, 2021 conference, Plaintiff's counsel stating that he had "no problem, I have no issue with redacting it to, you know, the comments that are relevant to the case, to the pretext and to the discrimination. . . .  I'm glad to take the other stuff out.")).  Having obtained an unfavorable verdict on many of her discrimination claims, Plaintiff now changes course and asserts that the entire employee survey should have been admitted at trial.  Further, in advancing this argument, Plaintiff has failed to identify which excluded portions of the survey she believes entitle her to a new trial.[6]  Her failure to do so is no surprise because many comments made in

---

[6]       In her reply papers, Plaintiff states that she seeks to admit the remaining 81 employee survey comments that she submitted to the Court following the July 26, 2021 conference.  (*See* Dkt. 401 at 10).  Plaintiff does not discuss these comments with any level of specificity, and therefore she has fallen far short of demonstrating her entitlement to a new trial, *i.e.*, making any showing as to why the exclusion of these particular comments amounted to a miscarriage of justice.

connection with the survey—while not reflecting favorably on management at Absolute—are not relevant to the issue of discrimination and therefore offer minimal support for Plaintiff's claims, as discussed below.

In addition, the caselaw addressing anonymous surveys largely conclude that such documents are hearsay, a fact Plaintiff appears to ignore.  "Courts have often excluded anonymous or voluntary surveys as irrelevant and unreliable." *Schreiber v. Fed. Express Corp.*, No. 09-CV-128-JHP-PJC, 2010 WL 1078463, at *3 (N.D. Okla. Mar. 18, 2010); *see also Lenius v. Deere & Co.*, No. C12-2063, C12-2072, 2015 WL 3505747, at *12 (N.D. Iowa Feb. 13, 2015) (addressing 2003 and 2005 surveys completed by Deere employees seeking feedback on the organization, and concluding that "[b]ecause the survey consists of anonymous responses, it is inadmissible hearsay"); *Schreiber*, 2010 WL 1078463, at *3 (anonymous surveys submitted to employees regarding the performance of supervisors and managers "are irrelevant and unreliable as there is no way to identify who submitted the information and allow the Defendant a chance to cross examine those persons regarding their opinions."); *Olle v. Columbia Univ.*, No. 02 Civ. 8552(RWS), 2004 WL 2580684, at *3 (S.D.N.Y. Nov. 15, 2004) (anonymous responses to survey were "inadmissible and irrelevant").

As to the various hearsay exceptions listed by Plaintiff, none of them apply here.[7] Plaintiff contends that the anonymous survey is an admission by a party opponent under

---

[7]     In support of her argument that a hearsay exception applies and the entire survey is admissible, Plaintiff cites *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218 (2d Cir. 1999). (*See* Dkt. 386 at 18).  In that case, the Second Circuit clarified the circumstances under which surveys may be admitted into evidence over a hearsay objection.  In *Schering*, the

Rule 801(d)(2).   (Dkt. 386 at 17).   Plaintiff further argues that the anonymous survey could be admitted under Rule 803(1) as a present sense impression, under Rule 803(3) as reflecting Defendants' then-existing state of mind, and as a business record under Rule 803(6).   (*Id*. at 18).   As to Plaintiff's argument that the anonymous survey responses qualify as admissions of a party opponent under Rule 801(d)(2), the survey company—not Absolute employees—wrote the statements in the survey responses and paraphrased the employee comments.   Plaintiff has not even tried to establish an agency relationship between Absolute and the survey company.   Accordingly, the anonymous survey responses are not admissions by Absolute.   *See also United States v. Holmes*, No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *57 (N.D. Cal. May 22, 2021) ("The Government does not cite, and this Court is unaware of, any case supporting the admission of the statements of hundreds of employees to a corporate CEO under Rule 801(d)(2)(D).").

As to Plaintiff's assertion that the anonymous employee surveys are present sense impressions under Rule 803(1), that Rule requires a showing of "a statement describing or explaining an event or condition, made while or immediately after the declarant

---

plaintiff offered surveys to support that defendants' representatives were engaging in widespread false promotional activity in violation of the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.* (1994).   189 F.3d at 221.   The cases citing *Schering* are mainly comprised of intellectual property or advertising cases, with the majority involving trademarks, where surveys showing confusion between trademarks are often admissible. *See, e.g., Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 221 F. Supp. 2d 457, 459 (S.D.N.Y. 2002) ("Survey evidence is often offered by plaintiffs in trademark cases to show likelihood of confusion."); *see also Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1122 (S.D.N.Y. 1993) ("Indeed, in trademark and Lanham Act cases, properly conducted surveys are a valuable tool in gauging consumer perception and are accordingly given great weight."), *aff'd*, 32 F.3d 690 (2d Cir. 1994).   The Court does not find that the reasoning employed in these intellectual property cases applies in this instance.

perceived it." *See* Fed. R. Evid. 803(1). Plaintiff has made no showing that the statements in the surveys were made "while or immediately after the [anonymous] declarant perceived it," or whether (more likely) the declarants recounted memories of past events they had previously perceived. Similarly, as to Rule 803(3), which governs the requirements for a then-existing state of mind, that Rule requires the offering party to demonstrate "the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Civ. P. 803(3). Plaintiff states that the "survey reflected the defendants' then-existing state of mind because the defendants used it to inform their knowledge of 'what the main issues are in the company,' 'understand[] of the level of engagement within the company,' and to rectify the major issues raised in the survey." (Dkt. 386 at 18). However, Plaintiff has failed to establish that the anonymous survey responses reflect an existing motive, intent, or plan, versus facts recalled or believed, which are excluded from the exception. *See* Fed. R. Evid. 803(3) (providing that the rule does not apply to "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will"). Indeed, surveys are often admitted in cases involving trademark infringement because they are asking the individual completing the survey to indicate their real-time impressions of various trademarks—but Plaintiff has made no such showing with respect to the surveys here. Likewise, Plaintiff never tried to show that the anonymous employee surveys qualified as business records under Rule 803(6), including that they were kept in the regular course of business and that making the record was a regular practice of that activity.[8]

---

[8]      Plaintiff also contends that the survey falls into the residual hearsay exception in

Finally, the Court also based its pre-trial decision about many of the anonymous survey comments on Rule 403.  (*See, e.g.*, Dkt. 243 at 18 ("I've gone through what the Plaintiff is proposing to introduce and, with one exception . . . nothing relates directly to discrimination.   There is one comment in here that specifically addresses a lack of diversity throughout the company, and I'm just not finding this particularly probative, especially in view of 403 concerns," including the anonymous nature of the survey and the paraphrased comments); Dkt. 321 at 17 ("I'm not going to rule in advance that the surveys are permissible.   As you'll recall, I previously ruled on August 4, 2021 with respect to the Defendant's motion in limine filed at docket 189 that preliminarily I did not find the survey admissible because it was not probative of discriminatory acts against the Defendant, especially when balanced against Rule 403 concerns.   Because of that, I did not resolve the hearsay objections.")).   Notably, Plaintiff has failed to specifically address the applicability of Rule 403 in her motion papers, focusing instead of the various hearsay arguments addressed above.   For those reasons, the Court did not err by excluding the entirety of the anonymous surveys at trial and the evidentiary rulings in that regard do not warrant a new trial.

---

Rule 807.  (*See* Dkt. 386 at 18).  To admit hearsay evidence under the residual hearsay exception, a court must find that (1) the statement is supported by sufficient guarantees of trustworthiness, after considering the totality of the circumstances under which it was made and evidence corroborating the statement, and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.  Fed. R. Evid. 807(a).  Plaintiff argues that Defendants admitted they thought the survey results were reliable and accurate, and that many of the responses were consistent; however, she makes no further showing as to these two requirements.

## 2.    Awtry's Survey of Plaintiff

Plaintiff argues that the Court erred by excluding from evidence the survey conducted by Awtry on Plaintiff (Exhibit 1056), which concerned how Plaintiff's subordinates viewed her performance of her job duties.  (Dkt. 386 at 18-20).  Plaintiff argues that the Court erred in excluding this survey for "substantially the same reasons discussed above as to the Anonymous Survey."  (*Id.* at 19).

Plaintiff admitted at trial that she was seeking to offer the Awtry survey evidence for the truth of the matter asserted and therefore that it was hearsay.  (*See* Dkt. 360 at 154 (Plaintiff's counsel arguing that "if [Awtry] knew . . . she was a good or she was doing well with her employees and had a good relationship with her employees, that goes with the overall reason for her employment, and overall reason for her termination.")).  Even if the survey were not hearsay, Plaintiff has failed to demonstrate how the exclusion of this evidence entitles her to a new trial.  The jury heard other evidence about Plaintiff's relationship with her subordinates, including testimony from Awtry, that Plaintiff had a positive relationship with her subordinates—essentially confirming what was purportedly demonstrated by the survey.  (*See* Dkt. 375 at 163 (Awtry's testimony that Plaintiff had "very good" relationships with her subordinates, and that her team liked her)).  Plaintiff has thus failed to show that admission of the Awtry survey would have changed the outcome of the trial.  For those reasons, Plaintiff is not entitled to a new trial based on the Court's ruling with respect to the survey evidence in this case.

D.      **Rathbun Resignation Letter**

Plaintiff next argues that she is entitled to a new trial because the Court erred by not admitting Rathbun's resignation letter (Exhibit 105) at trial, as well as any underlying testimony relating to the letter.  (Dkt. 386 at 20-21).  Plaintiff contends that the letter, in which Rathbun states that she was "managed out of the company" because she was not paid as well as her male counterparts and was not invited to strategic meetings, was not hearsay because it was offered to show Absolute's awareness of complaints and its failure to investigate those complaints.  (*Id*. at 20).  Plaintiff also argues that the letter was admissible under Rule 803(6) because it is a business record.  (*Id*. at 21).

The Court precluded the admission of Exhibit 105 because it was not relevant to Plaintiff's claims.  Rathbun's resignation occurred more than one year after Plaintiff's termination, when Awtry was no longer Rathbun's supervisor, and Kenny was no longer at the company.  (*See* Dkt. 253 at 28, 31 (transcript from August 6, 2021 conference, where Court stated, "Let me be clear, I don't think it's relevant to show that . . . over a year after Ms. Piehler was terminated that there was another complaint of discrimination that the company did not follow up on.")).  In other words, Rathbun's reasons for leaving Absolute occurred under completely different circumstances than those that existed at the time of Plaintiff's termination.   Plaintiff does not even acknowledge, let alone meaningfully address this reasoning in her motion papers—rather, she simply rehashes the arguments she made at the August 6, 2021 conference.[9]

---

[9]      Plaintiff also suggests that Olsen's deposition testimony that complaints of discrimination should be investigated, and that Rathbun's claims were not investigated,

As to Plaintiff's claim that the Rathbun resignation letter should have been admitted as a business record under Rule 803(6), Plaintiff contends that "the document was produced as part of this litigation and was therefore stored as a business record," and that Olsen testified that the letter "was the basis for Absolute paying Ms. Rathbun $100,000 in severance." (Dkt. 386 at 21).

Under Rule 803(6), a record may be excepted from the rule against hearsay if it meets the following criteria:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

See Fed. R. Evid. 803(6).  Prior to trial the Court granted Plaintiff the opportunity to submit a letter supporting the admission of Rathbun's resignation letter under the business record exception (see Dkt. 253 at 30-32), but Plaintiff ultimately made no such submission.  Plaintiff has again failed to do so here in connection with the instant motion—in fact, she makes no argument as to why Rathbun's resignation letter fits these criteria, nor has she cited any case law supporting that the letter would qualify as a

---

establishes the relevance of the Rathbun letter.  (See Dkt. 386 at 21).  Plaintiff grossly mischaracterizes Olsen's testimony.  In fact, Olsen was not shown or questioned regarding the Rathbun resignation letter, nor did he testify that the claims in the letter were not investigated.  Accordingly, the Olsen deposition testimony does not support Plaintiff's relevance argument.

business record.  By definition, a "business record" is a record of regularly conducted activity, and a resignation letter is presumably submitted on only one occasion—when a person resigns.  Absent any further showing from Plaintiff on this issue, the Court concludes that it did not err in precluding the admission of the Rathbun resignation letter.

Finally, Plaintiff cannot show that she was prejudiced by the Court's preclusion of the Rathbun resignation letter, because Rathbun testified at length regarding the discrimination she believed she experienced at Absolute, including by referencing her resignation letter.[10]  (*See, e.g.*, Dkt. 394-18 at 5 (noting that "Absolute was fairly discriminatory"); *id*. at 8 (discussing that Awtry and Kenny were not inclusive of women); *id*. at (discussing that men made more money than she did); *id*. at 10 (discussing that Rathbun submitted a resignation letter)).  Given that the jury ultimately heard this information, Plaintiff cannot demonstrate prejudice, and therefore she is not entitled to a new trial on this basis.

### E.    Art Robinson Comments

Plaintiff further argues that she is entitled to a new trial because the Court excluded emails and comments made by Absolute employee Art Robinson.  (Dkt. 386 at 21-23).  Plaintiff argues that the comments made by Robinson—including his comment that a "woman should never be president," referring to "make up sex" with a customer, and commenting that a client was "going to rape us on price," were relevant to Plaintiff's claims and should have been admitted at trial.  (*Id*. at 22).  Plaintiff contends that she was

---

[10]    Rathbun's testimony was offered by way of deposition designations.  She was not called as a live witness at trial.

not able to "counter Defendants' narrative" due to the exclusion of these comments. (*Id.*).   During the trial both Plaintiff and Defendants ultimately agreed not to call Robinson as a witness, and in fact *Plaintiff* asked that no party read his deposition testimony.   (*See* Dkt. 394-19 at 2 (March 12, 2023 email from Plaintiff's counsel to defense counsel, stating that "We have spoken to our client and she is fine with defendants not calling Mr. Robinson, *with the understanding that neither side will use his deposition testimony*.") (emphasis added)).

"Courts must weigh the following factors when determining whether a comment evinces an intent to discriminate: (1) whether a decisionmaker made the remark; (2) whether the remark was made close in time to the employment decision(s) at issue; (3) the content of the remark; and (4) whether the remark was made in connection with the decisionmaking process."   *Quinby v. WestLB AG*, No. 04 Civ. 7406(WHP), 2007 WL 3047111, at *1 (S.D.N.Y. Oct. 18, 2007) (citing *Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 254, 363 (S.D.N.Y. 2007)).   At the August 6, 2021 conference, the Court ruled that the Robinson comments should be excluded at trial because Robinson was not a decisionmaker with respect to Plaintiff's employment—a fact Plaintiff admitted at the conference.   (Dkt. 253 at 14-15); *see also Quinby*, 2007 WL 3047111, at *1 ("Generally speaking, comments by nondecisionmakers cannot be used to establish discriminatory animus.   Moreover, comments by decisionmakers that do not bear on the decisionmaking process itself, are not pro[b]ative of discriminatory animus.")).   In addition, the Robinson comments were not made in connection with the decisionmaking process to terminate Plaintiff.   The Court further precluded the "make up sex" and "rape" comments given

they were made in 2016, well after Plaintiff was terminated, and even if relevant they would be unfairly prejudicial under Rule 403.  (Dkt. 253 at 16).

In connection with her motion, Plaintiff simply rehashes the arguments she raised at the August 6, 2021 conference, and she has again failed to establish that Robinson was a decisionmaker with respect to the termination of her employment—rather, she states only that Robinson was one of the longest-tenured employees at Absolute, was familiar with Absolute's culture, and was promoted after Plaintiff was terminated.  (Dkt. 386 at 22-23).  Under the framework in *Quinby*, this showing is not enough to demonstrate that Robinson was a decisionmaker, including because Robinson did not make decisions with respect to Plaintiff's employment, his remarks were not made close in time to the employment decisions at issue, and the remarks were not made in connection with the decisionmaking process.[11]  Plaintiff is thus not entitled to a new trial on the basis that the Court excluded the Art Robinson comments.

### F.    Bullying Complaint Against Rathbun

Plaintiff also argues that she is entitled to a new trial because the Court admitted proof of a bullying complaint against Rathbun.  (Dkt. 386 at 23-24).  Plaintiff argues that it was error for the Court to admit such evidence, since Rathbun was a non-party witness

---

[11]    Plaintiff's argument that she was not permitted "to counter Defendants' narrative" that Absolute had an acceptable culture for women misses the mark.  At trial, Defendants presented evidence with respect to the equitable treatment of women within the company, and Plaintiff was permitted to counter this evidence, including through her own testimony and through Rathbun's testimony.  But Defendants did not present this evidence through non-decisionmakers' treatment of women, and therefore Robinson's comments—those of a non-decisionmaker—were not relevant.

and the evidence was irrelevant to her claims. (*Id.* at 23). Plaintiff characterizes the bullying complaint as "impermissible character evidence," and Defendants' offering of it as "an attempt to smear Ms. Rathbun's status as a superstar witness," citing to Rule 608(b) of the Federal Rules of Evidence. (*Id.*).

To begin with, Plaintiff's reliance on Rule 608(b) is misplaced. "Rule 608, prohibits proof, by extrinsic evidence, of past conduct of a witness for the purpose of attacking his credibility. The rule is inapplicable in determining the admissibility of evidence introduced to impeach a witness's testimony as to a material issue." *Lamborn v. Dittmer*, 873 F.2d 522, 527-28 (2d Cir. 1989). Because the Court found that the bullying complaint was impeachment evidence and that Plaintiff herself had opened the door to such evidence, Rule 608(b) is inapplicable.

As the Court explained at trial, Plaintiff opened the door to the admission of the bullying complaint against Rathbun. During Rathbun's testimony at trial, she testified to the discriminatory culture at Absolute, including bullying of women perpetrated by men. (*See, e.g.*, Dkt. 394-18 at 9 (Rathbun testifying that she objected to bullying by Kurt Luporini); *id.* at 11 (Rathbun's testimony that, as a woman, she felt bullied at Absolute); *id.* at 16 (discussing examples of bullying); *id.* at 17 (discussing whether she reported incidents of bullying she experienced)). Given Rathbun's testimony that she was the victim of bullying and of bullying that occurred at Absolute, the bullying complaint levied against her was relevant impeachment evidence at trial. As the Court explained in its pretrial ruling on this matter, witness credibility is always an issue at trial, and the complaint could become relevant impeachment material depending on Rathbun's

testimony.  (*See* Dkt. 243 at 5-6 (explaining that the Rathbun complaint was "fair cross examination" and went "to credibility issues.")); *see also Martinez v. City of N.Y.*, No. 16-CV-79 (NRM) (CLP), 2022 WL 17090267, at *5 (E.D.N.Y. Nov. 18, 2022) ("Evidence that bears on a witness's credibility is 'always relevant'" (quoting *United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978)).  Plaintiff has offered no meaningful argument about why the bullying complaint is not relevant impeachment evidence. Accordingly, Plaintiff's motion for a new trial on this basis is denied.

### G.    Exclusion of the *Lubahn* Complaint

Plaintiff further contends that the Court improperly excluded the *Lubahn* complaint as evidence and therefore she is entitled to a new trial.  (Dkt. 386 at 24-25). Plaintiff argues that the *Lubahn* complaint was relevant in that it involved overlapping discriminatory comments made by Kenny in April 2015, and that had the Court admitted the complaint, "Plaintiff would have been able to further press on Absolute's supposed position that only 'formal' complaints of discrimination would be investigated."  (*Id*. at 24).

The *Lubahn* case involved allegations of age discrimination.  As discussed above, Plaintiff abandoned any such claims before trial, and it is thus unclear what bearing Plaintiff believes the admission of the *Lubahn* complaint would have had on her remaining claims at trial.

As to Plaintiff's argument that the *Lubahn* complaint would have allowed her to explore Absolute's position that only formal complaints of discrimination would be investigated, Plaintiff offers no specifics as to this issue and, in fact, Plaintiff presented

evidence on this very issue through the deposition testimony of Daniel Berardo, Absolute's head of Human Resources at the time of Plaintiff's termination. (*See, e.g.*, Dkt 400-6). Accordingly, Plaintiff in unable to show that she was prejudiced by the exclusion of this evidence.

Finally, admission of the *Lubahn* complaint—which contains only allegations of discriminatory conduct—would have been improper, since in addition to being irrelevant, it would have been of little probative value. *See, e.g.*, *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254-55 (S.D.N.Y. 2012) (holding that the plaintiffs could not introduce evidence of other lawsuits, and explaining that "courts generally exclude evidence of other related lawsuits" and that there is "little probative value in allegations only"). "Such evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice." *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-445 (PKC), 2014 WL 12843521, at *2 (E.D.N.Y. Jan. 27, 2014). Plaintiff has thus failed to demonstrate that she is entitled to a new trial on this basis.

### H.    Proffer on Unpaid Commissions

Plaintiff further contends that she is entitled to a new trial because the Court erred by requiring her to provide evidentiary proof that she was not paid her full commissions, but did not require Defendants to produce proof that she was paid her commissions.[12]

---

[12]    Plaintiff misapprehends the burden of proof in a civil trial. Plaintiff claimed that the withholding of commissions constituted an adverse action, which was one of the *prima facie* elements she was required to prove to succeed on her claims. In other words,

(Dkt. 386 at 25).  The Court ruled before trial that Plaintiff could testify that she was not paid her full commissions, as long as she could provide evidence to support her testimony.  Specifically, the Court explained that, without evidentiary support, "we will be having a trial within a trial on a complicated calculation, and Rule 403 would preclude that evidence."  (Dkt. 321 at 15).

> Then, by way of letter dated March 6, 2023, Plaintiff's counsel stated:
>
> Pursuant to Your Honor's request today for a proffer regarding how Ms. Piehler was not paid her Department of Education ("DOE") commissions, Plaintiff's Exhibit 166 demonstrates Mr. Awtry's directive that females be paid less than males.  A copy of Exhibit 166 is attached as Exhibit A.

(*See* Dkt. 351).  Exhibit 166 consisted of an email from Awtry with respect to the DOE investigation.  Contrary to counsel's representation, the email did not include a directive from Awtry that females be paid less than males—rather, the document was a two-page email from Awtry to Plaintiff, copied to Berardo, Caroline Nelson, and Leigh Ramsden, summarizing the "review of the NY DOE ordering process" and sharing "next steps." (*Id*. at 3-4).  The email did not state, nor did it imply, any directive that men should be paid more than women.  When the Court raised this issue with counsel on March 7, 2023, counsel could not direct the Court to the portion of the email he claimed contained a directive that men be paid more than women.  (*See* Dkt. 360 at 3-5 ("[A]s I said before, in the pretrial filings, if the Plaintiff wants to introduce evidence that Ms. Piehler was not ultimately paid what she was entitled to, you need something concrete.  I'm not seeing it

---

the burden is on Plaintiff to prove an adverse action—Defendants are not required to disprove it by coming forward with evidence that Plaintiff was paid her commissions.

in Mr. Ferris's letter or this attachment, which is exhibit 166.")).  Plaintiff ultimately stated that she did not intend to "go through the pay data," since it "takes an hour plus to get through."  (*Id*. at 6).  Then, in response to the undersigned's question, "it doesn't sound as though you're wanting her to ultimately testify to [that she ultimately was not paid what she was promised to be paid], correct, Mr. Thomas," Plaintiff's counsel responded, "[t]hat's correct, she is not going to make that statement."  (*Id*. at 7).

Pursuant to Rule 403 of the Federal Rules of Evidence, a trial court has "broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative."  *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1193 (2d Cir. 1989); *see also In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *7 (S.D.N.Y. Dec. 9, 2015) (excluding evidence under Rule 403 because of unfair prejudice, misleading and confusing the jury, and wasting time, where the evidence "could easily lead the jury to speculate—with no evidentiary basis—about whether the medication impaired Plaintiff's driving abilities" in case concerning automobile accident).

Here, it was well within the Court's discretion to require Plaintiff to make an evidentiary proffer before allowing the jury to hear evidence about payment of the DOE commissions.  This is because determining the commissions involved a complex computation, a fact underscored by Plaintiff's acknowledgment that it would be burdensome to go through the pay data.  In other words, in expecting the jury to sift through these computations as to which commissions were properly or improperly paid,

the parties would essentially be presenting the jury with a "trial within a trial" regarding the unpaid versus paid commissions.

The Court has a duty to guard against evidence that would be overly burdensome or confusing for the jury, and Plaintiff has failed to challenge the Court's determination in this respect. Further, Plaintiff had ample notice that the Court would require her to make this showing, and she failed to come forward with evidence supporting her assertion that she was not paid her commissions, while men were paid their commissions. Plaintiff is thus not entitled to a new trial on this basis.

## I.     Defendants' Evidence on Reasons for Termination

Plaintiff lastly argues that allowing Defendants to offer new and different reasons for her termination at trial was highly prejudicial and warrants a new trial. (Dkt. 386 at 25-26). Plaintiff points specifically to the admission of evidence that she did not meet her sales goals, that she did not have a balanced book of business, and her lack of cybersecurity experience, arguing that this evidence was prejudicial since the sole reason previously proffered by Defendants was that Awtry and Plaintiff did not get along. (*Id.* at 26). Plaintiff argues that she was forced to spend considerable time at trial attacking these new reasons for termination, and that "this resulted in confusing and conflating the issues for the jury, who now had to sort through a plethora of supposed reasons" for Plaintiff's termination, and that this evidence should have been barred as not relevant under Rules 401 and 402, and as unduly prejudicial under Rule 403. (*Id.*).

Other than describing the three general reasons offered by Defendants for her termination that she believes were improperly offered at trial, Plaintiff has identified no

specific evidence admitted to which she objects, and therefore she has failed to show how she was prejudiced. Even if Plaintiff had properly identified this evidence, her relevancy challenge falls flat. At trial, Plaintiff claimed that she was terminated based on gender discrimination and retaliation, and therefore evidence on other, non-gender or non-retaliatory reasons for her termination was plainly relevant.

Plaintiff's contention that the reasons offered by Defendants were new or had not been offered before trial is not supported by the record. In fact, the Court's decision denying Defendants' motion for summary judgment references other reasons offered by Defendants for Plaintiff's termination and/or treatment at Absolute, including poor performance reviews (*see* Dkt. 179 at 20), her cybersecurity experience (*id*. at 38), and sales revenue (*id*. at 39 (discussing comparisons between Plaintiff's and Robinson's performance, including in the metrics of quota attainment, sales revenue, and performance ratings))—and therefore Plaintiff was aware of these other proffered reasons since at least 2020. Further, Awtry's declaration submitted in support of Defendants' motion for summary judgment discusses various reasons for Plaintiff's termination and treatment at Absolute. (*See, e.g.*, Dkt. 147 at ¶ 29 ("Ms. Piehler's job performance during the time that I supervised her was inconsistent. There were things that she did well and things she did not do well. There were quarters in which Piehler's team met its sales quota. However, her team did not meet its overall sales quota in any fiscal year in which I supervised her."); *id*. at ¶ 40 ("In addition . . . prospective employees with cybersecurity backgrounds were much in demand and able to command higher salaries because of their

backgrounds.")).   Plaintiff is thus hard-pressed to claim that she was surprised or otherwise prejudiced when Defendants raised these same arguments at trial.

Further, Plaintiff has failed to demonstrate how Defendants' offering these other reasons for her termination was confusing for the jury or was otherwise unduly prejudicial.  Evidence that Plaintiff did not meet her sales goals or lacked cybersecurity experience is not the kind of confusing or burdensome evidence that the Court would preclude a jury from receiving, and Plaintiff has failed to offer further specifics as to why she believes that this evidence confused the jury.

Finally, the Court notes that, if a party is contradicting prior statements—as Plaintiff sought to do here regarding Defendants' proffered reasons for her termination—preclusion is not the appropriate remedy.  Rather, the opposing party should use the prior evidence to impeach the relevant witness's testimony—a fact that Plaintiff's counsel agreed to during pre-trial argument on this issue.  (*See* Dkt. 240 at 41 (Plaintiff agreeing with the Court's statement that, if Awtry testified differently than he did during his deposition, that would be a proper issue cross-examination, as opposed to having the Court preclude Awtry from testifying differently)); *see also* Fed. R. Evid. 613.  Plaintiff's failure to impeach the relevant witness does not warrant a new trial.  For all of those reasons, Plaintiff is not entitled to a new trial on this basis.

## II. <u>Plaintiff's and Defendants' Motions for Judgment as a Matter of Law</u>

In the alternative to her motion for a new trial, Plaintiff argues that the Court should enter judgment as a matter of law on her gender discrimination claims pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  (Dkt. 386 at 27-28).  Defendants

contend that they are entitled to judgment as a matter of law on Plaintiff's NYSHRL retaliation claim.  (Dkt. 381).

Under Rule 50, the Court may grant a motion for judgment as a matter of law in a jury trial if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" opposing the request.  Fed. R. Civ. P. 50(a).  The same standard applies when, as here, a party renews its request for judgment as a matter of law after the trial is complete.  *See* Fed. R. Civ. P. 50(b).

"In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury."  *Williams v. Cnty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999); *see also Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228 (2d Cir. 2017) ("Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor." (citation and alteration omitted)).  Accordingly, the Court may not grant judgment as a matter of law unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it."  *Williams*, 171 F.3d at 101 (alterations omitted and quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir. 1994)); *see also Wierzbic v. Howard*, 331 F.R.D.

32, 45 (W.D.N.Y. 2019) ("In ruling on a motion for judgment as a matter of law, the motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him." (quotation and alteration omitted)), *aff'd*, 836 F. App'x 31 (2d Cir. 2020).  This "standard places a particularly heavy burden on the movant where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015) (quotations omitted).

A.      **Defendants' Motion**

Defendants contend that a reasonable jury could not have found for Plaintiff on the claim for retaliation in violation of the NYSHRL, and the verdict on that cause of action should be vacated.  (Dkt. 383 at 10).  Defendants argue in the alternative that, even if Plaintiff had established a claim for retaliation, she has failed to prove that the termination of her employment was causally related to any protected activity; therefore Plaintiff is not entitled to an award for lost wages and there is no need for the Court to proceed to the damages phase of the trial.  (*Id*. at 20-28).  The Court agrees, for the reasons that follow.

1.  **No Evidence of Protected Activity Known to Employer**

To establish a *prima facie* case of retaliation, Plaintiff must show: "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection

between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted). Retaliation claims are subject to a but-for causation test. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).[13]

"An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011). "Mere complaints of unfair treatment . . . are not protected speech in the employment retaliation context, and the onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (citation and quotations omitted)). "Although particular words such as 'discrimination' are not required to put an employer on notice of a protected complaint," *see Guzman v. Crothall Healthcare, Inc.*, No. 17-CV-4306-

---

[13]     Although the Second Circuit has not "conclusively resolved whether the but-for causation standard applies to [retaliation] claims under the NYSHRL," it has "implicitly applied the but-for standard to NYSHRL claims." *Farmer v. Shake Shack Enterprises, LLC*, No. 19 CIV 9425 (PAE), 2020 WL 4194860, at *13 n.7 (S.D.N.Y. July 21, 2020) (citations omitted); *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 462 (S.D.N.Y. 2023) (citing *Heiden v. N.Y. City Health & Hosps. Corp.*, No. 20-CV-10288, 2023 WL 171888, at *22 (S.D.N.Y. Jan. 11, 2023) (concluding that but-for causation applies to NYSHRL retaliation claims)); *see also Henvill v. Metro. Trans. Auth.*, No. 22-2731-cv, 2023 WL 7294702, at *1 (2d Cir. Nov. 6, 2023) (both plaintiff's Title VII and NYSHRL claims required a showing that the protected activity was a but-for cause of the adverse employment action).

CBA(PK), 2021 WL 5048993, at *16 (E.D.N.Y. Sept. 29, 2021), the employer must have understood or could have reasonably understood that a plaintiff was complaining about discrimination based on the protected characteristic—in this case, gender discrimination. *See Kelly*, 716 F.3d at 15 ("As to the second element [of the *prima facie* case], implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *see also Rodas v. Town of Farmington*, 918 F. Supp. 2d 183, 189 (W.D.N.Y. 2013) ("Although a plaintiff need not explicitly allege a violation of Title VII in making a complaint about working conditions to be considered protected activity, the plaintiff must complain of discrimination in sufficiently specific terms to put the employer on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic. . . ." (internal citation omitted)), *aff'd*, 567 F. App'x 24 (2d Cir. 2014).

Here, as discussed below, there is a complete lack of evidence that Plaintiff (1) complained of treatment based on her gender, or (2) that Defendants understood or could have reasonably understood that Plaintiff complained about gender discrimination.[14]

---

[14]    At the summary judgment stage, Plaintiff submitted an affirmation in which she stated that she was treated differently because of her gender (*see* Dkt. 156 at ¶¶ 73, 77), which the Court found was sufficient to survive summary judgment. However, at trial,

At trial, Plaintiff offered proof about complaints she made in connection with the investigation of her billing of the DOE account.  The evidence at trial revealed that Plaintiff spoke to Berardo by phone on June 30, 2014, to find out whether he was aware of the investigation and to discuss withheld salary and commissions.  (*See* Dkt. 360 at 83-85; *see also id*. at 159 (Plaintiff describing her request to speak to Berardo on "the last day of the fiscal year")).  Following this conversation, Plaintiff sent a follow-up email to Berardo.  (*Id*. at 161-62).  Plaintiff also testified that she spoke to Olsen in Vancouver in July 2014 regarding the DOE investigation.  (*Id*. at 215-17).[15]

So there is no question that Plaintiff complained about the DOE investigation, but at no point during her trial testimony did she link those complaints to claims of gender discrimination.  For example, when describing her interaction with Berardo, Plaintiff testified that she asked him "if he was aware of what was going on" and "if [she] was being fired."  (*Id*. at 83).  Plaintiff testified she told Berardo that she did not receive her pay or commissions, and Berardo responded that he would inquire as to why her pay was being withheld, as well as her commissions from other accounts.  (*Id*. at 84-85).  At no time did Plaintiff testify that she complained of unfair treatment she experienced based on her gender, or that she communicated the same to Berardo.

---

Plaintiff never presented that proof.  Rather, her testimony was not that she was treated unfairly to males, but that she was treated differently than "others."

[15]   At trial, Plaintiff relied only on her reports regarding the DOE investigation that took place in summer 2014 in support of her claim that she engaged in protected activity.  (*See, e.g.*, Dkt. 345 at 2; *see also* Dkt. 363 at 58 (plaintiff's counsel stating at trial that, "[y]our Honor, I will grant that that is our position at trial. That the—her last formal complaint to Mr. Olsen or Mr. Berardo occurred in the summer of 2014")).

Similarly, when describing her interaction with Olsen, Plaintiff testified that she expressed to him that she was upset about an accusation of stealing and that she was never publicly exonerated, that it was unprofessional that Awtry had emailed out everyone's performance rankings, and that she had limited visibility to Haydon. (Dkt. 360 at 216-17). When Plaintiff's attorney questioned her at trial as to what she believed caused the unequal treatment she experienced, Plaintiff said, "[w]ell, Errol knew. I mean Errol was aware of the DOE saga. I mean, he knew exactly what had went on and he listened very patiently and very intently to me as I spoke to him." (*Id*. at 217). Again, Plaintiff did not identify gender discrimination as the basis for why she believed she was being treated unfairly, nor did she state that she communicated the same to Olsen. (*See id*. at 218 (Plaintiff acknowledging that she did not use the word "discrimination," but that she wanted to be treated like the other managers)).

Similarly, Plaintiff has failed to present evidence indicating that Defendants knew or reasonably should have known that she was complaining about treatment based on her gender. Both Olsen and Berardo denied understanding Plaintiff to be complaining about gender discrimination when she came to them to discuss the DOE investigation. (*See* Dkt. 400-6 at 8-9, 11 (deposition testimony of Daniel Berardo, stating that he never investigated anything from a discriminatory point of view, because discrimination was never raised and was not apparent in any of Plaintiff's communications to him, and Plaintiff never complained of sexual harassment, or discrimination of any kind); Dkt. 400-8 at 5-6, 9 (deposition testimony of Errol Olsen, explaining that there was nothing in Plaintiff's complaints that were gender related, and that to his knowledge she never

complained about discrimination while working at Absolute)).[16]

As the Court noted at oral argument on the present motion (*see* Dkt. 417 at 20-22), Plaintiff has presented no evidence that she complained of unfair treatment based on her gender, or that Defendants knew or should have known that she was complaining of treatment based on her gender. The evidence at trial established that both men and women were investigated in connection with the billing of the DOE account. Specifically, Plaintiff testified that she agreed "the three people who were most directly involved with the DOE account were Charles Springay, Justin Peacock and [herself]," and that Springay and Peacock were also under investigation related to the billing on the DOE accounts, and they also had their commissions withheld. (*See* Dkt. 359 at 52-53). Although Plaintiff testified at trial that Michael Kenney, who was one of the individuals who managed the inside sales team and was "half of the process of recording orders" received his commissions (*see* Dkt. 360 at 81-83), Kenney was not under investigation with respect to the billing on the DOE account, nor did Plaintiff testify that she communicated this to Olsen or Berardo. Given that the evidence at trial demonstrated that Plaintiff did not complain about gender discrimination, and none of her communications to Olsen or Berardo suggested that she was complaining of gender discrimination, the Court can discern no reasonable basis for the jury to have found that Plaintiff was complaining of gender discrimination, rather than unfair treatment generally.

---

[16]    Prior to trial, the parties agreed that Berardo and Olsen would not testify as live witnesses, but rather portions of their deposition testimony would be read in as proof at trial.

In opposition to Defendants' motion, Plaintiff cites to evidence offered at trial with respect to the DOE investigation, in which she communicated that she wanted to be "treated equally," or treated "like the others."  For example, at trial Plaintiff testified about a phone call she had with Berardo, in which she stated that "I told him that I was concerned that I wanted to be treated equally to the others." (Dkt. 360 at 160-61).  Then Plaintiff sent a follow-up email to Berardo, which was offered at trial as Plaintiff's Exhibit 21. (*Id*. at 161-62; *see also* Dkt. 396 at 9).  In the email, Plaintiff wrote that she did not want to be "known as a troublemaker, all I want is the data reflected correctly and to be paid fairly." (*See* Plaintiff's Trial Exh. 21, Dkt. 395-1 at 69).  Plaintiff stated she thought it was odd there was an investigation into her DOE sales, but Absolute "did not launch a corporate investigation in my CER who I identified as having a part time job, during the day, when Absolute is paying him to be here hunting business for the Northeast." (*Id*.).  When Plaintiff was asked what she meant by "known as a trouble maker," she testified that "I meant it exactly as I wrote it.  I didn't want to be known as someone that was just randomly complaining about everything." (Dkt. 360 at 162-63).  And when asked what she meant by "[a]ll I want is the data reflected correctly and to be paid fairly," Plaintiff stated that she wanted to be "[p]aid fairly in comparison to other people that were being paid on my business." (*Id*. at 163).

These kinds of comments—such as that Plaintiff wanted to be treated "like the others," or "fairly"—are insufficient as a matter of law to place an employer on notice of gender discrimination. *See, e.g.*, *Guzman*, 2021 WL 5048993, at *16 (where the plaintiff was the subject of a company investigation for improper timekeeping practices, and

argued that she "engaged in a protected activity when she sent a letter to human resources . . . , expressly stating that she was being singled out and treated differently than others," holding that the plaintiff failed to allege conduct that would put a reasonable employer on notice that the complaint was about unlawful discriminatory practices, because she did not reference a protected characteristic in her complaint); *Benzinger*, 447 F. Supp. 3d at 126 (dismissing retaliation claim where the plaintiff complained of "unfair treatment" and that another employee was paid more than she was, because no Lukoil employee was aware or could have reasonably understood the plaintiff's complaints to be directed at conduct prohibited by the NYSHRL); *Brummell v. Webster Cent. Sch. Dist.*, No. 06-CV-6437, 2009 WL 232789, at *4-5 (W.D.N.Y. Jan 29, 2009) (the plaintiff failed to state a claim for retaliation, because while she complained that she was being treated differently than other employees, "at no time did [the plaintiff] allege that she was being treated differently because she was a woman," and "general complaints about employment concerns do not constitute protected activity"); *see also Rodas*, 918 F. Supp. 2d at 189-90 (where the plaintiff complained of being sexually harassed, finding no protected activity since "[a]t no time did Rodas allege that he was being treated differently because he was a man, or that Crane treated him or other men differently because of their gender," and explaining that "[a]s a matter of law, a reasonable, objective belief that an employee is complaining of sex discrimination cannot arise simply because the behavior in question touches on the issue of sex").

Plaintiff further argues that the "jury was presented with direct evidence" that Absolute understood, or could have understood, that Plaintiff was engaging in protected

activity, since Berardo testified that Absolute had a duty to investigate claims involving potential discrimination.  (Dkt. 396 at 20).  Specifically, Plaintiff argues that Berardo stated he would follow-up on a complaint under the following circumstances: (1) a female employee complaining that they were not being treated fairly; (2) a female employee stating that they wanted to be treated the same as their male colleagues; (3) a female employee stating that she was being treated differently than her male counterparts, (4) a female employee stating that they wanted to be paid fairly; (5) a female employee stating that a male employee was being paid full value and she wanted to also be paid full value for her work; and (6) an employee telling him that they did not want to be known as a "troublemaker."  Plaintiff argues that this testimony shows that Berardo understood her to be complaining of gender discrimination.  (*Id*. at 21-22).

This argument is based on two mischaracterizations of the record.  First, Plaintiff did not complain to Berardo, Olsen, or any other person at Absolute that she wanted to be treated the same or paid the same as her "male colleagues" or "male counterparts." Rather, as explained above, Plaintiff repeatedly referred to her desire to be treated "equally," "fairly," or "like the others," without specifying who those "others" were. Second, Berardo did not testify that he would believe or reasonably believe that a complaint falling into any of the above six categories would implicate discriminatory conduct.  Rather, Berardo testified that he would act to investigate any such complaint further.  (*See* Dkt. 400-6 at 6-7 (Berardo testifying that he would get specifics and gather information on what the employee was complaining about, so that he could investigate further)).  Contrary to Plaintiff's implication, at no time did Berardo testify that he would

find any of the above six instances would raise any inference of discrimination.  Here, Berardo followed up on Plaintiff's complaints by asking her to email him which, as discussed above, raised no issue about discrimination based on gender.

In short, there was no evidence offered at trial supporting that Plaintiff (1) was complaining of treatment based on her gender, or (2) that Defendants understood or could have reasonably understood that Plaintiff was complaining about gender discrimination. While Plaintiff complained to both Berardo and Olsen about her treatment during the DOE investigation, general complaints—in other words, those motivated by non-protected characteristics—cannot sustain a claim for retaliation.  *See, e.g.*, *Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 155 (2d Cir. 2006) ("nondiscriminatory-grounded dislike, whether inappropriate, understandable, or neutral, does not, of course, constitute a basis for a Title VII suit").  With no evidence in the record of protected activity, the retaliation verdict cannot stand.  Accordingly, the Court grants Defendants' motion for judgment as a matter of law on Plaintiff's retaliation claim, and vacates the jury's verdict on that cause of action.  *See, e.g.*, *Galdieri-Ambrosini*, 136 F.3d at 292 (affirming district court's granting of judgment as a matter of law in defendant's favor following verdict for plaintiff on discrimination claims, including because "there was nothing in [plaintiff's] protests that could reasonably have led National Realty to understand that [gender discrimination] was the nature of her objections"); *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LJL), ___ F. Supp. 3d ____, 2023 WL 8892482, at *15-19 (S.D.N.Y. Dec. 26, 2023) (granting judgment notwithstanding the verdict in defendants' favor following jury verdict for plaintiff on retaliation claim,

including because there was "a complete absence of evidence" supporting the proposition that male defendant was aware plaintiff's complaint concerned gender discrimination, human resources manager testified she did not understand plaintiff's complaint to concern gender discrimination, but was a dispute over office space, and explaining that "[d]espite what Plaintiff may have hoped to convey in her complaint," testimony and contemporaneous notes revealed that HR manager had a different understanding of plaintiff's grievance)[17]; *see also Tepperwien v. Entergy Nuclear Options*, 663 F.3d 556, 569-72 (2d Cir. 2011) (affirming district court's granting of judgment as a matter of law in defendant's favor over jury verdict, since the actions complained of did not rise to the level of being adverse employment actions).

### 2.  Alternatively, No Causal Connection Between Protected Activity and Plaintiff's Termination

Defendants argue that, even if the jury's finding that Plaintiff engaged in protected activity was supported by the evidence, there is no causal connection between the alleged protected activity and the termination of Plaintiff's employment.   (Dkt. 383 at 20). Specifically, Defendants contend that the termination of Plaintiff's employment was too remote in time, that Plaintiff's termination was contemplated before the alleged protected activity, and that Plaintiff's favorable performance review in February 2015 severs any causal connection.   (*Id*. at 21-25).   Defendants further argue that this lack of causation

---

[17]     In *Edelman*, the plaintiff testified at trial that she made a complaint to the human resources manager that she believed another employee was speaking to her in a sexist manner, and "the only difference was that he was a male."   *See Edelman*, 2023 WL 8892482, at *15.   As noted above, here, Plaintiff gave no such testimony.

between the protected activity and termination of Plaintiff's employment negates the

need to proceed to the damages phase of the trial.  (*Id*. at 27).[18]

In response, Plaintiff argues that she proved a causal connection between her

complaints of gender discrimination and her termination.  (Dkt. 396 at 31).  Specifically,

Plaintiff argues that she disproved Defendants' proffered reasons for termination, that

Defendants "laid in wait" to terminate her, Defendants took escalating negative conduct

against her, and that Plaintiff did not rely on temporal scope alone.  (*Id*. at 32-38).  In

response to Defendants' argument about the damages phase of the trial, Plaintiff contends

that "it is unclear how th[at] would even be permissible," that Defendants have cited no

case law where a court has taken such action, and that the jury's verdict did not parcel out

---

[18]    Defendants also make arguments with respect to other adverse employment actions raised by Plaintiff at trial.  Defendants argue that these other adverse actions complained of by Plaintiff—that Awtry yelled at her, she had a negative performance evaluation in August 2014, she did not receive a pay raise in 2013, and her DOE commissions were withheld—do not qualify as adverse employment actions.  (*See* Dkt. 383 at 17-20).  It is well-settled that "the scope of actions that may be materially adverse for purposes of a retaliation claim is broader than those prohibited for purposes of a discrimination claim."  *Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691, 717 (E.D.N.Y. 2017) (discussing that counseling memorandums and negative evaluations may be assumed to be adverse employment actions for purposes of retaliation claim), *aff'd*, 752 F. App'x 70 (2d Cir. 2018); *Giordano-Forkan v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 06950(GBD), 2014 WL 5369426, at *3 (S.D.N.Y. Oct. 17, 2014) (discussing that loss of the use of wages constituted an adverse employment action for purposes of retaliation claim); *see also Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (anti-retaliation protection is broader than anti-discrimination protection).  Contrary to Defendants' implication, actions such as a negative performance review, or the failure to give a raise, may be considered adverse employment actions for purposes of a retaliation claim depending on the circumstances.  The Court disagrees that a reasonable jury could not find that these additional actions identified by Plaintiff were adverse employment actions for purposes of a retaliation claim.  But that finding does not impact the analysis of whether a reasonable jury could have found a sufficient causal link between the alleged protected activity and the termination of Plaintiff's employment.

each of the adverse actions.  (*Id*. at 38-39).

"A plaintiff may establish a causal connection either through direct evidence of retaliatory animus or indirectly through circumstantial evidence," and "[w]here there is no direct evidence of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by a retaliatory action." *Russell v. Aid to Developmentally Disabled, Inc.*, 416 F. Supp. 3d 225, 235-36 (E.D.N.Y. 2017).  While "[t]here is no firm outer limit to the temporal proximity required . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."  *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59-60 (S.D.N.Y. 2021) (citation omitted); *see also Bamba v. Fenton,* 758 F. App'x 8, 12 (2d Cir. 2018) (no causation where retaliation occurred ten months after complaint); *Birch v. City of N.Y.*, 675 F. App'x 43, 45 (2d Cir. 2017) (passage of 17 months between protected activity and adverse employment action was "too long to support an inference of causation"); *Brown v. City of N.Y.*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations."); *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005) (no causation where "more than a year passed between [the plaintiff's] accusations . . . and the initiation of disciplinary proceedings").  When a plaintiff relies solely on the passage of time between the protected activity and the adverse action, the time between those two events must be very close.  *See Clark Cnty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273-74 (2001) ("[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'").  Here, the latest alleged protected activity occurred in July 2014.  Plaintiff was not terminated until one year later—in July 2015.  As a matter of law, this one-year passage of time is insufficient for establishing causation for purposes of Plaintiff's retaliation claim.

Plaintiff argues that she relies not only on temporal proximity, but also other evidence in support of retaliation to establish causation.  (*See* Dkt. 396 at 37).  As noted above, "[p]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Hicks*, 593 F.3d at 170 (citation omitted).  The problem with Plaintiff's argument is that, beyond the arguments she has raised in connection with this motion (*i.e.*, that the jury could infer retaliatory intent), she presented no evidence with respect to retaliatory animus at the trial, a fact the Court raised during arguments on Defendants' Rule 50 motion.  (*See* Dkt. 363 at 58-60 (noting that, in addition to the lack of temporal proximity, the underlying evidence of alleged complaints about discrimination was "weak," and Plaintiff's positive performance evaluation in February 2015, undercuts her complaint of retaliation)).  For example, there is no evidence that Defendants made comments to Plaintiff or took actions against Plaintiff indicative of any

retaliatory motive.  Reflective of this complete lack of evidence, Plaintiff's counsel did not even mention the word "retaliation" during her closing argument, choosing instead to focus on her gender discrimination claims.  (*See generally*, Dkt. 377).  Underscoring this fact is that, in support of this argument, Plaintiff cites no specific evidence she purportedly relied on at trial to support her retaliation claim, referring only generally to other arguments she raises.  (*See* Dkt. 396 at 37 (arguing that she relied "on a wealth of other evidence," such as "weaknesses, implausibilities, inconsistencies, or contradictions in . . . Absolute's reasons; that Absolute lied in wait for an opportunity to retaliate; and that Absolute engaged in continuing retaliation as further evidence of the causal connection.")).

In fact, the evidence at trial showed the opposite of retaliatory animus.  First, the evidence revealed that Defendants contemplated Plaintiff's termination before her alleged protected activity.  Plaintiff testified that, on June 27, 2014—before Plaintiff complained to Berardo and Olsen—Awtry told her that she was stealing and would be terminated.  (*See* Dkt. 360 at 62-64, 75).  Further, on June 27, 2014, Awtry emailed others in connection with the DOE investigation, asking whether they had "enough grounds for termination."  (*See* Plaintiff's Trial Exh. 73, Dkt. 382-13).  Awtry's statements asking whether Plaintiff could be terminated occurred before she engaged in the alleged protected activity, thereby undercutting her claim that she was terminated in retaliation for engaging in protected activity.  *Morgan v. Dep't of Motor Vehicles*, No. 3:17-cv-2091 (MPS), 2020 WL 1322834, at *11 (D. Conn. Mar. 20, 2020) ("several cases in this Circuit have rejected an inference of causation where the adverse action process began

before the plaintiff engaged in protected activity"); *see also Clark Cnty. Sch. Dist.*, 532 U.S. at 272 ("[Employers] proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").

Further, the evidence at trial revealed that Plaintiff had a favorable performance evaluation in February 2015, following the alleged protected activity (*see* Dkt. 360 at 170-72 (Plaintiff's testimony that her performance review stated that she was "substantially exceeding expectations" or "exceeding expectations" in multiple categories))—which also undercuts her claim that Defendants were retaliating against her. *See Powell v. Metro One Loss Prevention Servs. Grp.*, No. 12 Civ. 4221 (LAP)(DF), 2013 WL 12618658, at *7 (S.D.N.Y. Oct. 22, 2013) ("Courts have recognized that a positive action, such as a promotion, by an employer between the protected activity and the alleged adverse employment activity breaks the chain of causation necessary to sustain a retaliation claim."); *see also Bateman v. Nexstar Media Grp., Inc.*, No. 20-4114, 2021 WL 4520982, at *5 (10th Cir. Oct. 4, 2021) (temporal gap between alleged protected activity and adverse employment action was too large to create presumption of causation, and plaintiff failed to come forward with other evidence establishing causation; there were intervening acts, including positive performance reviews, which undercut the plaintiff's claim of retaliation); *Dayes v. Pace Univ.,* 2 F. App'x 204, 208 (2d Cir. 2001) (approximately seven months between the plaintiff's complaint about supervisor's conduct and his negative performance evaluation, coupled with an intervening positive review, was not sufficient to establish causal connection between the two events for purposes of retaliatory discharge claim); *Ochoa v. N.Y. C. Dep't of Educ.*,

No. 20-cv-9014 (ALC), 2021 WL 5450343, at *4 (S.D.N.Y. Nov. 22, 2021) (passage of three years, and in the interim, Plaintiff's receipt of both positive and negative performance reviews undercut causation).

Plaintiff argues that the jury could infer a causal connection between the protected activity and her termination, based on the jury's rejection of Defendants' proffered reasons for Plaintiff's termination. Plaintiff cites *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000), which Plaintiff suggests stands for the proposition that, where the plaintiff offers evidence that disproves the employer's proffered nondiscriminatory reasons for a plaintiff's termination, that itself is direct evidence of retaliatory animus, and the plaintiff need not provide other proof. (Dkt. 396 at 32). *Reeves* addressed the proof required for showing of pretext, following proof of a *prima facie* case of retaliation: "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination. . . . Thus, a plaintiff's prima facie case, *combined* with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 147-48 (emphasis added). *Reeves* did not address the requisite showing of causation needed for a *prima facie* case of retaliation. *See, e.g.*, *Rowe v. Marely Co*., 233 F.3d 825, 830 (4th Cir. 2000) ("Put another way, in *Reeves* the Supreme Court held that when a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, this does not automatically create a jury question, but it *may* do so."); *Brown v. Chertoff*, No. 406CV002, 2009 WL 50163, at *8 n.2 (S.D. Ga. Jan. 7, 2009) ("Brown's attempt to

establish his prima facie case by relying on pretext puts the cart before the horse. . . . Nowhere does *Reeves* say that pretext can be used to establish the causation element of a prima facie case or that pretext comes into the analytical framework prior to proving a prima facie case."), *aff'd*, 380 F. App'x 832 (11th Cir. 2010).  Because the lack of proof on Plaintiff's retaliation claim stems from the failure of proof on the elements for a *prima facie* case, *Reeves* is inapplicable.[19]

Plaintiff further argues that a causal connection exists because Defendants waited for the "opportune time" to terminate Plaintiff, and also because of the escalating, negative conduct Plaintiff endured.  (Dkt. 396 at 35-37).  She cites *Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009), where the court excused a six-month passage of time between the dismissal of the plaintiff's lawsuit and an allegedly retaliatory beating, including because it was "plausible that the officers waited to exact their retaliation at an opportune time—as when Espinal was involved in a fight with another inmate—in order to have a ready explanation for any injuries suffered by [the plaintiff]."  *Id*. at 129.  But Plaintiff fails to articulate why Defendants would have found that July 2015 was the "opportune time" to terminate her—despite that she admitted having a "horrible Q3" in her August 2014 performance review, and that she failed to achieve her annual quota for 2014, at which times they could have terminated her.  (*See, e.g.*, Plaintiff's Trial Exh. 11, Dkt.

---

[19]     *Reeves* does not stand for the proposition that in all cases, a jury can infer a causal connection between the protected activity based on the rejection of a defendant's proffered reasons.  Rather, the jury may do so only in some cases.  Even if Plaintiff had established a *prima facie* case, as noted above, given the weak nature of her complaints and the lack of temporal proximity, coupled with Plaintiff's failure to attack Defendants' reasons for her termination at trial, a rational trier of fact could not conclude that retaliation was the but-for cause of her termination.

400-13 at 2).  The Court thus does not find the rationale employed in *Espinal*—which was premised on the fact that the defendants had a limited opportunity to carry out a retaliatory beating—applicable here.

As to Plaintiff's argument that she experienced escalating negative conduct, Plaintiff points to the following: "she was yelled at by Mr. Awtry; she received a negative performance review, and she did not receive a pay raise."  (Dkt. 396 at 37).  But the negative conduct was not escalating until Plaintiff's termination.  In fact, none of the escalating conduct identified by Plaintiff occurred after August 2014, and Plaintiff remained employed by Absolute for approximately ten to eleven more months, until July 2015.  And, as noted above, the period following the purported escalating adverse actions and Plaintiff's termination was punctuated by Plaintiff's positive performance review in February 2015.  *See Ochoa*, 2021 WL 5450343, at *4.  In other words, under the circumstances, the fact that Plaintiff experienced some lesser adverse actions closer in time to the purported protected activity, but far before her eventual termination, does not excuse the one-year time gap.

In sum, Plaintiff advances various theories as to why the Court should excuse the over one-year delay between the alleged protected activity and her termination, but the evidence at trial supports none of them.  *See, e.g.*, *Morgan*, 2020 WL 1322834, at *10 ("[W]hile the Second Circuit has at times found evidence of causation despite gaps of several months between the protected activity and the adverse action, those cases involved either a factual context making the defendant's delay in retaliating plausible or additional evidence of causation.  Neither is present in this case.").  The evidence

supporting Plaintiff's alleged protected activity was weak to non-existent, and in the absence of any other evidence demonstrating retaliatory animus, the Court does not find excusing the one-year passage of time is appropriate. Put simply, Plaintiff failed to present proof—direct or circumstantial—that any alleged protected activity was the reason for the termination of her employment. Accordingly, the Court concludes that no rational juror could conclude that there was a causal connection between Plaintiff's alleged protected activity in June and July 2014, and her termination in July 2015.

Plaintiff's final argument is that Defendants cite no case law supporting that a court could "partially dismiss" her retaliation claim to the extent that it is based on her termination, suggesting that there is some procedural bar preventing the Court from concluding that proceeding to the damages phase of the trial is unnecessary. (Dkt. 396 at 38-39). Plaintiff cites no rule, case law, or other authority in support of her argument that any such procedural bar exists, and courts have permitted retaliation claims to proceed as to some adverse actions, but not as to others. *See, e.g.*, *Jordan v. Cnty. of Chemung*, 264 F. Supp. 3d 497, 522 (W.D.N.Y. 2017) (denying the defendants' motion for summary judgment on the plaintiff's First Amendment retaliation claim to the extent it was based on the defendants' cessation of offering the plaintiff call-in shifts, but granting summary judgment to the extent that claim was based on her termination, since the plaintiff failed to put forth any evidence of a causal connection between any protected speech and termination); *Lehman v. Bergmann Assocs.*, 11 F. Supp. 3d 408, 415-17 (W.D.N.Y. 2014) (dismissing retaliation claim to extent it was based on constructive discharge, but permitting retaliation claim to proceed as to the plaintiff's demotion and placement on a

PIP).  Likewise, courts have dismissed on a Rule 50(b) motion portions of a verdict, while allowing other parts of the verdict to stand.  For example, Defendants cite *Clark v. City of Tucson*, No. CV-14-02543-TUC-CKJ, 2020 WL 914524 (D. Ariz. Feb. 26, 2020), *appeal dismissed*, No. 20-16430, 2020 WL 6269575 (9th Cir. 2020).  In that case, the jury determined that Plaintiff faced adverse employment actions, but the court vacated the verdict as to several of those actions, while allowing others to stand.  *Id*. at *9-12; *see also EMI Music Marketing v. Avatar Records, Inc*., 364 F. Supp. 2d 337, 344 n.10 (S.D.N.Y. 2005) ("Although the language of Rule 50(b) itself does not provide for the possibility of allowing part of a verdict to stand while vacating another part of it, the Court finds that it is permissible to dispose of Rule 50(b) motions in this manner.").

Plaintiff argues that the Court must hold a new trial due to the uncertainty as to the adverse action forming the basis for the jury's retaliation finding, and that for the Court "[t]o unilaterally conjure up what it thought the jury decided would require the Court to become a fact-finder and pick and choose from the pool of evidence the result it would prefer."  (Dkt. 418 at 4).  The jury verdict form did not require the jury to select which adverse employment action(s) supported Plaintiff's retaliation claim—and no party made a request that it include that information.  Therefore, it is impossible to know which adverse action(s) formed the basis for the jury's verdict on the retaliation claim.  But the existing trial record is sufficient for Court to conclude that, as a matter of law, Plaintiff presented insufficient evidence of causation with respect to her termination serving as an adverse employment action on the retaliation claim.  And because the only adverse action requiring the Court to proceed to the damages phase of the trial is Plaintiff's termination,

it would be unnecessary to do so given the lack of causation.

The Court's final instructions to the jury stated that, for purposes of the adverse action element, the jury need only find that the materially adverse action would not have been taken but for the Plaintiff's complaints of gender discrimination, and that this may be shown through any evidence they find relevant to that analysis, including the passage of time between the protected action and the materially adverse action. (Dkt. 377 at 146). As explained above, the evidence on the passage of time does not support that Plaintiff's termination was causally related to any protected activity.

Accordingly, even if Plaintiff had engaged in protected activity and Defendants reasonably understood her to be engaging in protected activity, so that the retaliation verdict was not set aside in its entirety, the Court would find, to the extent the jury found that Plaintiff's termination was the adverse employment action or one of the adverse employment actions, that no rational juror could conclude that Plaintiff's termination was in retaliation for any alleged protected activity. *See Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) (four months between the plaintiff's alleged protected activity and termination insufficient to establish a causal connection). It therefore logically follows that there is no need for the Court to make findings with respect to damages for lost wages.

## B.  Plaintiff's Motion

The Court turns next to Plaintiff's motion for judgment as a matter of law on her discrimination claims. Plaintiff's entire argument in support of her Rule 50(b) motion is as follows:

> Because the evidence supporting Plaintiff's gender discrimination claim was so overwhelming and because even viewing the evidence in the light most favorable to the defendants, no reasonable or fair-minded juror could have reached a verdict favoring the Defendants.  To the extent that the Court does not grant Plaintiff's Rule 59 motion for the many reasons stated above, the Court should alternatively grant Plaintiff's Rule 50(b) motion given the weight of the evidence.

(Dkt. 386 at 27-28; *see also* Dkt. 401 at 19 (argument in Plaintiff's reply papers in support of Rule 50(b) motion, that "because manifest injustice would exist because of the overwhelming evidence of gender discrimination that the jury heard and Defendants' pretextual reasons for Plaintiff's termination, this Court should grant Plaintiff's Rule 50(b) motion.")).

Plaintiff's Rule 50(b) motion is procedurally defective because she did not move under Rule 50(a) before the case was submitted to a jury.  *See Perez v. Cnty. of Rensselaer*, 858 F. App'x 12, 13-14 (2d Cir. 2021).  Defendants raised this issue in response to Plaintiff's motion.  (*See* Dkt. 394 at 30-31).  Plaintiff does not dispute that she failed to move under Rule 50(a) before the case was submitted to the jury, but contends that she may still move under Rule 50(b) "upon a showing of manifest injustice."  (Dkt. 401 at 19 (citing *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012)); *see also ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) ("The law is pellucid that a party's failure to move under Rule 50(a) has consequences.  If that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice.").

While a party who fails to move under Rule 50(a) may still move under Rule 50(b)

upon a showing of manifest injustice, Plaintiff does not even attempt in her papers to make the requisite elevated showing (or any showing, for that matter). Plaintiff does not offer any specific argument, or point to any specific evidence, supporting her contention that the Court should grant her judgment as a matter of law on the gender discrimination claims. Rather, Plaintiff states in conclusory fashion that "the evidence supporting Plaintiff's gender discrimination claim was so overwhelming," and "viewing the evidence in the light most favorable to the defendants, no reasonable or fair-minded juror could have reached a verdict favoring the Defendants." (Dkt. 386 at 27). Plaintiff's boilerplate argument lacks substance and falls woefully short of the showing required by Rule 50. It is counsel's responsibility—not the Court's—to develop the arguments and to identify the relevant evidence supporting her argument. Plaintiff's counsel has failed to do so here. Accordingly, Plaintiff's motion for judgment as a matter of law is denied.[20]

---

[20]     Following briefing on post-trial motions, Plaintiff filed a motion for leave to file a second amended complaint, which sought to add one new defendant, Crosspoint Capital Partners, L.P., which purchased Absolute in July 2023. (Dkt. 404). Defendants opposed the motion. (Dkt. 407). On November 13, 2023, Plaintiff filed a letter withdrawing her motion to amend without prejudice (Dkt. 412), and Defendants responded, arguing that the motion to amend should be denied or deemed withdrawn with prejudice (Dkt. 413). To the extent Plaintiff still pursues this motion, given the Court's ruling in Defendants' favor, Plaintiff's motion to amend is hereby denied as moot.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for judgment as a matter of law (Dkt. 381) is granted, and Plaintiff's motion for a new trial (Dkt. 384) is denied.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

DATED:     August 13, 2024
                 Rochester, New York